IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CINCINNATI BENGALS, INC., | Case No. 1:09 CV 738 |
| Plaintiff, | Hon. Sandra S. Beckwith |
| - against - | Hon. Timothy S. Black |
| KHALID ABDULLAH, SAM ADAMS, MARCO BATTAGLIA, RASHAD BAUMAN, ROGERS BECKETT, VAUGHN BOOKER, DUANE CLEMONS, RON DUGANS, DAVID DUNN, CHRIS EDMONDS, OLIVER GIBSON, DAMON GRIFFIN, KEVIN HARDY, RODNEY HEATH, NICK LUCHEY, TREMAIN MACK, TIMOTHY MCGEE, TONY MCGEE, REGGIE MYLES, HANNIBAL NAVIES, SCOTT REHBERG, ADRIAN ROSS, TROY SADOWSKI, DARNAY SCOTT, KABISA AKILI SMITH, ARMEGIS SPEARMAN, GLEN STEELE, DENNIS WEATHERSBY, RICHMOND WEBB, BERNARD WHITTINGTON AND DARRYL WILLIAMS, and REINARD WILSON | |
| Defendants. | |

_____

**MOTION OF DEFENDANTS AND PROPOSED INTERVENOR TO
COMPEL ARBITRATION AND DISMISS THE COMPLAINT
<u>AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**PRELIMINARY STATEMENT**

The Defendants ("Players") and proposed intervenor National Football League Players Association ("NFLPA")[1] submit this brief in support of their motion, pursuant to Fed. R.

---

[1] The NFLPA is simultaneously filing a motion to intervene in this action.  The Defendants believe the NFLPA should be made a party to this case and support the NFLPA's motion.

1

Civ. P. 12(b)(6) and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to compel arbitration and dismiss the complaint. As set forth herein, the Cincinnati Bengals, Inc. ("Bengals") is indisputably required to arbitrate the claims they have asserted in this action.

This case concerns the interpretation and application of the collective bargaining agreement ("CBA") in the National Football League ("NFL"). The Bengals, an NFL club, claim that the CBA (and more specifically, player contracts entered into under the CBA and forming part of the CBA) precludes its former players from seeking workers' compensation benefits in California. The Bengals have brought this action against thirty-two players who have filed workers' compensation claims in California. Because, as explained below, the CBA requires the Bengals to arbitrate the claims asserted in this case, this Court should compel arbitration and dismiss the Complaint.

### STATEMENT OF FACTS

**A.     The CBA**

The rights, duties, obligations and legal relations between the Bengals and the professional football players it employs is governed by a collective bargaining agreement ("CBA") entered into between (a) the NFLPA, which is the sole and exclusive bargaining representative of players in the NFL and (b) the National Football League Management Council ("NFLMC"), which is the sole and exclusive bargaining representative of present and future member clubs of the NFL, including the Bengals. *See* CBA, "Preamble," a copy of which is attached to the Notice of Removal as Exhibit 2.

Pursuant to CBA Article XIV, Section 1, a copy of which is attached to the Notice of Removal as Exhibit 3, all NFL clubs, including the Bengals, and all NFL players, including

2

each of the Players, must enter into a standard player contract ("NFL Player Contract"), which is set forth in Appendix C of the CBA, a copy of which is attached to the Notice of Removal as Exhibit 4.  The NFL Player Contract is part of the CBA.  *See* CBA Article LV, Section 18, a copy of which is attached to the Notice of Removal as Exhibit 5.

NFL clubs and players may agree to change the NFL Player Contract, so long as such changes are consistent with the provisions of the CBA.  *See* CBA Article XIV, Section 3.  In practice, and as occurred in each case here, the player and the club enter into the NFL Player Contract as set forth in Appendix C to the CBA, and attach an addendum thereto that may contain additional consistent terms not covered by the Player Contract.  *See e.g.,* Amend. Compl. ¶ 6 ("Each of Defendants' contracts contained an addendum …").[2]

The CBA contains two broad arbitration clauses.  *First*, CBA Art. IX, Section 1, a copy of which is attached to the Notice of Removal as Exhibit 6, states:

> *Any dispute* (hereinafter referred to as a "grievance") arising after the execution of the Agreement and involving the interpretation of, application of, or compliance with, any provision of the Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, *will be resolved exclusively in accordance with the procedure set forth in this Article* … (emphasis added)

*Second*, just as CBA Art. IX, Section 1 requires arbitration of any dispute concerning the NFL Player Contract, the NFL Player Contract contains a complimentary arbitration clause at ¶ 19:

> DISPUTES.  During the term of any collective bargaining agreement, *any dispute* between Player and Club involving the interpretation or application of any provision of this contract *will*

---

[2] A complete Player Contract for one of the Players is attached to the Kaiser Decl. at Exh. L.  It contains, at "Addendum 3," the addendum at issue in this case.  Each Player has the identical or nearly identical "Addendum" to their NFL Player Contract that, according to the Bengals, precluded the Bengals from filing for workers' compensation in California.

3

>*be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement* in existence at the time the event giving rise to any such dispute occurs. (emphasis added)

Hence, any dispute concerning either the CBA or NFL Player Contract must be submitted to arbitration.

### B. The Instant Dispute

The Players are professional football players who were employed by the Bengals at some point during their NFL careers.[3] Pursuant to the CBA, the Players signed individual player contracts with the Bengals. *See* CBA Article XIV, Section 1, a copy of which is attached to the Notice of Removal as Exhibit 3.

In accordance with California law, the Players filed workers' compensation claims with the Workers' Compensation Appeals Board in California, seeking compensation for physical conditions suffered during their employment with the Bengals. The Bengals have argued before the California courts that they cannot be sued in California and that the Players must bring all workers' compensation claims in Ohio, but the California courts have rejected the Bengals' argument.

On June 26, 2008, the Bengals commenced this action in the Court of Common Pleas, Hamilton County, Ohio. The Complaint named as defendants six former professional football players of the Bengals. The Complaint sought a declaratory judgment declaring that the Players violated portions of the CBA by filing for claims in California, and an injunction enjoining the Players from allegedly further violating the CBA. *See* Compl. ¶ 1. More specifically, the Complaint alleged that the Players' NFL Player Contracts contained "choice of forum" provisions requiring the Players to file for workers' compensation claims exclusively in

---

[3] Many of the Players are retired, but some still play in the NFL.

4

Ohio. The Bengals contend that the Players violated their NFL Player Contracts when they sought workers' compensation benefits in California. *Id*. ¶ 6.

On or about August 7, 2009, the Bengals filed its Motion for Leave to Amend Complaint in this Action. The motion sought to add an additional twenty-six (26) former Bengals players, alleging the identical claims against them. The state court granted the motion and the complaint was amended on September 4, 2009. On October 9, 2009, the Players removed this action to this Court. As explained below, under settled law, this Court ought to now compel arbitration and dismiss the Complaint.

## ARGUMENT

**I. THIS DISPUTE IS ARBITRABLE**

**A. Introduction**

Federal law strongly favors arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).[4] Accordingly, a federal court must order arbitration if it is satisfied that the claim at issue is within the scope of a valid, enforceable agreement to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). In fact, a court should grant a party's arbitration demand absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

---

[4] In *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 41 n.9 (1987), the Supreme Court ruled that the Federal Arbitration Act ("FAA") does not directly apply to a dispute governed by a collective bargaining agreement, which is instead governed by the LMRA, but that the FAA guides arbitration under the LMRA. *See also Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.*, 545 F. Supp. 2d 260, 263 n.3 (E.D.N.Y. 2008). But, in *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1471 n.10 (2009), the court more recently indicated, albeit in *dicta*, that the FAA does apply to labor arbitrations. To the extent the FAA applies, either directly or as guidance, the Players and NFLPA seek to compel arbitration under the FAA.

Arbitration plays an especially important role in federal labor law. As stated by the Supreme Court:

> The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed by foreign to the competence of courts.
>
> 'A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties.' (citation omitted)
>
> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment … For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

*United Steelworkers of Am.*, 363 U.S. at 581-82.[5]

Arbitration must be compelled if there is a valid agreement to arbitrate, and the dispute falls within the scope of the arbitration provision. *Id.*; *see also Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).[6] Here, there is no question that there is a valid agreement to arbitrate. CBA Article IX,

---

[5] *See also, Int'l Ass'n of Machinists and Aerospace Workers v. ISP Chems., Inc.*, 261 Fed. Appx. 841, 845 (6th Cir. 2008); *United Steelworkers of America, AFL-CIO, CLC v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007); *Detroit Typographical Union, Local 18 v. Detroit Newspaper Agency*, 283 F.3d 779, 786 (6th Cir. 2002).

[6] *See also*, *Local 377, Chauffers, Teamsters, Warehousemen, and Helpers of Am. v. Humility of Mary Health Partners*, 296 F.Supp.2d 851, 858 (N.D. Ohio 2003); *United Bhd. of Carpenters and Joinders of Am., AFL-CIO, Millwrights, and Machinery Erectors, Local Union 1519 v. Backman Sheet Metal Works*, Inc., 598 F. Supp. 212, 218 (S.D. Ohio 1984).

Section 1 and Paragraph 19 of the NFL Player Contract are both valid arbitration provisions. And, as explained below, this dispute clearly falls within the scope of those agreements.

### B.    The Bengals' Claims Clearly Fall Within The Broad Scope Of The Arbitration Agreements

Because the arbitration provisions in the CBA and NFL Player Contract are valid, the only issue is whether the claims asserted in the Amended Complaint fall within their scope. In making that determination:

> the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Int'l Assoc. of Machinists and Aerospace Workers*, 261 Fed. Appx. at 845; *see also United Steelworkers of Am.*, 363 U.S. at 582- 83.

Here, the two arbitration provisions are especially broad. CBA Article IX, Sec. 1 requires arbitration of any *"[a]ny dispute…*involving the interpretation of, application of, or compliance with, *any* provision of this Agreement, *the NFL Player Contract*…." (emphasis added). The NFL Player Contracts similarly provide for arbitration of "*any dispute* between Player and Club involving the interpretation or application *of any provision of this contract*…." (emphasis added). Because the Bengals' only claim is based upon a provision *in the NFL Player Contract* that, according to the Bengals, required the Players to seek workers' compensation benefits exclusively in Ohio, and because *all* disputes related to the NFL Player Contract *must* be resolved exclusively in arbitration by dint of both CBA Article IX, Sec. 1 and Paragraph 19 of the NFL Player Contract, *ipso facto* the Bengals' claims herein are subject to arbitration.

Significantly, it is settled law that arbitration agreements such as those here, covering "any difference of opinion or dispute" regarding or involving the "interpretation or

7

application of [the agreement]" are deemed to be "broad," thus strengthening the already sturdy presumption in favor of arbitration . *Int'l Assoc. of Machinists and Aerospace Workers*, 261 Fed. Appx. at 846; *see also AT&T Techs. Inc.*, 475 U.S. at 643 (presumption of arbitrability is "particularly applicable where the clause is broad as the one [here], which provides for arbitration of 'any differences arising with respect to the interpretation of this contract…'") Thus, the two arbitration clauses here are "the type of broad clause[s] for which [the Sixth] circuit holds the presumption in favor of arbitration is not merely applicable, but 'particularly applicable.'" *Int'l Assoc. of Machinists and Aerospace Workers*, 261 Fed. Appx. at 846; *see also Cleveland Elec. Illuminating Co. v. Util. Workers, Local 279*, 440 F.3d 809, 814 (6th Cir. 2006) ("the presumption of arbitrability is particularly applicable where the arbitration clause provides for arbitration of *any controversy involving the interpretation of the CBA*") (emphasis added); *AT&T Techs., Inc.*, 475 U.S. at 650.

Moreover, both arbitration agreements expressly cover disputes "involving the interpretation or application" of NFL Player Contracts. This is as broad as the English language will permit.[7] This dispute certainly "involves" the "interpretation" and "application" of the NFL Player Contracts. Indeed, that is all it involves, as the Bengals' entire case depends on a provision of the NFL Player Contract concerning the filing of workers' compensation claims. Indeed, the Bengals repeatedly allege that the "controversy" between the Bengals and defendants "concern" their "rights and duties under the Contract" and that the Bengals are entitled to relief "by the express terms *of the Contract*." *See e.g.* Amend. Compl. ¶¶ 23, 25 (emphasis added). It

---

[7] The word "involving" is broadly defined as "to contain as a part; include." Am. Heritage Dictionary (4th ed. 2000). *See also, PPG Indus., Inc. v. Pilkington PLC*, 825 F. Supp. 1465, 1478 (D. Ariz. 1993) ("[T]he word 'involving' is the functional equivalent of the words 'relating to. The phrase 'arising out of or relating to' has been construed as creating a broad arbitration clause (citation omitted)… Further, the use of the words 'meaning, interpretation, [or] application…does not narrow the scope of the clause. Rather, these words, too, are expansive in nature").

8

is difficult to imagine a dispute that more clearly turns on the interpretation or application of the CBA and NFL Player Contract.

In any event, once the presumption of arbitrability has been established, as is the case here, only an express provision excluding a particular grievance from arbitration or "the *most forceful* evidence of a purpose to exclude," which allows the court to say "with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," can rebut it. *Int'l Assoc. of Machinists and Aerospace Workers*, 261 Fed.Appx. at 846-47 (emphasis added).  There is nothing like that here.  The exceptionally broad language of both agreements clearly encompass the claims asserted in this case.

Significantly, the NFL clubs and the NFLMC, on the one hand, and NFL players and the NFLPA, on the other, routinely arbitrate workers' compensation disputes, where, as in this case, one side or the other contends that a provision of the CBA or NFL Player Contract requires a certain result in a state workers' compensation proceeding.  *See* Declaration of Adam J. Kaiser, submitted herewith.  That has been the case for decades.  Indeed, the NFLPA and NFLMC are currently in grievances under CBA Article IX concerning the rights of more than 60 players to file for workers' compensation benefits in California.  *See* Kaiser Decl., ¶ 9 and Exh. K.  Only the Bengals have spurned arbitration in favor of a lawsuit which is not permissible under the CBA or NFL Player Contract.

There are currently numerous grievances under the CBA concerning these same issues.  In *Tennessee Titans v. Bruce Matthews* (Kaiser Decl., ¶ 8 and Exh. J), for example, the Tennessee Titans, another NFL club, and the NFLMC commenced a grievance against Bruce Matthews, a former Titans player, contending that he violated his NFL Player Contract by filing for workers' compensation benefits in California.  Matthews' NFL Player Contract also

9

contained an addendum, which the Titans claimed required Matthews to file claims for benefits exclusively in Tennessee. Matthews sought benefits in California, and the Titans and NFLMC, invoking the arbitral framework of the CBA, claimed that Matthews violated his NFL Player Contract by seeking such benefits.[8] That case was tried by the NFLPA and the NFLMC on October 9, 2009. *See* Kaiser Decl., ¶ 8 and Exh. J. In addition, the NFLMC and the Miami Dolphins have instituted grievances against sixty-one former Dolphins players, arguing that they violated their NFL Player Contracts by seeking workers' compensation benefits in California. *See* Kaiser Decl., ¶ 9 and Exh. K. There too, the league's argument is that the players were bound to seek benefits exclusively in Florida as a result of a choice-of-forum provision in their NFL Player Contracts. The Matthews and Dolphins arbitrations are stark and irrefutable evidence that this dispute must be arbitrated under the CBA.

What is more, a review of the arbitral jurisprudence in this area (*see* Kaiser Decl., ¶ 3 and Exhs. A - I) demonstrates that the issues are complex and unique to professional football, and for that reason, the parties' chosen arbitrator, skilled in developing and applying what the Supreme Court refers to as the "law of the shop," *see United Steelworkers of Am., supra*, should resolve this dispute. It is for precisely this reason that the CBA contains extremely broad and expansive arbitration provisions -- to allow their chosen contract interpreters to develop a law for professional football, instead of allowing fifty different state courts to create a patchwork of inconsistent laws that would only bring chaos to the playing field. Indeed, if teams and players litigated issues concerning the meaning the CBA and NFL Player Contracts in state courts, the result, inevitably, would be a cacophony of inconsistent decisions that would dictate different

---

[8] The grievance alleges: "The filing of a workers' compensation claim in California is a direct violation of Paragraph 26D in his Titans contracts which obligates him to file any workers' compensation claim against the Titans exclusively within the State of Tennessee …" *See* Kaiser Decl., Exh. J.

rules for different teams and players, thus eviscerating the entire purpose of collective bargaining in the first place.

These concerns are real, not abstract. Indeed, suppose this Court denies the motion to compel arbitration and then ultimately interprets the NFL Player Contract as the Bengals suggest. If the NFL arbitrators in Matthews and Dolphins reach a different result, and those arbitral awards are confirmed in federal court, there would be federal court orders establishing two sets of rules -- one for Bengals players, and another for Titans and Dolphins players. As more states weighed in, the confusion and chaos would only deepen. The NFLPA and NFLMC (like virtually all unions and employers) sought to avoid such a result by requiring arbitration of all such disputes, so skilled arbitrators could develop a uniform law of the shop applicable to all NFL teams and all NFL players. In any event, the Titans, Dolphins and NFLMC knew how to bring their claims -- in arbitration -- and the Bengals' utter disregard for the exclusive arbitral mechanism in the CBA should not, respectfully, be countenanced by this Court.

## II. Because All Claims Are Subject To Arbitration, The Complaint Should Be Dismissed

If this Court finds that the Bengals' claims are subject to arbitration, the action should be dismissed. *Raasch v. NCR Corp.* 254 F.Supp.2d 847, 868 (S.D. Ohio 2003) ("Because the arbitration provision at issue is binding, such that the Court will play no meaningful role in the resolution of the underlying merits, it shall dismiss the action in its entirety, rather than stay the proceedings pending the outcome of arbitration"); *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 828 (S.D. Ohio 1999) ("…we note that a court may dismiss a lawsuit when it determines that all of the issues involved are subject to arbitration"); *Rex v. CSA-Credit Solutions of Am., Inc.* 507 F.Supp.2d 788, 800 (W.D. Mich. 2007) ("For the foregoing reasons, the Court

11

grants Defendant's motion to compel arbitration. As all of the claims raised before this Court must be referred to arbitration, this Court further orders that Plaintiff's complaint is dismissed without prejudice."); *Wilson v. Wells Fargo Fin. Acceptance, Inc.*, No. 3:02-0383, 2003 WL 1877336, at *3 (M.D. Tenn. Apr. 9, 2003) ("[I]f all of the issues in dispute are governed by the arbitration agreement, then it would generally be an inefficient use of the court's docket to enter a stay" and the proper remedy would be a dismissal).  Because all of the claims against the Players are subject to arbitration, both an order to compel arbitration and dismissing the Complaint are appropriate.

## CONCLUSION

For all of the foregoing reasons, the Players and proposed intervenor respectfully request that this Court issue an order to compel arbitration and dismiss the action.

Dated:  October 14, 2009

        Respectfully submitted,

        _s/ Thomas J. Kircher_____

        Thomas J. Kircher
        MANLEY BURKE
        225 W. Court Street
        Cincinnati, Ohio  45202-1098
        Telephone:  (513) 721-5525, Ext. 1557
        Facsimile:  (513) 721-4268
        tkircher@manleyburke.com

        *Attorneys for Defendants and Proposed Intervenor*
        *National Football League Players Association*

        Adam J. Kaiser
        DEWEY & LEBOEUF LLP
        1301 Avenue of the Americas
        New York, NY  10019-6092
        Telephone: (212) 259-8000
        Facsimile: (212) 259-6333
        akaiser@dl.com

        *Attorneys for Proposed Intervenor National*
        *Football League Players Association*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Motion of Defendants and Proposed Intervenor to Compel Arbitration and Dismiss the Complaint and Memorandum of Law in Support Thereof was served via ECF on October 14, 2009, on all counsel of record.

_s/ Thomas J. Kircher_