## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CINCINNATI BENGALS, INC.,

                  Plaintiff,

  - against -

KHALID ABDULLAH, SAM ADAMS,
MARCO BATTAGLIA, RASHAD
BAUMAN, ROGERS BECKETT, VAUGHN
BOOKER, DUANE CLEMONS, RON
DUGANS, DAVID DUNN, CHRIS
EDMONDS, OLIVER GIBSON, DAMON
GRIFFIN, KEVIN HARDY, RODNEY
HEATH, NICK LUCHEY, TREMAIN
MACK, TIMOTHY MCGEE, TONY
MCGEE, REGGIE MYLES, HANNIBAL
NAVIES, SCOTT REHBERG, ADRIAN
ROSS, TROY SADOWSKI, DARNAY
SCOTT, KABISA AKILI SMITH,
ARMEGIS SPEARMAN, GLEN STEELE,
DENNIS WEATHERSBY, RICHMOND
WEBB, BERNARD WHITTINGTON AND
DARRYL WILLIAMS, and REINARD
WILSON

                  Defendants.

Case No. 1:09 CV 738

Hon. Sandra S. Beckwith

Hon. Timothy S. Black

---

## ALL DEFENDANTS' AND PROPOSED INTERVENOR'S
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

The Bengals do not dispute the central basis of removal -- that because the

Bengals seek a declaration of its rights under the NFL Player Contract, which is part of the CBA,

there is original jurisdiction in this Court pursuant to Section 301 of the Labor Management

Relations Act ("LMRA").  *See* Notice of Removal, ¶¶ 7, 24-28.  Indeed, the Supreme Court has

held that "Section 301 governs claims founded directly on rights created by collective-bargaining

1

agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citation omitted).  Nor do the Bengals deny that all disputes concerning the NFL Player Contract must be resolved exclusively by arbitration under Article IX of the CBA and Paragraph 19 of the NFL Player Contract, and that original jurisdiction to compel arbitration also exists under Section 301.  *See* Notice of Removal, ¶ 29. [1]

Conceding that there is subject matter jurisdiction under LMRA § 301, and that, therefore, removal was proper under 28 U.S.C. § 1441 and 1446, the Bengals seek remand based on three alleged procedural defects.  *First*, the Bengals contend that the removal was untimely, but that is sheer nonsense.  The Bengals ignore clear Sixth Circuit precedent establishing that any defendant can remove a case to federal court within thirty days of service, even if other defendants were served more than thirty days prior to the removal.  That is the case here.  The Bengals recently amended the complaint in this action, and two of the defendants removed within thirty days of service.  The removal was timely.

*Second*, even more specious, if possible, the Bengals claim that all defendants did not consent to removal, even though the Notice of Removal clearly states that all defendants consented to removal.  The linchpin of the Bengals' Claim is that none of the defendants, except the two who formally removed the case, have filed anything with the court consenting to

---

[1] The Bengals were certainly aware that its claims were subject to arbitration because all claims are based expressly on the NFL Player Contract.  The Bengals have litigated this issue before.  In *Ernst v. Cincinnati Bengals*, No. C-75538, 1976 WL 189949 (Ohio App. 1 Dist. Aug. 30, 1976), for example, the player brought suit under NFL Player Contract for wrongful termination and the Bengals successfully moved to compel arbitration under that contract -- the same contract here.  Similarly, in *Cincinnati Bengals v. Thompson*, 553 F. Supp. 1011 (S.D. Ohio 1983), the Bengals sued its player in Ohio state court, seeking an injunction enjoining him from playing with another football team.  The player removed the case to federal court, and then the Bengals, even though they brought the suit, moved to compel arbitration.  The court, citing the very cases upon which the Players now rely to compel arbitration, granted the Bengals' motion to compel arbitration.  Moreover, other NFL clubs, including the Tennessee Titans, the Chicago Bears and the Miami Dolphins have filed identical or nearly identical grievances under the CBA.  It is unclear why the Bengals, unlike every other NFL club and the NFLMC, think that the mandatory arbitration provisions of the CBA do not apply to it.

removal.  That is factually wrong and legally irrelevant, however.  Manley Burke, which filed the Notice of Removal, represents all of the defendants, and hence when that firm represented that all defendants consented to removal, all defendants formally consented to the removal through their own counsel.  What is more, clear Sixth Circuit law, ignored by the Bengals, does not require the consenting defendants to file anything with the court.  It is enough that such defendants verbally indicate their consent to the counsel signing the notice of removal.

*Third*, the Bengals contend that removal was improper under 28 U.S.C. § 1445(c), because this case, the theory goes, "arises under" Ohio's workers' compensation laws.  The complaint, however, does not even mention this statute, or any aspect of Ohio's workers' compensation laws, but rather, seeks relief based solely on the parties' contract, which is part of the NFL CBA and must be interpreted solely under federal law.  Moreover, under Sixth Circuit law, which the Bengals refuse to acknowledge here as well, a claim "arises under" a state's workers' compensation law only where the statute creates a specific cause of action and provides a remedy.  Ohio's workers' compensation law does neither (explaining why the Bengals do not even cite the statute in their complaint).  And, even if the Bengals' claim did arise under Ohio's workers' compensation laws, which is clearly not the case, it would not make a difference, as there is no doubt a federal claim in the complaint (because the complaint seeks a declaration of rights under a collective bargaining agreement) and the law is clear that where a workers' compensation claim is joined with a claim arising under federal law, removal is appropriate under 28 U.S.C. § 1441(c).

## ARGUMENT

### I.   THE NOTICE OF REMOVAL IS TIMELY

The Bengals make a vague claim that the Notice of Removal is untimely (Motion to Remand, at 3), but the Bengals do not say why. And clearly, the Bengals are wrong. The Notice of Removal is timely because thirty days have not expired since the two Removing Defendants received a copy of the Amended Complaint.[2] The summons and Amended Complaint were sent to the Removing Defendants by certified mail on or after September 14, 2009, *see* Notice of Removal, Exhibit 1, less than 30 days prior to removal, and hence the Notice of Removal is timely.[3]

### II.   ALL PLAYERS HAVE CONSENTED TO REMOVAL

The Bengals contend that not all of the Players have consented to removal. Motion to Remand, at 3-5. But that is nonsense. All Players have unambiguously consented to removal. *See* Notice of Removal, at 1 ("All defendants consent to the removal of this case to this Court") and ¶ 6 ("All of the defendants ... have consented to the Removing Defendants' removal of this action ...").

The linchpin of the Bengals' argument is that "[t]he Notice is signed only by the attorney for the two Removing Defendants and simply states that the other defendants have

---

[2] *See* 28 U.S.C. § 1446(b); *Campbell v. R.D. Johnson*, No. 99-3021, 1999 WL 1254098, at *2 (6th Cir. Dec. 17, 1999) (Unpublished) ("In cases with multiple defendants served at different times, a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants"); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) ("a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants").

[3] Although the defendants named in the complaint before it was amended did not exercise their right of removal, they can at this time consent to the removal by the newly-added defendants. *See Brierly*, 184 F.3d at 533 n.3 ("We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own efforts to remove ... holding otherwise would vitiate the removal application of the later-served defendants and thereby nullify our holding that later-served defendants are entitled to 30 days to remove the case to district court").

consented" and "no other Defendant in this action has formally filed any consent." Motion to Remand, at 5. The Bengals have it wrong. Manley Burke is counsel for *all* defendants -- the two that formally removed the action to federal court *and* all of the others that consented to the removal.[4] All defendants *have* formally consented to the removal, by having their lawyer sign the Notice of Removal.

Equally important, the Bengals' argument ignores settled law. In this circuit, all defendants need not formally consent to the removal by way of a writing submitted to the court, but may consent orally by informing the attorney for the removing defendants that they consent. *Harper v. AutoAlliance International Inc.*, 392 F.3d 195, 201 (6th Cir. 2004), is dispositive. There, the plaintiff made the same exact argument that the Bengals make here, to wit, that removal was defective because one of the defendants had not formally filed a written consent to removal, but rather, had only orally confirmed his consent to the removing parties' counsel, who indicated such consent in the Notice of Removal. The plaintiff seeking removal contended that "'Rule 11' does not authorize any one party to make representations or file pleadings on behalf of another party" and that, therefore, consent had not been demonstrated. *Id.*

The Sixth Circuit disagreed. The court explained that the Rule 11 "merely requires any pleading to be signed 'by at least one attorney of record' and states that by presenting such pleading the attorney is certifying that, *inter alia*, 'the allegations and other factual contentions have evidentiary support.'" *Id.* The court held it was perfectly fine for the removing defendants' counsel to indicate in the notice of removal that the other defendants consented, and that the consenting defendant did not have to file anything else with the court to indicate such consent. *Id.* at 201-02; *see also City of Cleveland v. Deutsche Bank Trust Co.*, 571

---

[4] Indeed, Manley Burke has moved to compel arbitration and dismiss the Complaint on behalf of *all* defendants.

F. Supp.2d 807, 815 (N.D. Ohio 2008) ("Thus, *Harper* stands for the proposition that a party seeking to remove a case to federal court need do no more than obtain the consent of his fellow defendants and make a timely representation of that consent to the court. The individual co-defendants are not required to do anything (other than to indicate their consent verbally to the removing defendant's lawyer …").[5] The Bengals seem to believe that the law required Manley Burke to file a second document repeating the defendants' consent to removal as set forth in the Notice of Removal, but the law does not require such a ridiculous act.[6]

Moreover, in *Harper*, the Sixth Circuit held that there were two other ways a defendant could consent to the removal, even if they did not originally consent. *First*, a party may appear in federal court after the removal. *Harper,* 392 F.3d at 202 ("the district court correctly concluded that Kelly's answer complied with the rule of unanimity"). Here, all defendants have filed a motion to compel arbitration and dismiss the complaint under Fed. R. Civ. P. 12(b)(6), thus consenting to the removal in the same way as answering the complaint does. The defendants have also supported the NFLPA's motion to intervene and four of the defendants have moved to vacate default judgments entered against them. The Bengals say "[t]o date, no other Defendant has filed anything in this action," (Motion to Remand, at 3), but this ignores the motion to dismiss and other documents the Players have filed. The Bengals' representation to this Court that no "defendant has filed anything in this action" is plainly untrue.

---

[5] In *Harper*, the removing defendants' counsel did not represent all defendants and hence the plaintiff had at least a colorable argument that consent was not established unless the consenting defendants' counsel filed a written concurrence. But in this case the removing defendants' counsel represents all defendants and hence the Bengals have no argument at all.

[6] The Bengals, ignoring this law, rely upon an unpublished decision from a district court in Pennsylvania, *Sovereign Bank v. Park Dev. W., LLC*, Civ. No. 06-2603, 2006 WL 2433465 (E.D. Pa. Aug. 16, 2006), holding that the consenting defendants' counsel had to formally consent in writing. Motion to Remand, at 4. Putting aside that is not the law in this circuit, as set forth above, all defendants *have* formally consented in writing, because Manley Burke represents all defendants and it is Manley Burke that removed the case and represented that all defendants consented to the removal.

*Second*, "[i]n addition, the fact that Kelly subsequently opposed Harper's motion to remand cured any purported defect in the removal petition." *Id.; see also City of Cleveland*, 571 F. Supp.2d at 815 ("under Sixth Circuit authority, defendants can express consent to removal without making any filing in writing, but merely joining in opposition to a motion to remand"). Here, all defendants oppose the Bengals' motion to remand, and hence, to the extent there is any procedural defect in the consent provisions of the Notice of Removal -- which is not the case -- the defendants' unanimous opposition to the remand motion "cures" any such alleged "defect."

**III.    28 U.S.C. § 1445(c) DOES NOT BAR REMOVAL**

    **A.    The Bengals' Claim Does Not Arise Under Ohio's Workers' Compensation Laws**

        **(i)    The Complaint Does Not Even Mention It**

The Bengals' final argument is that this Court does not have subject matter jurisdiction because this is supposedly an action arising under Ohio's workers' compensation statute, O.R.C. § 4123.54, and 28 U.S.C. § 1445(c) provides that claims "arising under" state workers' compensation statutes are not removable. The Bengals claim that "Ohio workers' compensation law created the Bengals cause of action," (Motion to Remand, at 6), and, more specifically, that its action is predicated on O.R.C. § 4123.54, which states that "the employer and employee may agree to be bound by the laws of [Ohio]." This argument is, frankly, absurd.

The Bengals' claim was not created by O.R.C. § 4123.54; nor is it based on it. Indeed, O.R.C. § 4123.54 is not even *mentioned* in the Complaint. While the Bengals state in their *remand motion* that "Defendants' actions violate Ohio's workers' compensation law, O.R.C. § 4123.54," (Motion to Remand, at 1), and that "the Bengals sued defendants in Hamilton County Common Pleas for relief under Ohio's workers compensation statutes," (Motion to Remand, at 2), the *actual complaint* contains no such allegations or prayer for relief. The

remand motion represents the worst kind of revisionism. To be clear, *not a single paragraph* of the Bengals' 671-paragraph complaint mentions O.R.C. § 4123.54, or *any* aspect of Ohio workers' compensation law for that matter. Rather, each of the 56 causes of action revolves exclusively around the NFL Player Contract, which is part of the CBA. *See, e.g.*,:

- Am. Comp. ¶ 23 ("There is an actual and existing controversy between the Bengals and Defendant Abdullah concerning their respective rights and duties *under the Contract*") (emphasis added),

- Am. Comp. ¶ 24 ("Prompt relief is necessary to preserve the rights of the Bengals *under the Contract*") (emphasis added);

- Am. Comp. ¶ 27 ("Defendant Abdullah has sought relief under the workers' compensation laws of California, *in violation of the terms of the Contract.* Defendant's breach is interfering with the Bengals rights *under the Contract*") (emphasis added); and

- Am. Comp. ¶ 28 ("The Bengals will prevail on the merits of their declaratory judgment claim. The parties entered into *a valid written contract* mandating that claims be brought solely within Ohio") (emphasis added).

While the Bengals disingenuously cast their complaint to be about Ohio's workers' compensation statutes, any honest reading of the complaint makes clear that it is solely about the Players' NFL Player Contracts, which are part of the CBA.[7]

**(ii)     The Bengals' Claims Arises Exclusively Under Federal Law**

The Bengals do not dispute that the CBA must be interpreted under federal labor law, not state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Indeed, *all* disputes concerning the interpretation or application of a collective bargaining agreement *must* be resolved *exclusively* under federal labor law, to the exclusion of all state laws:

> Section 301 of the LMRA provides, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may

---

[7] The Amended Complaint makes a vague reference to "applicable Ohio law," (Am. Compl. ¶ 25), but the only Ohio law referred to is the general principle of law that "Ohio has an interest in the rights of employers and employees in its state and in enforcing valid contracts." *Id.* ¶ 31

> be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a).   The U.S. Supreme Court holds that this clause preempts state law claims alleging violation of collective bargaining agreements. ... Thus, "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Any claim alleging a breach of a collective bargaining agreement "must be resolved by reference to federal law." *DeCoe*, 32 F.3d at 216 (quoting *Allis-Chalmers Corp. V. Lueck*, 471 U.S. 202 (1985), internal quotation marks omitted).

*Broadbent v. Elliot-Lewis Corp.*, No. 1:07 CV 0314, 2007 WL 2688290, at *2 (N.D. Ohio Sept. 11, 2007).[8]

Pre-emption is so broad under § 301 that all state laws are pre-empted in situations that would merely "require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA." *Jones v. General Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991); *see also Dunn v. Hyatt Legal Plans, Inc.*, Nos. 1:05 CV 2541, 1:05 CV 2542, 2005 WL 3556682, at *3 (N.D. Ohio Dec. 27, 2005).[9] The Sixth Circuit has explained that pre-emption under § 301 is so expansive "because federal law envisions a national labor policy that would be disturbed by conflicting state interpretations of the same CBA." *Jones*, 939 F.3d at 382.  This is especially critical in the NFL generally, and in this case in particular.  NFL arbitrators have a long history

---

[8] *See also Lovely v. Aubrey*, No. 98-5871, 1999 WL 701921, at *4 (6th Cir. Aug. 30, 1999) ("The Supreme Court had held that this section preempts state law claims that allege a violation of a collective bargaining agreement"); *Lee v. Potter*, No. 3:08cv00344, 2009 WL 2057625, at *8 (S.D. Ohio July 14, 2009) (state law claims for breach of CBA pre-empted by Section 301); *Allen v. Int'l Truck and Engine Corp.*, No. 3:07cv361, 2009 WL 863591, at *10 (S.D. Ohio Mar. 31, 2009) (plaintiff's breach of contract claim preempted by § 301 because claim could not be adjudicated without reference to CBA); *Union of Needletrades, Indus. and Textile Employees, AFL-CIO v. Am. Capital Strategies, Ltd.*, 546 F. Supp.2d 546, 555 (S.D. Ohio 2008) ("The Supreme Court has long recognized the 'unusually powerful' preemptive force of § 301, which completely displaces any state law cause of action involving contracts between employers and labor organizations") (citation omitted); *Van Deusen v. St. Regis Paper Co.*, No. 57108, 1990 WL 75201, at *1-2 (Ohio App. 8 Dist. June 7, 1990) (dismissing as pre-empted employee's claim that his employer sought to injure him, noting that it required interpretation of CBA, including the arbitration provisions thereof).

[9] That is certainly the case here, at a minimum, as the relationship between the Bengals and its players was created by the CBA and the dispute entails a provision of the NFL Player Contract which is part of the CBA.

of interpreting and applying the NFL Player Contract, especially where it intersects with state workers' compensation laws. Because there are 32 NFL clubs in more than 20 states, NFL clubs (including the Bengals when it suits them), the NFLMC and the NFLPA look to the parties' chosen arbitrators to define what the NFL Player Contract means. Only chaos would ensue if every state that had an NFL team tried to interpret the CBA.

Here, the Tennessee Titans, Miami Dolphins, Chicago Bears and Cincinnati Bengals have all pressed the issue of whether NFL players for teams outside of California may file for workers' compensation benefits in California, where the CBA or NFL Player Contract has an express provision requiring the player to seek such benefits exclusively in the state where the team is located. Every NFL club *except the Bengals* has submitted this issue for grievance under Article IX of the CBA. But it is critically important that there be a single decision, by an NFL arbitrator, that will apply uniformly to all NFL players. Federal policies under § 301 pre-empting all state law claims and favoring arbitration require that the motion to remand be denied and that the Bengals be compelled to arbitrate their claims.

In any event, because all state laws are pre-empted where a party's claim requires the interpretation or application of a collective bargaining agreement, it is necessarily true that the Bengals' claims here -- all of which are *expressly based* on the NFL Player Contract and hence the CBA -- must be resolved exclusively under federal labor law (and before an NFL arbitrator). Accordingly, by definition the Bengals' claim cannot "arise under" Ohio's workers' compensation laws. To the contrary, the Bengals' claims arise exclusively under, and are governed exclusively by, federal labor law, which displaces and supplants entirely all state law.[10]

---

[10] In *Arredondo v. Sw. Bell Tel. Co.*, No. 96-40304, 1997 WL 73814, at *2 (5th Cir. 1997), an employee sued an employer for wrongful discharge, alleging that he was terminated in retaliation for filing a workers' compensation claim. His complaint alleged both that his termination violated the operative collective bargaining agreement and Texas' workers' compensation law. The Fifth Circuit held that the case was properly removable because the

> (iii)   **Under Sixth Circuit Law, § 1445(c) Is Implicated Only Where A State Workers' Compensation Law Provides A Specific Cause Of Action And A Specific Remedy, Which Is Not The Case Here**

An action arises under a state's workers' compensation law only if "(1) the workmen's compensation law *created* the cause of action or (2) the plaintiff's right to relief *necessarily depends* on resolution of a *substantial question* of workmen's compensation law." *Harper*, 392 F.3d at 203 (emphasis added).  Neither prong is applicable here.

As a matter of law, a cause of action will be deemed "created" by a workers' compensation law only when the statute (i) authorizes the specific cause of action and (ii) sets forth a precise remedy.  *Id*.  This issue most commonly arises in the area of retaliatory discharge -- an employee is fired for filing a workers' compensation claim and the employee sues; the employer then removes the case, and the issue before the court is whether the retaliatory discharge claim was created by the workers' compensation statute (in which instance the case must be remanded) or whether the retaliatory discharge claims exists apart from the statute (in which case remand must be denied if the case is otherwise removable).  In *Harper*, for example, the Michigan workers' compensation statute outlawed retaliatory discharges but did not "specify a remedy for retaliation or even a means to enforce the right to be protected," and hence, the Sixth Circuit held that the claim was *not* created by the Michigan statute (and thus removal was appropriate), even though the statute addressed retaliatory discharge and made it unlawful.

---

employee, by expressly suing for breach of the collective bargaining agreement, created federal subject matter jurisdiction under LMRA § 301, even if the case related to Texas' workers' compensation laws.  The same is true here.  There is original jurisdiction in this Court under Section 301 of the LMRA, as the Bengals' complaint expressly seeks a declaration of rights under the CBA, and hence, there is no possible way that the Bengals' claim was created by or is substantially dependent upon Ohio's workers' compensation laws.

*Harper*, 392 F.3d at 203.  The same result was reached in *Nixon v. Waste Management, Inc.*, 156 Fed. Appx. 784, 786 (6th Cir. 2005).[11]

Here, the statute in question merely provides that if two parties want to agree to be bound by the law of a particular state for conflicts "with respect to the application of workers' compensation laws," they can.  *See* O.R.C.  § 4123.54.  The statute does not provide a remedy for breaching such a contract or "even a means to enforce the right," *see Harper*, 392 F.3d at 203, which is probably why the Bengals did not even bother to plead the statute in their Complaint.  Under the settled law discussed above, ignored by the Bengals, it is clear that the Ohio workmen's compensation law did not create the Bengals' declaratory judgment and injunction causes of action.

Nor can the Bengals demonstrate the second prong of the test -- that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law."  *Harper*, 392 F.3d at 203.  Notably, the Bengals do not even deign to identify any substantial question of Ohio law at issue (none is pleaded in the Complaint), let alone explain how its claim "necessarily depends" on the resolution of that issue.[12]  To satisfy

---

[11] Ohio's workers' compensation law, unlike Michigan's, provides a "right and a remedy in situations of retaliatory discharge" and hence retaliatory discharge claims in Ohio are deemed to have been created by Ohio's statute.  *See Globe v. City of Bruswick*, 491 F. Supp.2d 722, 724 (S.D. Ohio 2007).  The Bengals rely on *Globe*, but *Globe* reaffirms why the Bengals' remand motion is meritless, as the Ohio statute here provides no right or remedy for allegedly violating a contract deemed permissible by O.R.C. § 4123.54.  Indeed, the Ohio retaliatory discharge statute "limits the available venue for such an action, limits the amount recoverable, and requires notice within ninety days of a violation and institution of the suit within 180 days."  *Horn v. Kmart Corp.*, No. 1:06-CV-493, 2007 WL 1138473, at *3 (S.D. Ohio Ap. 16, 2007).  There is nothing like that under O.R.C. § 4123.54.

[12] The Bengals also claim that this case arises under workers' compensation laws because the Players cite and rely upon *California*'s workers' compensation laws.  Motion to Remand, at 8.  However, the Bengals' claims would have to arise under Ohio's workers' compensation laws for § 1445(c) to apply:  "A civil action in any State court arising under the workmen's compensation laws *of such state* may not be removed …" (emphasis added).  On its face, Section 1445(c) only applies if the claim arises under the workers' compensation laws of the state where the suit was brought.  Hence, California workers' compensation law is irrelevant.  And, we note, again, that the Bengals' complaint does not seek a declaration of California's workers' compensation laws, just as it does not seek a declaration of Ohio's workers' compensation laws, but rather, seeks only a declaration of a contract that is governed exclusively by federal law by virtue of Section 301 of the LMRA.

this prong, the cause of action must necessarily implicate the core of the workers' compensation statute -- compensating an employee for an injury. *Harper*, 392 F.3d at 208 (cause of action must "necessarily [be] dependent upon the administrative mechanisms and/or remedies of the applicable workers' compensation statute" to satisfy this test). The Bengals cannot meet that standard here, as this case as nothing to do with the Ohio statute, and certainly not with any benefits available under that statute. Rather, at issue is a choice-of-forum provision in the CBA that must be interpreted under federal law. The Bengals' declaratory judgment/injunction action plainly does not "necessarily depend" on O.R.C. § 4123.54, as evidenced most starkly by the absence of any reference to that statute in the Complaint, and hence, the Bengals cannot satisfy this prong of the test either.

    In an effort to confound, rather than clarify, the issues, the Bengals cite three Ohio state cases involving Bengals players, (Motion to Remand, at 8), but the first two (the last is an unreported decision we have not been able to find) and probably the third one as well involved appeals from the Ohio workers' compensation administrative courts -- *i.e.,* workaday issues relating to benefits under Ohio's workers' compensation laws. Cases such as those, involving the application of Ohio's "no fault" workers' compensation regime, belong in state court and cannot be removed to federal court because they go to the core of the workers' compensation statute -- the application of Ohio's "no fault" remedial scheme. But this is not that kind of case. None of the defendants seeks an award of damages under Ohio's workers' compensation statutes. The statute is not even mentioned in the complaint. The Bengals can cite to as many state workers' compensation cases as it wants to, but it does not support its motion to remand because this case is not like a player's filing of a workers' compensation claim in any respect whatsoever.

The cases cited by the Bengals are relevant, however, for an entirely different reason. These cases (at least the first two) involved, in part, Paragraph 10 of the NFL Player Contract. NFL clubs (such as the Bengals, in these very cases) had historically argued in state court workers' compensation proceedings that Paragraph 10 of the NFL Player Contract provided NFL clubs with extraordinary "offset" rights that reduced state workers' compensation awards, usually to zero dollars if the offset was applied as the club sought. On the other hand, NFL players usually argued that Paragraph 10 severely limited offset rights that might be available to NFL clubs under state law. Thus, these disputes involved an intersection of state workers' compensation laws and the CBA. As set forth in the Declaration of Adam J. Kaiser dated October 14, 2009 ("Kaiser Decl. I") [DE 4-1], at Exhibits A-G, the NFLPA and NFLMC began submitting grievances under CBA with respect to the "offset" issue under Paragraph 10 as early as 1986. Finally, in 2007, the NFLPA and the NFL conclusively arbitrated this issue. *See* Kaiser Decl. I, Exhibit F. The NFL arbitrator issued a declaration as to what Paragraph 10 means (in favor of the players), declaring that this is "law of the shop under this CBA and is binding on all the Clubs." *See* Exhibit F at 21. The NFL arbitrator further ruled that he, rather than a court, must issue this declaration "because the parties have agreed [in the CBA] that the arbitrator, not a court or other tribunal, is to be the final determiner of what a provision in the CBA means and what constitutes the law of the shop." *Id.* at 21-22.[13] The arbitral award was confirmed in federal court. *See* Kaiser Decl. I, Exhibit G.

---

[13] Arbitration plays an especially important role in federal labor law. As stated by the Supreme Court: "The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed by foreign to the competence of courts … He is rather part of a system of self-government created by and confined to the parties.' (citation omitted) … The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law -- the practices of the industry and the shop -- is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment … For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted

The current sparring between players and NFL Clubs over the right to file for workers' compensation benefits in California presents a similar intersection of state workers' compensation laws and the CBA.  These disputes are governed by federal law, as they entail the interpretation of the CBA, and will need to be resolved in arbitration.  In fact, the Tennessee Titans, the Chicago Bears and the Miami Dolphins, along with the NFLMC, have recently filed dozens of grievances under the CBA against players filing for benefits in California, making the exact same claim being made by the Bengals here.[14]

Everyone, except the Bengals, realizes that this must be arbitrated.  The Bengals cite to no precedent in the history of the NFL -- and we are not aware of any -- where an NFL Club ever sued a player for a declaration of rights under the NFL Player contract.[15]  To the contrary, these disputes (such as those over Paragraph 10) involving the intersection of the CBA and state workers' compensation laws have always been arbitrated.  And the Bengals know that arbitration is required; indeed, they have in the past successfully moved to compel arbitration in disputes between it and its players over terms of the NFL Player Contract.  *See Ernst v.*

---

production under the agreement, to make the agreement serve their specialized needs.  The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *United Steelworkers of Am.*, 363 U.S. at 581-82.  *See also, Int'l Ass'n of Machinists and Aerospace Workers v. ISP Chems., Inc.*, 261 Fed. Appx. 841, 845 (6th Cir. 2008); *United Steelworkers of America, AFL-CIO, CLC v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007); *Detroit Typographical Union, Local 18 v. Detroit Newspaper Agency*, 283 F.3d 779, 786 (6th Cir. 2002).

[14] *See* Kaiser Decl. I at Exhibit K (Dolphins Grievances); Exhibit J (Titans' Grievance) and Declaration of Adam J. Kaiser dated November 18, 2009 at Exhibit A (Bears Grievance).

[15] In this context, the Bengals' statement that "[w]orkers' compensation issues between NFL Players and teams have always been governed by state law" and adjudicated in state courts (Motion to Remand, 7-8) is just plain wrong.  As explained below, NFL Clubs have always arbitrated workers' compensation disputes to the extent they required the interpretation or application of the CBA or NFL Player Contract.  Thus, in the mountain of arbitrations concerning Paragraph 10, for example, it was the NFL arbitrator under a CBA grievance that had to determine how that paragraph would be applied, to the exclusion of state courts applying state law.  While state law, of course, defines what workers' compensation benefits are available under state law, when the issue at hand is a provision of the CBA/NFL Player Contract, arbitral jurisdiction is created and the parties must submit the dispute to arbitration, as has always occurred, until now, in this case, where the Bengals inexplicably seek a determination from a state court as to what the NFL Player Contract requires.

*Cincinnati Bengals*, No. C-75538, 1976 WL 189949 (Ohio App. 1 Dist. Aug. 30, 1976);

*Cincinnati Bengals v. Thompson*, 553 F. Supp. 1011 (S.D. Ohio 1983).  It is simply outrageous

for the Bengals to skirt their obligation under federal labor law and the CBA to arbitrate this

dispute, given the clear obligation to do so under the CBA, the presence of dozens of other NFL

grievances over this same issue, history of arbitrating similar disputes involving the intersection

of state workers' compensation law and the NFL Player Contract, and the Bengals' own history

of successfully moving to compel arbitration over disputes concerning the NFL Player Contract.

In any event, because this case involves the meaning and interpretation of the NFL Player

Contract, there can be no dispute both that federal labor law, and not Ohio law, governs this case,

and that, *ipso facto*, the Bengals' claims cannot, and do not, arise under Ohio's workers'

compensation law.  As a result, § 1445(c) is irrelevant.

> **B.** **Even If § 1445(c) Applied, This Action Would Still Be Removable
> Under § 1441(c)**

The Bengals ignore 28 U.S.C. § 1441(c), which states that "[w]henever a separate

and independent claim or cause of action within the jurisdiction conferred by section 1331 of this

title is joined with one or more otherwise non-removable claims or causes of action, the entire

case may be removed and the district court may determine all issues therein, or, in its discretion,

may remand all matters in which State law predominates."  Courts have uniformly applied §

1441(c) to allow removal in cases where the plaintiff alleges a non-removable workers'

compensation claim under § 1445(c) along with a claim that is removable under § 1331 (federal

question jurisdiction).  Hence, even if the Complaint were construed to allege a claim arising

under Ohio's workers' compensation law despite any reference to Ohio's workers' compensation

law in the Complaint and clear Sixth Circuit law precluding that construction, removal would be

appropriate because of the presence of separate and independent claims clearly governed by

federal law.[16] *See Horn v. Kmart Corp.*, No. 1:06-CV-493, 2007 WL 1138473, at *4 (S.D. Ohio Apr. 16, 2007) (noting that § 1441(c) would allow a court to deny remand if there was a non-removable claim under § 1445(c) pleaded along with a claim removable as a federal question under § 1331, but remanding the case because no federal claim was pleaded and removal was based solely on diversity).[17]

In *Wood v. Newell Manufacturing Co.*, No. 1:96-CV-331, 1996 WL 495567 (W.D. Mich. July 11, 1996), for example, an employee filed suit in state court alleging both that her employer fired her for filing a workers' compensation claim and that such conduct breached the operative collective bargaining agreement. The court held that while the retaliatory discharge claim may not be removable under § 1445(c), the claim based on the collective bargaining agreement presented a federal question under the LMRA, thus allowing removal under § 1441(c). *Id.* at *1-2. *Radcliff v. El Paso Corp.*, 377 F. Supp.2d 558 (S.D. W. Va. 2005), is in accord. There, the employee filed a claim for retaliatory discharge under West Virginia's workers' compensation laws, and a claim for benefits that was completely pre-empted by ERISA. The court held that while the former claim was non-removable by dint of § 1445(c), the pre-empted claim was removable, and hence, under § 1441(c) the entire case was removable. *Id.* at 566.[18]

---

[16] As set forth in the Notice of Removal, the Bengals' Complaint seeks a declaratory judgment and injunction enforcing the NFL Player Contract, which is part of the CBA. An action based directly on the CBA such as those pleaded in the Complaint is governed exclusively by federal law, LMRA § 301. Hence, at a minimum, there is a separate and independent claim in the Complaint governed exclusively by federal law, allowing removal.

[17] In *Horn*, 2007 WL 1138473, at *5, the court noted that § 1445(c) was enacted to further two policies: "First, Congress sought to decrease the number of cases in federal court based on diversity jurisdiction. Second, Congress wanted to 'relieve workers of the expense and delay of litigating in federal court.'" (citation omitted). None of these policies support remand here, where removal was not based on diversity but original jurisdiction under the LMRA and it is the employees, not the employers, who seek a federal forum.

[18] *See also Nuemann v. AT&T Commc'ns, Inc.*, Nos. Civ. 01-2339, 01-1551, 2002 WL 1949747, at *3 n.3 (D. Minn. Aug. 12, 2002) (where one claim was not removable under § 1445(c) but one claim was removable because it presented a federal question, the entire case is removable under § 1441(c)); *Jenks v. USF Holland Inc.*, No. 3:09 CV 31, 2009 WL 1850960, at *2 (W.D.N.C. June 29, 2009) (same).

The Bengals cite *Johnson v. AGCO Corp.*, 159 F.3d 1114, 1115-16 (8th Cir. 1998),[19] as purportedly standing for the proposition that a case should be remanded where it arose "under workers' compensation law despite presence of federal question arising under LMRA." *See* Motion to Remand, at 9.  The Bengals' sound-bite description of the case could not be more misleading.   There, the court held that there was *no* federal question under the LMRA, because the LMRA did not pre-empt the plaintiff's state law retaliatory discharge claim, which the court held was not removable under § 1445(c).  The employer in that case argued pre-emption, but the court rejected that claim because the employee's cause of action was based solely on Missouri's workers' compensation statute.  The court was quick to note, however, that the result would be different if the plaintiff had sued for breach of the collective bargaining agreement: "Complete preemption occurs only when a plaintiff's claim itself is based on rights created directly by, or substantially dependent upon an analysis of, a collective bargaining agreement." *Id.* at 1116.  Here, in sharp contrast to *Johnson*, the Bengals' *only* pleaded claims are for a declaratory judgment declaring the parties' rights *under the CBA* and a claim for injunction allegedly to *enforce the CBA*.  Those claims (unlike any of the claims in *Johnson*) are completely pre-empted by LMRA § 301, and hence under *Johnson* this case is removable.

The Bengals also cite *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 724 (7th Cir. 1994), but *Spearman* did not involve any federal claim and that case actually demonstrates why the Bengals' arguments are baseless. *See* Motion to Remand, at 9.  There, the court held that § 1445(c) was "designed to prevent removals that would nullify the 'expeditious and inexpensive' procedures states had devised for workers' compensation claims." *Id.* at 724 (citation omitted).  As a result, § 1445(c) only applies, the court held, if the state law cause of

---

[19] The Bengals cite this as a Fifth Circuit case, but it is an Eight Circuit opinion.

action necessarily entails making a state law determination about liability without fault -- the core of the workers' compensation statute. *Id. Anything else*, such as a retaliatory discharge claim, does not in the Seventh Circuit arise under a state's workers' compensation laws, because it does not entail applying the "no fault" aspect of the state workers' compensation law. Accordingly, the court held that the employer properly removed the case and denied the employee's motion to remand. Following *Spearman*, trumpeted by the Bengals, this case should not be remanded either, because the Bengals' claims do not seek a determination as to the Bengals' "no fault" liability under Ohio's workers' compensation regime, but rather, seeks traditional remedies of a declaratory judgment and injunction enforcing the terms of an employment contract.

The Bengals forget that 28 U.S.C. § 1445(c) is a *procedural* requirement and does not affect the court's subject matter jurisdiction.[20] The Bengals treat § 1445(c) as a meta-rule, stripping the Court of jurisdiction even if there is original jurisdiction under LMRA § 301, but the law is otherwise. Section 1445(c) is a limited procedural rule that does not apply because the Bengals' declaratory judgment and injunction claims were not created by Ohio workers' compensation statutes, but even if § 1445(c) did apply, it would not matter at all because the claims are removable under LMRA § 301.

## CONCLUSION

---

[20] *See, e.g., Williams v. AC Spark Plugs Div. of General Motors Corp.*, 985 F.2d 783, 786-87 (5th Cir. 1993) (§ 1445(c) is a waivable procedural requirement and does not affect subject matter jurisdiction); *Spellman v. United Parcel Serv., Inc.*, 540 F. Supp.2d 237, 242 n.10 (D. Me. 2008) ("the weight of authority treats non-compliance with §1445(c) as a procedural defect, not a question of subject matter jurisdiction"); *Hamblin v. Coinstar, Inc.*, No. CIV. S-07-1258 WBS KJM, 2007 WL 4181822, at *1 n.1 (E.D. Cal. Nov. 21, 2007) ("The bar against removal in § 1441(c) is procedural, thus does not limit the court's subject matter jurisdiction and can be waived"); *Hackworth v. Guyan Heavy Equip., Inc.*, 613 F. Supp.2d 908, 912 (E.D. Ky. 2009) ("violation of § 1445(c) is a procedural -- rather than jurisdictional -- defect in removal"); *see also Carpenter v. Baltimore & O.R. Co.*, 109 F.2d 375, 379-80 (6th Cir. 1940) (holding that statute providing that "no case brought under the Federal Employers' Liability Act in a state court of competent jurisdiction shall be removed to any court of the United States" was a procedural statute that "does not purport to limit the jurisdiction of the District Court ... where a Federal court would have had jurisdiction of a cause if originally brought there ... It is a question of venue and not jurisdiction").

The Bengals motion to remand is without merit and thus ought to be denied.


Dated: November 25, 2009

Respectfully submitted,

Thomas J. Kircher
MANLEY BURKE
225 W. Court Street
Cincinnati, Ohio 45202-1098
Telephone: (513) 721-5525, Ext.  1557
Facsimile: (513) 721-4268
tkircher@manleyburke.com

*Attorneys for Defendants and Proposed Intervenor*
*National Football League Players Association*

Adam J. Kaiser
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
akaiser@dl.com

*Attorneys for Proposed Intervenor National*
*Football League Players Association*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Defendants' and Proposed

Intervenor's Opposition to Plaintiff's Motion for Extension of Time was served via ECF on

November 25, 2009, on all counsel of record.

NY4 4020417.2 779605 000009 11/24/2009 06:31pm