**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CINCINNATI BENGALS, INC.,

                              Plaintiff,

        - against -

KHALID ABDULLAH, SAM ADAMS,
MARCO BATTAGLIA, RASHAD
BAUMAN, ROGERS BECKETT, VAUGHN
BOOKER, DUANE CLEMONS, RON
DUGANS, DAVID DUNN, CHRIS
EDMONDS, OLIVER GIBSON, DAMON
GRIFFIN, KEVIN HARDY, RODNEY
HEATH, NICK LUCHEY, TREMAIN
MACK, TIMOTHY MCGEE, TONY
MCGEE, REGGIE MYLES, HANNIBAL
NAVIES, SCOTT REHBERG, ADRIAN
ROSS, TROY SADOWSKI, DARNAY
SCOTT, KABISA AKILI SMITH,
ARMEGIS SPEARMAN, GLEN STEELE,
DENNIS WEATHERSBY, RICHMOND
WEBB, BERNARD WHITTINGTON AND
DARRYL WILLIAMS, AND REINARD
WILSON

                              Defendants.

Case No. 1:09 CV 738

Hon. Sandra S. Beckwith

Hon. Timothy S. Black

---

**THE DEFENDANTS AND PROPOSED INTERVENOR'S**
**MEMORADUM OF LAW IN FURTHER SUPPORT OF THEIR**
**MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT**

**PRELIMINARY STATEMENT[1]**

        NFL Clubs and NFL Players routinely submit to arbitration, as they are required

to do under the CBA and the NFL Player Contract, all disputes between them.  The Players and

NFLPA have put before this Court previous arbitration awards wherein NFL Arbitrators

---

[1] All terms defined in the Defendants' moving brief [DE-5] are used as defined terms herein.

resolved disputes between Players and Clubs related to the intersection of state workers'

compensation laws, on the one hand, and the CBA or NFL Player Contracts, on the other.

Indeed, the Bengals do not dispute that there are currently pending over 70 arbitrations brought

by the NFLMC/NFL Clubs (the Miami Dolphins and Tennessee Titans) against NFL players

and the NFLPA concerning NFL players filing for workers' compensation benefits in

California. The Bengals provide no legitimate reason why their claims should be treated

differently and not subject to arbitration.

   The Bengals also ignore their own history in seeking to compel arbitration

under the Player Contract. *Cincinnati Bengals v. Thompson*, 553 F. Supp. 1011 (S.D. Ohio

1983), is informative. In that case, the Bengals sued its player in Ohio state court, seeking to

enjoin him from playing for another football team. The player removed the case to federal

court, and then the Bengals, even though they brought the suit, moved to compel arbitration.

The court, citing the very cases upon which the Players and NFLPA now rely to compel

arbitration, granted the Bengals' motion to compel arbitration. *Id.* at 1016.[2] The Bengals do

not explain why the claims here, all of which are expressly based on the NFL Player Contract,

should not be subject to arbitration as well.

   In a desperate effort to avoid arbitration, the Bengals make three arguments,

each of which is meritless.

   *First*, the Bengals contend that under federal law there is no presumption of

arbitrability because this case is governed by the LMRA, and not the FAA. The exact opposite

is true. The presumption in favor of arbitration is at its highest when the parties are subject to a

collective bargaining agreement. The cases establishing this proposition are, frankly, legion.

---

[2] Similarly, in *Ernst v. Cincinnati Bengals*, 1976 WL 189949 (Ohio App. 1 Dist. Aug. 30, 1976), a player brought suit under the NFL Player Contract for wrongful termination and the Bengals successfully moved to compel arbitration under that contract – the same contract here.

*Second*, the Bengals claim that they have "statutory claims" that are not subject to arbitration. This is wrong. The Bengals have no statutory claims. All of the Bengals' claims are based on the NFL Player Contract.[3] The court has already held, in denying the Bengals' remand motion, that the Ohio Statute they cite (but never even mentioned in their Complaint) does not create a private right of action. And, even if the Bengals had a "statutory claim," which they do not, under settled law it would be subject to arbitration.

*Third*, the Bengals attack the process of arbitration under the CBA, arguing that it is "inadequate." The Bengals' indictment of arbitration under the CBA is shocking. For generations, the 32 NFL Clubs and thousands of NFL Players have employed the arbitral machinery to resolve their disputes. The arbitration provisions of the CBA were negotiated at the bargaining table by the NFLPA, on behalf of NFL Players, and the NFLMC, on behalf of the NFL Clubs, including the Bengals. It did not fall out of the sky. If the Bengals have a beef with the arbitration process, they can take it up with the NFLMC and ask that the arbitration provisions of the CBA be renegotiated at the next bargaining session (the NFL CBA expires at the end of the 2011 season). But to ask this Court to allow it to sidestep the arbitration process on the basis that is does not suit the Bengals' taste is totally improper, and meritless.

## ARGUMENT

## I.    THERE IS A STRONG PRESUMPTION OF ARBITRABILITY

The Bengals contend that, because arbitration is governed by the LMRA, and not the FAA, there is no presumption of arbitrability. The Bengals are wrong. To begin with, it is unclear whether the FAA or LMRA applies. In *United Paperworkers Int'l Union, AFL-*

---

[3] Attached to the Declaration of Jeffrey H. Newhouse ("Newhouse Decl."), dated Mar. 8, 2010, at Exh. II, is a copy of one of the NFL Player Contracts. It was previously attached to the Declaration of Adam J. Kaiser ("Kaiser Decl. I"), dated Oct. 14, 2009, Exh. L. [DE-5]. The pre-printed arbitration clause (paragraph 19) is required by the CBA and it is identical in each contract. The alleged waiver clause is "Addendum No. 3" to the agreement and it is also identical in each contract.

*CIO v. Misco, Inc.*, 484 U.S. 29, 41 n.9 (1987), the Supreme Court ruled that the FAA does not directly apply to a dispute governed by a collective bargaining agreement, which is instead governed by the LMRA, but that the FAA guides arbitration under the LMRA. However, in *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1471 n.10 (2009), the court more recently indicated, albeit in *dicta*, that the FAA applies to labor arbitrations. The analysis is further complicated by the fact that there are two arbitration agreements. One, in the Player Contract, is part of the CBA and thus governed by it, but it is also an employment agreement between the Player and the Bengals. "Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002). Thus, it may be the case that the LMRA applies to Article IX of the CBA, while the FAA (or the LMRA and the FAA) applies to the Player Contract. None of this matters, however, because arbitration is favored under both statutes.

In the famous *Steelworkers* trilogy, discussed on pp. 5-7 of the moving brief [DE-5], the Supreme Court made clear that arbitration is strongly favored under the LMRA, and that a court should grant a party's arbitration demand absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Following *Steelworkers*, the federal courts have uniformly and steadfastly applied a hefty presumption in favor of arbitration in all cases governed by the LMRA.[4] "[I]n cases under §

---

[4] *See, e.g., Int'l Ass'n of Machinists and Aerospace Workers v. ISP Chems., Inc.*, 261 Fed.Appx. 841, 849 (6th Cir. 2008) (reversing the district court, granting summary judgment for a union that filed an action seeking to compel arbitration under the LMRA, and noting that "this court must resolve any doubts in favor of arbitration"); *Mich. Family Resources, Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 750 (6th Cir. 2007) (quotations omitted); *United Food and Commercial Workers, Local 17A v. Fresh Mark*, 2003 WL 22682431, at *3 (6th Cir. Nov. 6, 2003) ("in cases under § 301 of the LMRA, a strong presumption of arbitrability has been applied to disputes in which a CBA has an arbitration clause"); *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) (same).

301 of the LMRA, a strong presumption of arbitrability has been applied to disputes in which a CBA has an arbitration clause." *United Food and Commercial Workers, Local 17A v. Fresh Mark,* 2003 WL 22682431, at *3 (6th Cir. Nov. 6, 2003); *see also Int'l Ass'n of Machinists and Aerospace Workers,* 261 Fed.Appx. at 849. Indeed, this Court has explained, in a case involving the Bengals no less, "[t]here is no more fundamental policy in our national labor laws than that which favors peaceful resolution of labor disputes through voluntary arbitration." *Cincinnati Bengals,* 553 F. Supp. at 1016 (citations omitted)[5]; *see also United Steelworks of Am., AFL-CIO, CLC v. Century Aluminum of Ky.,* 2005 WL 3338257, at *3 (6th Cir. Dec. 8, 2005) ("national labor policy favors arbitration"); *Scholz Homes, Inc. v. Int'l Brotherhood of Teamsters, Local 20,* 1976 WL 1505, at *2 (N.D. Ohio Apr. 22, 1976) (discussing "the national labor policy favoring arbitration of labor disputes"). There is certainly a "presumption of arbitrability for labor disputes." *AT&T Techs. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). *Givens v. Tenn. Football, Inc.,* 2010 WL 517411, at *5 (M.D. Tenn. Feb. 10, 2010), attached as Exh. A to the Declaration of Jeffrey H. Newhouse, dated Mar. 8, 2010 ("Newhouse Decl."), is directly on point. There, the court dismissed the player's case "because preempted claims *must* first be presented through the arbitration procedure established in a collective bargaining agreement." *Id.* (emphasis added). The same is true here. This Court has already found that the Bengals' claims are preempted by Section 301. What follows, therefore, is an order compelling arbitration.

---

[5] In *Cincinnati Bengals, Inc. v. Thompson,* 553 F. Supp. 1011 (S.D. Ohio 1983), the Bengals sued a player in state court for allegedly breaching the Player Contract. The case was removed to federal court, and the Bengals then sought to compel arbitration of their own claims. In moving to compel, the Bengals apparently relied on "the strong federal policy in favor of arbitration and the rules of contract construction enunciated by the Supreme Court in the *Steelworkers Trilogy*", *see id.* at 1016, even though in this case the Bengals contend here that there is no policy in favor of arbitration.

The strong presumption of arbitrability is even more forceful when the arbitration clause is broad. As the Sixth Circuit has explained, "[t]he presumption of arbitrability is particularly applicable to broad arbitration clauses." *Century Aluminum of Ky.*, 2005 WL 3338257, at *2; *see also AT&T Techs.*, 475 U.S. at 650 (presumption of arbitrability is "particularly applicable where the clause is broad as the one [here], which provides for arbitration of 'any differences arising with respect to the interpretation of this contract . . .'"). Thus, when an arbitration clause is broad, "the strength of the presumption of arbitrability *increases*." *Fresh Mark*, 2003 WL 22682431, at *4 (emphasis added). A broad arbitration clause is one that applies to disputes "involving the interpretation of, or compliance with, this Agreement." *Mead Corp.*, 21 F.3d at 132. One of the two arbitration clauses at issue here -- Art. IX of the CBA -- not only tracks this language, but it creates even broader arbitral jurisdiction, as it states, "[a]ny dispute . . . involving the interpretation of, application of, or compliance with any provision of this Agreement." *See* CBA, Art. IX, attached to the Notice of Removal [DE-1] as Exh. 6. The other arbitration clause at issue -- Paragraph 19 of the NFL Player Contract -- is also broad, providing for arbitration of "any dispute . . . involving the interpretation or application of any provision of this contract." *See* NFL Player Contract, attached to the Notice of Removal [DE-1] as Exh. 4.

The Bengals offer no authority, because there is none, to support their argument that there is no presumption of arbitability. The Bengals cite two cases, *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998), and *National Football League Players Ass'n v. National Football League*, 2009 WL 855946 (S.D.N.Y. Mar. 26, 2009), in support of their argument. Neither is relevant. They are inapposite. *Wright* deals with the arbitration of federal statutory civil rights claims, which involve different considerations, discussed below in

Point III. *National League Football Players Ass'n v. National Football League*, 2009 WL 855946, has nothing to do with the presumption of arbitrability under the LMRA. The case involved confirmation of an arbitration award, not a motion to compel arbitration. The court never even discussed the presumption in favor of arbitration, as the parties had in fact arbitrated their dispute.[6]

Moreover, as argued by the Players and NFLPA in their moving brief, there are at least 70 NFL arbitrations pending, brought by the NFLMC and various NFL Clubs, over whether players can file for benefits in California. We urged this Court to let NFL arbitrators decide this issue, as opposed to having individual judges issue potentially conflicting decisions that would undermine not only the arbitral process, but the CBA itself. We note that this Court relied on the same policy grounds in granting the Bengals' motion to compel arbitration of its own claims brought against a player:

> Our conclusion that under the law the motion to compel arbitration should be granted is also supported by policy considerations. We are unaware of other lawsuits arising out of the 1982 professional football strike that present similar issues. Nonetheless, we believe that such disputes were contemplated by the Management Council and the NFLPA when they negotiated the Collective Bargaining Agreement and the standard NFL Player Contract at issue here. Further we believe that the arbitration provisions of Article VII were included to provide a mechanism by which such disputes could be resolved. It is apparent to us that having the merits of this case decided by an arbitrator whose decision will be binding upon the NFL including the Management Council and the NFLPA is greatly to be preferred. The likely alternative is a hodge podge of conflicting state and federal court decisions, each of which is binding only on the parties to that suit. . . . in light of the nature of the football industry, and the clarity that will result from having this issue of contract interpretation resolved by an arbitrator rather

---

[6] What is more, that case was about the NFLPA petitioning a district court to confirm an arbitration award that declared, under the law of the shop, that NFL clubs were *not* entitled to deduct certain workers' compensation benefits from players' salaries -- an action that the clubs claimed was permitted by state law. That case demonstrates that there is arbitral jurisdiction to resolve cases just like this one, involving the intersection of the Player Contract and state workers' compensation laws.

than by a variety of courts, we conclude that plaintiff's motion is
well-taken.

*Cincinnati Bengals*, 553 F. Supp. at 1017-18. These considerations apply with equal force

here.

## II. THE BENGALS' CONTRACT CLAIMS MUST BE ARBITRATED

The Bengals admit that their contract claims are subject to arbitration.

Specifically, they say "[t]o the extent this case represented a straightforward dispute over the

'interpretation' or 'application' of either the CBA or the Contracts, the Bengals would agree

that the claims would be subject to arbitration." *See* Bengals' Br., at 5. This Court has already

ruled that "the substance of the claims arises from the parties' contracts." *See* Decision, DE-18

at 18. As a result, the Bengals' contract claims, which are all of the claims asserted in its

amended complaint, are by the Bengals' own admission subject to arbitration.

## III. THE BENGALS DO NOT HAVE "STATUTORY" CLAIMS AND EVEN IF THEY DID, WHICH THEY DO NOT, THEY WOULD BE SUBJECT TO ARBITRATION

Realizing that, based on this Court's decision that all of their claims are based

on the Player Contract and that, therefore, arbitration will be required (because the Player

Contract and CBA have ironclad arbitration provisions that must be enforced under federal

labor law), the Bengals, without the necessary leave of court, filed a Second Amended

Complaint ("SAC") [DE-19] in the hope of asserting non-arbitrable claims. The Bengals'

gamesmanship does not change the result, however. Arbitration of all claims is still required,

as set forth below.

### A. The Second Amended Complaint Should Not Be Considered

Pursuant to Fed. R. Civ. P. 15(a)(1), a plaintiff is allowed without leave of court

to amend its complaint only once. Where, as here, the plaintiff amends his complaint once in

state court (the Bengals amended their Complaint on September 4, 2009 when they added 22

additional players to the suit, *see* Bengals' Br., at 2), and then the case is removed, the amendment in state court is considered the first amendment, and hence, any subsequent amendment in federal court post-removal requires leave of court under Fed. R. Civ. P. 15(a)(2). *See, e.g.*, *Howell v. Fresno*, 2007 WL 1501844 (E.D. Cal. 2007); *Whitehead v. Viacom*, 233 F. Supp.2d 715 (D. Md. 2002). Hence, because the SAC was filed without leave or consent of the Defendants, it is improper and thus should not even be considered by this Court. Moreover, the Complaint was clearly amended as a tactic to avoid arbitration, gamesmanship that should not be countenanced by this Court.[7]

### B. There Is No Statutory Claim

The Bengals repeatedly refer to their new "statutory claim." The problem is that the Bengals do not have any statutory claims. This Court has already held that the statute upon which the Bengals rely, O.R.C. § 4123.54, "does not prescribe a specific remedy for a breach of an employment contract that might include a clause adopted by agreement of the parties under Section 4123.54." *See* DE-18 at 14-15. The Bengals, realizing that the Court's ruling in this regard, suggest in a footnote, without any analysis whatsoever, that there may indeed be a private right of action under the statute. *See* Bengals' Br., 3 n.1. This is error. In any event, it is the Bengals' burden to show that claims are not arbitrable. *See supra,* Point I. Footnote 1 of the Bengals' brief falls woefully short.

The alleged "statutory claim" is nothing but a contract claim in different garb. Indeed, these "statutory claims" are expressly tethered to the Player Contract. In describing the "statutory claim" in the SAC, the Bengals rely on the Player Contract as the factual predicate

---

[7] *See, e.g.*, *Rivera v. AT&T Corp.*, 420 F. Supp.2d 1312, 1323 (S.D. Fla. 2006) ("it is noteworthy that Plaintiffs did not file their motion to amend their complaint under after they had reviewed Defendants' papers and evidence supporting the motion to compel arbitration. Plaintiff's attempt to avoid arbitration by amending their complaint to include non-arbitrable claims is without merit").

for such "claim":

- The player "entered into a written employment contract with the Bengals." *See, e.g.*, SAC ¶ 19;

- The player "signed and dated both the Contract and Addendum No. 3 thereto, which stated that any and all claims arising out of [the player's] employment with the Bengals shall be subject exclusively to the workers' compensation laws of Ohio and not to the worker's [sic] compensation laws of any other state." *See, e.g., id.* ¶ 20.

The Bengals do not, because they cannot, assert any alleged "statutory claim" without first referencing the contract at issue. This case, no matter how pleaded, cannot be resolved "without interpreting and applying the contractual language." *See* DE-18 at 17. As a result, no matter what pleading shenanigans the Bengals employ to avoid arbitration, the bottom line is that the Bengals' claim is entirely dependent on the Player Contract, and all issues regarding the Player Contract must be arbitrated.

Moreover, there is no implied right of action under the statute.[8] And, it is precisely because there is no implied cause of action that the SAC actually fails to plead one. The Bengals plead four causes of action against each Player. The first, labeled "violation of R.C. § 4123.54(H)" is nothing but a declaratory judgment action. *See, e.g.*, SAC ¶ 29 ("Bengals are entitled to a declaratory judgment . . ."). The second cause of action is for a declaratory judgment/breach of contract. The third cause of action seeks an injunction under the statute, but solely on the basis that the Bengals will "prevail on the merits of their

---

[8] *Upperman v. Grange Indemnity Ins. Co.*, 135 Ohio Misc.2d 8, 14-15, 842 N.E.2d 132, 136-37 (Franklin Cty. Ct. Com. Pl. 2005), cited in Footnote 1, is nothing like this case. That case involved insurance abuses, not workers' compensation. "[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979). Finding a private right of action would be inconsistent with the legislative scheme, because other sections of the code, such as O.R.C. § 4123.75, expressly provide a cause of action, and hence it would make no sense to imply causes of action in places where the legislature decided not to provide one. *Cf. Redington*, 442 U.S. at 572 ("Section 9(e) of the 1934 Act . . . expressly provides a private right of action. Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly").

declaratory judgment claim." The fourth cause of action seeks an injunction for breach of contract. These same four causes of action are asserted against each Player. The first and third causes of action, purportedly for violation of the statute, are nothing more than declaratory judgment claims. These are not "statutory claims." A statutory claim is a claim authorized by statute. The new claims in the SAC are just declaratory judgment claims to declare the parties' rights under a CBA and Player Contract that one party claims is impacted by a state statute.

### C.   Even If There Was A "Statutory Claim," Which There Is Not, It Would Still Be Subject To Mandatory Arbitration

The Bengals are under the impression that statutory claims are exempt from arbitration. That is wrong. The Supreme Court has long held that claims arising under state statutes are arbitrable. In *Southland Corporation v. Keating*, 465 U.S. 1 (1984), for example, the Supreme Court held that statutory claims arising under California's Franchise Investment law were arbitrable. The Supreme Court held that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id*. at 16. Hence, California's statutory efforts to avoid arbitration of statutory franchisee claims was held to be invalid under federal law. While *Southland Corp.* involved the FAA and not the LMRA, the result is no different under either statute. It is the declared federal policy to enforce arbitration agreements, and arbitrators have arbitral jurisdiction over state statutory claims, even if the state tries to prevent arbitration. Here, the Bengals have no statutory claims and the state of Ohio has not sought to avoid arbitration of any such claim, and hence compelling arbitration of the so-called "statutory claims" here is a much easier matter than in *Southland Corp.*, where those potential impediments at least existed.

The Supreme Court addressed also this issue in *Perry v. Thomas*, 482 U.S. 483 (1987), in which it held that a state statutory wage and hour claim that the legislature exempted

from arbitration was nonetheless arbitrable under federal law. Arbitrators can, under federal law, decide issues of state statutory law, and state legislatures cannot under federal law prevent an agreement to arbitrate a state law claim, even one arising under a state statute. The Supreme Court last addressed this issue in *Preston v. Ferrer*, 552 U.S. 346 (2008), where it again held that state statutory claims that are by statute to be resolved in state administrative bodies may be decided by private arbitrators, because federal law allows the parties to agree to arbitration.

Federal courts, consistent with the foregoing authorities, require parties to submit state statutory claims to arbitration all of the time.[9] In *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp.2d 827 (N.D. Ohio 2008), for example, a debtor contended that its claims under the Fair Debt Collection Practices Act ("FDCPA") and Ohio Consumer Sales Practices Act ("OCSPA") were not subject to arbitration because they were statutory claims. The court, citing Supreme Court precedent, ruled that the presumption of arbitrability covers statutory claims and that unless Congress intended to exclude the statutory claim from arbitration, such claims must be submitted to arbitration.[10]

---

[9] *See, e.g., Saari v. Smith Barney, Harris Upham & Co.*, 968 F.2d 877 (9th Cir. 1992) (California polygraph protection statute); *Hall v. Metlife Res.*, 1995 U.S. Dist. LEXIS 5812 (S.D.N.Y. May 2, 1995) (N.Y. Human Rights Law); *Trumbetta v. Metro. Life Ins. Co.*, 1994 U.S. Dist. LEXIS 12503 (E.D. Pa. Sept. 1, 1994) (Pennsylvania Wage Payment and Collection Act; Personnel File Act); *Scott v. Farm Family Life Ins. Co.*, 827 F. Supp. 76 (D. Mass. 1993) (Massachusetts Civil Rights and Equal Rights Acts); *Hull v. NCR Corp.*, 826 F. Supp. 303 (E.D. Mo. 1993) (Missouri Human Rights Act); *DiCrisci v. Lyndon Guar. Bank of N.Y.*, 807 F. Supp. 947 (W.D.N.Y. 1992) (same); *Sacks v. Richardson Greenshield Sec., Inc.*, 781 F. Supp. 1475 (E.D. Cal. 1991) (California Fair Employment and Housing Act); *Brown v. KFC Nat'l Mgmt. Co.*, 921 P.2d 146 (Haw. 1996) (Hawaii Whistleblowers' Protection Act).

[10] This issue has been recently addressed by a number of courts in deciding whether claims under the Credit Repair Organization Act ("CROA") are subject to arbitration. The Eleventh Circuit recently held that such claims are subject to arbitration. *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249 (11th Cir. 2009). The Eleventh Circuit noted that "Where parties agree to arbitrate disputes brought pursuant to a federal statute, the statutory claims are subject to arbitration 'unless Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 1253 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Moreover, "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987)). Although CROA created a private right of action (unlike the Ohio statute here), the court held that such statutory claim was arbitrable because "[a] statute's provision for a private right of action alone is inadequate to show that Congress intended to prohibit arbitration." *Id.* at 1255 (citation omitted). A

12

Ignoring the foregoing settled principles of law, the Bengals contend that *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), and *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998), somehow make statutory claims non-arbitrable. The Bengals misread those cases. The issue in those cases was whether federal civil rights claims, in which Congress provided victims of discrimination with a specific statutory right to seek relief in an Article III court, could be undercut by a private agreement to arbitrate. Unlike *Southland Corp.*, *Perry*, and *Preston*, which involved the supremacy of federal arbitration law over state law, cases involving federal civil rights claims in which a federal forum is specifically provided for in a federal statute could not be resolved simply on the basis of the primacy of federal law. The Supreme Court in *Wright* and *14 Penn Plaza* resolved the tension between (i) the right to file a discrimination lawsuit granted by Congress with (ii) the right granted by Congress to agree to private arbitration, by allowing arbitration so long as the parties' agreement to submit such disputes to arbitration is "clear and unmistakable."[11]

Here, there is no civil rights claim created by Congress. There is not even a statutory claim created by the Ohio legislature. There is only a claim for declaratory relief as to the meaning of a state workers' compensation statute -- a claim which the Sixth Circuit in similar circumstances characterized as "frivolous." *Johnson Controls, Inc. v. Thomas*, 287 Fed. Appx. 496 (6th Cir. 2008). This case is governed by *Southland Corp.*, *Perry*, *Preston*, and similar cases in which the courts have held that claims under state statutes (assuming there was such a claim here, which there is not) are subject to arbitration. As such, even assuming

---

district court in this circuit had reached the same result two years earlier, ruling that such statutory claims under CROA are arbitrable because Congress had not specifically exempted them from arbitration. *Rex v. CSA-Credit Solutions of Am., Inc.*, 507 F. Supp.2d 788 (W.D. Mich. 2007).

[11] *See 14 Penn Plaza*, 129 S. Ct. at 1474 ("a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law"); *Wright*, 525 U.S. at 82 ("the collective-bargaining agreement in this case does not contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination").

that the Bengals had a claim arising under Ohio statutory law, which this Court has already held the Bengals do not, the claim would be subject to arbitration.

### D.     The Bengals May Argue The Ohio Statute In Arbitration

The arbitration agreements require arbitration of all disputes concerning the "interpretation" or "application" of the Player Contract. As conceded by the Bengals, their claims are based on language in the Player Contract. In arbitration, should this Court grant this motion, the Bengals will likely argue that the Arbitrator ought to look to Ohio law, including the Ohio statute, when interpreting and applying the Player Contract. The Bengals are free to make that argument to the Arbitrator, who will be free to accept or reject, in whole or in part, that argument. The Players and NFLPA, on the other hand, will argue that, in interpreting and applying the relevant provision of the Player Contract, primacy ought to be given to other legal principles.

Among other things, the NFLPA and Players will contend that, under the CBA, California law and federal labor law, neither the Union, as the exclusive bargaining representative of NFL Players, nor the Players, are permitted to waive California's workers' compensation laws, and that they in fact have not done so. They will also contend that if the NFLMC wanted such a waiver it had to be sought at the bargaining table, as opposed to inserting such waivers into Player Contracts outside of the NFLMC's bargaining with the NFLPA. In addition, the NFLPA and Players will argue that the parties' past dealings, including the filing for workers' compensation benefits in California by NFL players for many years, established a pattern and practice which supports their position and belies that of the Bengals. NFL arbitrators have in the past, as they ought to, looked to the parties' actual course of dealings in the workers' compensation arena for guidance in developing a law of the shop.

*See TWC Offset*, at 21 [DE-5, Exh. H] (noting that the Dallas Cowboys' position as to the Texas workers' compensation statute was belied by the Cowboys' performance "for over ten years").

Just because the Bengals may rely upon the Ohio statute, however, does not mean that its claims are not arbitrable. It just means that it will ask the arbitrator to look to that statute in resolving the dispute, just as the Cowboys asked the arbitrator to look to the Texas statute in resolving their dispute, and just as litigants in many cases ask courts to look to different statutes in interpreting a contractual dispute. For example, one party may argue in a given case that one state's insurance rate-making statute should apply, while the other party may urge application of some other state's unfair trade practices statute. Here, the plaintiff invokes an Ohio statute, while the Players rely on California's statutes and other laws. The fact that the parties urge application of different statutes to resolve a dispute does not make the claim a "statutory claim" and certainly does not invalidate an agreement to arbitrate, especially when the only contractual language at issue is contained in the same agreement in which the duty to arbitrate is set forth as well.

In this regard, we respectfully refer this Court to the October 9, 2009 transcript of arbitral proceedings in the *Titans v. Matthews* arbitration, where the Titans, just like the Bengals, asserted claims against a player for allegedly violating a provision in his Player Contract precluding the player from filing for workers' compensation benefits in California. *See* Newhouse Decl., Exh. S. There, the NFLMC and the Titans, represented by Dan Nash of Akin Gump, the NFLMC's longtime chief outside labor counsel, told the arbitrator "So I think there's *no question that you have the jurisdiction to arbitrate the question* of whether Mr. Matthews is in breach of his specific player contract." *Id.*, 4:22-25 (emphasis added). He

15

continued: "And so there will be arguments, I suppose, in the post-hearing briefs about what role California law, in particular, should have here. But I think there's no question that the dispute, from our perspective, is arbitrable." *Id.*, 5:8-12. The parties then proceeded to debate at length as to whether Tennessee, California or federal labor law applied. *See e.g.*, *id.*, 38:18-24 (summarizing the NFLPA's arguments). The Matthews arbitration is undeniable proof that this case is, according to the *NFLMC*, subject to arbitration. And, if the NFLMC, on behalf of all NFL clubs (including the Bengals), and the NFLPA, on behalf of all NFL players, believe that a dispute virtually identical to this one is subject to mandatory arbitration under the CBA, that should, respectfully, end the analysis. The Bengals, under federal labor law, have appointed the NFLMC as their multi-employer bargaining unit, and the Bengals should not be heard to take positions in court with respect to the NFLPA that are completely inconsistent with the positions taken by the NFLMC.

### E.    If Arbitration Is Denied, This Court Should Not Hear The Claims

If this Court decides not to send the declaratory judgment claims to arbitration, this Court should not entertain such claims. Under settled principles of law, this Court should abstain from issuing any opinion on this issue in light of the parallel state proceedings in California state court. In *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), the Supreme Court ruled that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (same). To entertain a declaratory judgment suit in these circumstances is to engage in the "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S.

at 495.  But that is precisely what the Bengals ask this Court to do here.  The Players and the

Bengals are currently litigating the meaning of Section 3600.5 in the California state courts.

*See* Newhouse Decl., Exhs. B – Q.   Moreover, in California state court the Bengals argue, just

as they do here, that O.R.C. § 4123.54(G), which became sub-section (H) after the statute was

amended, requires players to seek benefits exclusively in Ohio.  *See* Newhouse Decl., Exh. H,

at 3.

      *Johnson Controls, Inc. v. Thomas*, 287 Fed. Appx. 496 (6th Cir. 2008), is

directly on point.  There, like here, an employer sued an employee asking the court to issue a

declaration that the employee was not entitled to workers' compensation benefits.  At the time

the suit was filed, the employee had already commenced a workers' compensation proceeding

against the employer.  Relying on *Wilton*, *supra*, the Sixth Circuit held that the federal courts

should abstain from issuing any such declaration, calling the employer's suit "frivolous":

> It suffices for disposition of this appeal to say that the district
> court acted well within its discretion in declining to decide this
> issue of an employee's right to state workers' compensation
> benefits.   Such a case has no business in federal court,
> particularly after the state court has reached a decision
> inconsistent with the requested federal relief.  Johnson Controls
> cited not one example of a federal court entertaining the merits of
> a state workers' compensation claim.  And when confronted at
> oral argument with the frivolous nature of this case -- and worse
> yet, this appeal -- appellant's counsel failed to offer any tenable
> justification, even when given the opportunity to defend against
> *sua sponte* sanctions with a post-argument brief.

*Id*. at 497.[12]  It is likewise frivolous here for the Bengals to ask this Court to issue a declaratory

judgment with respect to whether the Players are entitled to benefits in California, and that is

---

[12]  As noted by the Sixth Circuit, one of the reasons for abstention in these circumstances is that "[c]ourts have
discouraged 'the use of the declaratory action as a method of procedural fencing, or as a means to provide another
arena for a race for *res judicata*.'"  *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326
(6th Cir. 1984) (citation omitted).  This is exactly what the Bengals are doing, however, by asking this Court to

especially true in the case of Wilson, who won his California case.  *See* Newhouse Decl., Exh. R.

## IV.    THE BENGALS' ATTACK ON THE ADEQUACY OF ARBITRATION UNDER THE CBA LACKS MERIT

In a desperate attempt to avoid arbitration, the Bengals contend that arbitration would be inadequate and unfair because (1) the NFL Arbitrator will ignore Ohio state law and (2) the strict 45-day limitations for filing grievances under the CBA has passed and thus their grievance would be denied.  The Bengals are wrong.

*First*, this Court cannot rule that the NFL Arbitrator will not follow the law.  As stated by the Supreme Court, the Court must assume that the parties' chosen arbitrators will follow the law.  *See 14 Penn Plaza*, 129 S. Ct. at 1471.  Moreover, this is a labor arbitration under the CBA.  It is for the arbitrator, not the courts, to determine what law governs this dispute.  *United Steelworkers of Am.*, 363 U.S. at 581-82.[13]  A labor arbitrator is not bound by the strict application of the law and, as such, he may decide how the law of the shop governs a dispute.  *Id*.  Indeed, at the present time, the NFLMC and two other NFL Clubs -- the Titans and the Dolphins -- are arbitrating these very issues before NFL arbitrators.  Those arbitrators will decide this issue based on state law, federal law and the law of the shop, which includes not only the CBA and Player Contracts, but prior arbitral precedent and NFL custom and practice as well.  The fact that the NFL arbitrator may not base his opinion solely on the Ohio statute upon which the Bengals rely is a feeble ground for alleging that the arbitration is inadequate.  For better or worse, the NFLMC and NFLPA agreed to this system of arbitration,

---

dispose of California workers' compensation issues that are being litigated by these same parties in the California state courts.

[13] *See also Int'l Ass'n of Machinists and Aerospace Workers v. ISP Chems., Inc.*, 261 Fed. Appx. 841, 845 (6th Cir. 2008); *United Steelworkers of Am., AFL-CIO, CLC v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007); *Detroit Typographical Union, Local 18 v. Detroit Newspaper Agency*, 283 F.3d 779, 786 (6th Cir. 2002).

and these arbitrators, and under federal labor law, arbitration must be compelled.[14]

           *Second*, the Bengals' complaint about the 45-day limitations period for filing grievances, which will probably result in dismissals of any grievances they may now file, is nonsensical, and offensive to the NFLPA. The Bengals, through the NFLMC, has agreed to those limitations periods in the CBA. All parties to the CBA, including the Bengals, must live with the strict 45-day filing requirement. Moreover, the Bengals fail to advise this Court that for over 30 years NFL arbitrators have been routinely dismissing claims by NFL Players (and on occasion, by the Clubs) on the basis of the short limitations period.[15] Yet, during that 30 year period the NFLMC and NFLPA have agreed to maintain the short filing period. In fact, as can be gleaned from the cases in footnote 15 below, the period was actually shortened by 15 days, from 60 days to 45 days. This short limitations period almost always benefits the Club

---

[14] Moreover, in determining the law of the shop, the arbitrator can -- and has -- looked to state statutes. *See, e.g.,* Kaiser Decl. I, Exhs. H ("*TWC Offset*") & F ("*NY Offset*") [DE-5]. In *TWC Offset*, the arbitrator examined a Texas statute that required players to elect to receive workers' compensation benefits under Texas law or under the CBA. The arbitrator determined that the Texas statute was pre-empted by the CBA. Similarly, in *NY Offset*, the arbitrator looked at state laws in New York and Carolina that permitted clubs to reduce the amount of workers compensation benefits paid to a player on the basis of salary paid to the player while injured. Kaiser Decl. I, Exh. F, at 1 [DE-5]. After examining the CBA and numerous previous arbitral decisions, the arbitrator declared that, despite state law permitting such offsets, the NFL Clubs would only be entitled to a much more limited offset. *Id.* Exh. F, at 15-22 [DE-5]. It was the arbitrator's expertise and familiarity with the NFL and the law of the shop that permitted him to resolve these disputes; as explained by the Supreme Court, "[t]he ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *United Steelworkers of Am.*, 363 U.S. at 581-82. The same is true here.

[15] *See also In the Matter of the Arbitration Between the Tampa Bay Buccaneers and Jim Petersen* (Arb. Scearse, Nov. 4, 1978) (Newhouse Decl., Exh. T) (dismissing claim by player on the basis of what was then a 60-day filing requirement); *In the Matter of the Arbitration Between Frederick Clinksdale and the Dallas Cowboys* (Arb. Kagel, July 27, 1983) (Newhouse Decl., Exh. U) (same); *In the Matter of the Arbitration Between Ronald F. Howard et al. and the Seattle Seahawks* (Arb. Kagel, Mar. 7, 1986) (Newhouse Decl., Exh. V) (same); *In the Matter of the Arbitration Between Jesse Baker and the Houston Oilers* (Arb. Kagel, Jan. 11, 1991) (Newhouse Decl., Exh. W) (same, but under the 45-day rule); *In the Matter of the Arbitration Between Jarrod Bunch v. New York Giants,* (Arb. Creo, Dec. 10, 1997) (Newhouse Decl., Exh. X) (same); *In the Matter of the Arbitration Between Tamarick Vanover and the Kansas City Chiefs* (Arb. Zumas, Jan. 3, 2002) (Newhouse Decl., Exh. Y) (dismissing the Cheifs' counter-grievance as untimely under 45 day rule); *In the Matter of the Arbitration Between Patrick Jeffers and the Carolina Panthers* (Arb. Das, Mar. 25, 2008) (Newhouse Decl., Exh. Z) (45 day rule, grievance denied as untimely); *In the Matter of the Arbitration Between Aldra Wilson and the Denver Broncos* (Arb. Townley, Oct. 29, 2008) (Newhouse Decl., Exh. AA) (same). Indeed, just recently, the NFLMC and Jacksonville Jaguars raised the 45-day limitations period in a workers' compensation arbitration initiated by an NFL player. *See* Letter, dated February 25, 2010, at 2 (Newhouse Decl., Exh. HH).

19

and harms the Player. The Clubs, with millions of dollars in profits and lawyers on staff, can easily assure a timely filing, while Players have no such resources. Yet now, with an NFL Club facing untimely claims being dismissed, the Club has the audacity to complain about the 45-day filing requirement. This is outrageous.

In any event, the Bengals cite no case establishing that the short filing deadline means that they can file now in court. Indeed, were that the law, any grievant could wait 46 days to file a suit and then defeat a motion to compel arbitration on the basis of his violation of the limitations period. That result would be absurd.

## CONCLUSION

For the foregoing reasons, the Players and NFLPA respectfully request this Court to compel arbitration and dismiss this action.

Dated: March 8, 2009

Respectfully submitted,

Thomas J. Kircher
MANLEY BURKE
225 W. Court Street
Cincinnati, Ohio 45202-1098
Telephone: (513) 721-5525, Ext. 1557
Facsimile: (513) 721-4268
tkircher@manleyburke.com
*Attorney for Defendants Booker, Gibson, Steele, Wilson and Proposed Intervenor National Football League Players Association*

Adam J. Kaiser
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
akaiser@dl.com

*Attorney for Proposed Intervenor National Football League Players Association*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of The Defendants and Proposed

Intervenor's Memorandum of Law in Further Support of Their Motion to Compel Arbitration

and Dismiss the Complaint was served via ECF on March 8, 2010, on all counsel of record.