## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| CINCINNATI BENGALS, INC., | ) | Case No. 1:09 CV 738 |
| | ) | |
| Plaintiff, | ) | Hon. Sandra S. Beckwith |
| | ) | |
| - against - | ) | Hon. Timothy S. Black |
| | ) | |
| KHALID ABDULLAH, SAM ADAMS, | ) | |
| MARCO BATTAGLIA, RASHAD | ) | |
| BAUMAN, ROGERS BECKETT, VAUGHN | ) | |
| BOOKER, DUANE CLEMONS, RON | ) | |
| DUGANS, DAVID DUNN, CHRIS | ) | |
| EDMONDS, OLIVER GIBSON, DAMON | ) | |
| GRIFFIN, KEVIN HARDY, RODNEY | ) | |
| HEATH, NICK LUCHEY, TREMAIN | ) | |
| MACK, TIMOTHY MCGEE, TONY | ) | |
| MCGEE, REGGIE MYLES, HANNIBAL | ) | |
| NAVIES, SCOTT REHBERG, ADRIAN | ) | |
| ROSS, TROY SADOWSKI, DARNAY | ) | |
| SCOTT, KABISA AKILI SMITH, | ) | |
| ARMEGIS SPEARMAN, GLEN STEELE, | ) | |
| DENNIS WEATHERSBY, RICHMOND | ) | |
| WEBB, BERNARD WHITTINGTON AND | ) | |
| DARRYL WILLIAMS, and REINARD | ) | |
| WILSON | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANTS GLEN STEELE, OLIVER GIBSON, VAUGHN BOOKER AND
REINARD WILSON'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO VACATE THE DEFAULT JUDGMENTS
<u>AND REINARD WILSON'S MOTION TO VACATE AN ORDER OF CONTEMPT</u>**

## PRELIMINARY STATEMENT[1]

As set forth in the Players' moving brief ("Mov. Br.") [DE-11], the Default Judgments and Contempt represent an error of law because (1) the state court purported to apply Ohio state law even though all state law is pre-empted under Section 301 of the LMRA; (2) the state court's assumption that the Players waived their rights under California's workers' compensation laws violates both California statutory law and federal labor law establishing that parties to a collective bargaining agreement cannot waive state law workers' compensation rights; and (3) the Default Judgments are plainly inconsistent with two Supreme Court decisions establishing that California's statutory law treating as void agreements to waive workers' compensation benefits cannot be undercut by either private agreements or competing state laws. Pinned to the mat by these compelling legal arguments, all of which show that the Default Judgments and Contempt are erroneous, the Bengals, incredibly, now abandon their pleaded theory and proffer an entirely new theory of their case -- one never presented to the state court and which, untold by the Bengals, they have been litigating without success in California's courts for years.  Frankly, this is outrageous.

Specifically, in their Complaint and Amended Complaint, the Bengals alleged that the Players agreed in the Player Contracts that they would not seek workers' compensation benefits in California, and would instead seek such benefits exclusively in Ohio.  The Bengals' theory of the case was straightforward:  the Players waived in their Player Contracts the right to seek benefits anywhere except in Ohio.[2]  Faced with sound legal arguments showing that such waiver would be unlawful under California law and unenforceable under federal labor law, the

---

[1]  All terms defined in the Defendants' moving brief [DE-11] are used as defined terms herein.

[2]  The Bengals alleged that "[d]espite their express agreement to file any workers' compensation claims in Ohio, Defendants have filed workers' compensation claims with the Workers' Compensation Appeals Board in California."  *See* Am. Compl., ¶ 10.

1

Bengals now glibly contend that "this is not a case of waiver" at all because the Bengals are *not* contending that Defendants "waive[d] or contract[ed] away any benefits." *See* Bengals' Br., at 6. The Bengals say this was a straight face even though the record is clear that the Bengals' *entire* case, and the Default Judgments and Contempt, were based *exclusively* on the argument that the Players in fact contractually waived their right to file for benefits in California.

The Bengals now claim, for the first time in this action, that the Default Judgments and Contempt were correct *not* because the alleged contractual waiver is enforceable (*i.e.*, the Bengals' pleaded claim), but rather, because Section 3600.5 of California's Labor Code allegedly exempts the Bengals from California's workers' compensation laws. The Bengals say that "this is not a case of waiver," but rather, "[t]his is a case of exemption" due to Section 3600.5. *See* Bengals' Br., at 7. The Bengals would thus have this Court believe that they filed this action not to obtain a declaratory judgment on the meaning of the forum-selection clauses in the Player Contracts (even though that is the *only* pleaded claim in their Complaints), but rather, to obtain a declaration in Ohio that the Players are not entitled to workers' compensation benefits under a provision of California's Labor Code which is not mentioned in the Bengals' Complaints.

The Bengals' position is absurd. As this Court noted in denying the Bengals' remand motion, "the Bengals' claim for declaratory and injunctive relief do not seek any determination of whether any of the Defendants are entitled to receive workmen's compensation benefits or on what basis. The Bengals seek only to establish where those claims can be filed." *See* DE-18 at 15. It is completely incredible for the Bengals to contend that this case is not about a contractual waiver in the Player Contracts, but really about Section 3600.5, which is not even

mentioned in the Complaints.[3]  In any event, the Bengals' decision to abandon their theory of the case in favor of an entirely new one underscores the legal error in the state court, warranting vacatur.[4]

## ARGUMENT

The Bengals do not dispute that default judgments are strongly disfavored in the law.[5]  While the Bengals are correct that the standard for setting aside a default judgment is different from setting aside a default, "trials on the merits are favored, and any doubts as to the propriety of setting aside a default judgment should be resolved in favor of the application, even in a case where the showing is not strong." *Barnett v. Countrywide Home Loans*, 2009 WL 2709735, at *1 (S.D. Ohio Aug. 25, 2009).  Here, the Players have especially compelling grounds to vacate the Default Judgments, thus easily satisfying the modest standard for such relief.

## I. THE DEFAULT JUDGMENTS SHOULD BE VACATED ON THE GROUNDS OF MISTAKE

The Bengals do not dispute that a legal error by the court is a mistake sufficient to warrant vacating a default judgment. *Pierce v. United Mine Workers of Am.*, 770 F.2d 449, 551

---

[3] Indeed, it would have been bizarre for the Bengals to ask the Ohio state court to interpret California law in a declaratory judgment action at the same time the Bengals and the Players were litigating those same issues in California, and the Bengals never did so.  To the contrary, it was precisely because the Bengals were losing its Section 3600.5 exemption argument in California state court that the Bengals contrived its desperate legal "strategy" of suing the Players in Ohio state court to circumvent, not apply, California law under the guise of enforcing in Ohio employment agreements wherein the Players purportedly agreed to waive the right to seek any benefits in California at all.  The Complaint, not surprisingly, does not mention any aspect of California law, let alone Section 3600.5.

[4] Although the Bengals offer new legal arguments, they cut and pasted their "Facts" section of their brief from an earlier brief, so their old theory of the case -- that the Player Contracts waived rights under California law -- is still repeated in the "Facts."  *See* Bengals' Br., 3.

[5] Indeed, a default judgment "is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  Trials on the merits are favored in federal courts, and "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on the merits." *Id.* at 846 (citations and quotations omitted).

3

(6th Cir. 1983); *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Here, the Default Judgments violate plain legal principles and hence ought to be vacated.

### A.     The Default Judgments Are Not Based On Federal Labor Law

The Bengals do not dispute that Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, displaces and pre-empts *all* state law claims, as this Court ruled in denying the Bengals' motion to remand.  Nor do the Bengals dispute that the state court applied Ohio law, rather than federal law, even though Ohio law is irrelevant.  The state court's application of the wrong substantive law, standing alone, is a legal error sufficient to justify vacatur.

### B.     The Bengals Now Admit That The Default Judgments Violate Federal Labor Law

The Bengals now state, contrary to their Complaints and the legal basis of the Default Judgments and Contempt, that "state law minimum benefit standards, such as the minimum wage, cannot be waived or otherwise contracted away by the employee."  *See* Bengals' Br., at 8.  This is clearly the law, and it applies to collective bargaining agreements, such that unions and employers cannot agree to waive a state law employee right.[6]  The Bengals concede that this applies to state workers' compensation laws, such as those in California, which by statute are not waivable.  *Id.* at 9.  The Ninth Circuit has specifically held as much.  *Contract Servs. Network, Inc. v. Aubry*, 62 F.3d 294, 299 (9th Cir. 1995).  Hence, the parties are in agreement (at least now) that the provisions in the Player Contracts purporting to waive benefits under California law are unenforceable under federal labor law.  That should end the analysis, as the Default Judgments and Contempt are based exclusively on the erroneous premise that the

---

[6] *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Employment Relations Comm'n*, 427 U.S. 132 (1976); *Met. Life Ins. Co. v. Mass.*, 471 U.S. 724, 755-56 (1985); *Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 412 (1988); *Hawaiian Airlines, Inc. v. Finazzo*, 512 U.S. 246, 257 (1994).

Players contractually waived their rights to seek benefits in California, something all parties now agree that the Players could not do.

### C.    The Default Judgments Violate Clear Supreme Court Precedent

*Alaska Packers Ass'n v. Industrial Accident Commission of California*, 294 U.S. 532 (1935), and *Pacific Employers Insurance Co. v. Industrial Accident Commission of California*, 306 U.S. 493 (1939), are directly on point.  The Bengals contend that these cases are distinguishable because of Section 3600.5.  That is wrong.  Section 3600.5 is beside the point.

Whether the Bengals have a defense under California law does not alter the Supreme Court's analysis.  The Bengals are certainly free to argue, in a California court as a defense to a California workers' compensation claim, that they are exempt under California's law by virtue of Section 3600.5.  They have in fact done so many times (each time without success), as set forth in the accompanying Declaration of Jeffrey H. Newhouse, dated Mar. 8, 2010 ("Newhouse Decl.").  But at issue in *Alaska Packers* and *Pac. Employers*, just as in this case, was not whether the Players would *prevail* in California, but only whether they could *seek* benefits there.[7]  *See* Decision, DE-18 at 15.  Indeed, the Contempt  punished Wilson for "pursuing" workers compensation benefits in California, because Wilson had purportedly waived the right to do so in his Player Contract, not because the Bengals might prevail on their Section 3600.5 defense (the Bengals did not prevail, parenthetically).  *Alaska Packers* and *Pac.*

---

[7] We also note that Ohio has its own version of California Labor Code Section 5000. O.R.C. § 4123.80 provides that "No agreement by an employee to waive an employee's rights to compensation under this chapter is valid." There are two statutory exceptions, none of which applies here. Ohio, like California, does not permit employees to waive statutory workers' compensation benefits.  Yet, O.R.C. § 4123.54 purports to allow employees waive the right to seek benefits under *other* state's law.  It is ironic and wholly contradictory that Ohio would allow employees to waive rights under sister states' workers' compensation statutes, but not their own statute.  O.R.C. § 4123.54 was clearly enacted as a parochial measure to protect Ohio employers, just as Massachusetts had enacted a similar statute to protect Massachusetts' employers in *Pac. Employers*.  The Supreme Court addressed this parochialism in *Pac. Employers* by precluding states from enacting legislation that would interfere with another state's right as a sovereign to enact their own workers' compensation laws and to administer such laws in accordance with their own needs and public policy concerns.

*Employers* make clear that such waiver agreements are not enforceable because California has decided, in enacting Section 5000, that employees may not waive their rights under California law -- whatever those rights may be.

*Alaska Packers* and *Pac. Employers* do not apply only in those situations where an employee would ultimately prevail on the merits of his or her California workers' compensation claim. Indeed, it would take a crystal ball to make that determination. Rather, these two cases establish the principle that no employer, and no state, may preclude, in an employment agreement or state law, anyone from *filing a claim* for benefits in California. And, because of those principles, the Default Judgments and Contempt, which seek to preclude and punish the Players for filing for benefits in California, are contrary to law and should be vacated.[8]

> **D. This Court Should Not Issue An Advisory Opinion With Respect To Section 3600.5**

The Bengals are apparently asking this Court to wade into the legal battles currently taking place in California, by issuing an opinion as to what Section 3600.5 means, or does not mean. This Court, respectfully, should not do so.

*First*, that issue is not before this Court. It is not alleged in the Complaint, and as it was not part of the Default Judgment, there is no reason at all for the Court to take that issue on in a motion to vacate that was entered on entirely different grounds. This Court ought to avoid

---

[8] The Bengals accuse (on page 1 of their brief) the Players of "denigrating" Judge Ethna Cooper. No one is insulting Judge Cooper, and it is silly rhetoric to suggest otherwise. Judge Cooper was not aware that the parties' relationship was governed by a collective bargaining agreement, and thus, federal law. The Bengals knew that, but they kept that to themselves. Judge Cooper was also not aware of California Labor Code Section 5000, which precludes a contractual waiver of rights, and the Supreme Court precedent upholding such non-waiver statute against other state laws. Indeed, the Bengals never even submitted a copy of the Player Contract to the state court, possibly out of concern that Judge Cooper would see that this concerned a CBA and that arbitration was required. *See* Compl., at 5, n.1. The Bengals can use all of the colorful language they want to try to make the Players look like the bad guys, but one must ponder how the Bengals can level such attacks when they withheld the operative facts, documents, and law to the state court, only to have Judge Cooper issue a decision that is based on the wrong body of law, violates California law, and is inconsistent with Supreme Court precedent.

making any final rulings on California law, and instead, respectfully, should vacate the Default Judgments and send the entire case to arbitration.

*Second*, under settled principles of law, this Court should abstain from issuing any opinion on this issue in light of the parallel state proceedings in California state court. In *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), the Supreme Court ruled that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (same). To entertain a declaratory judgment suit in these circumstances is to engage in the "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart*, 316 U.S. at 495. But that is precisely what the Bengals ask this Court to do here. The Players and the Bengals are currently litigating the meaning of Section 3600.5 in the California state courts. *See* Newhouse Decl., Exhs. B – Q. Moreover, in California state court, the Bengals argue, just as they do here, that O.R.C. § 4123.54(G), which became sub-section (H) after the statute was amended, requires players to seek benefits exclusively in Ohio. *See* Newhouse Decl., Exh. H, at 3.

*Johnson Controls, Inc. v. Thomas*, 287 Fed. Appx. 496 (6th Cir. 2008), is directly on point. There, like here, an employer sued an employee asking the court to issue a declaration that the employee was not entitled to workers' compensation benefits. At the time the suit was filed, the employee had already commenced a workers' compensation proceeding against the employer. Relying on *Wilton*, *supra*, the Sixth Circuit held that the federal courts should abstain from issuing any such declaration, calling the employer's suit "frivolous":

> It suffices for disposition of this appeal to say that the district court
> acted well within its discretion in declining to decide this issue of

> an employee's right to state workers' compensation benefits. Such a case has no business in federal court, particularly after the state court has reached a decision inconsistent with the requested federal relief. Johnson Controls cited not one example of a federal court entertaining the merits of a state workers' compensation claim. And when confronted at oral argument with the frivolous nature of this case -- and worse yet, this appeal -- appellant's counsel failed to offer any tenable justification, even when given the opportunity to defend against *sua sponte* sanctions with a post-argument brief.

*Id.* at 497.[9] It is likewise frivolous here for the Bengals to ask this Court to issue a declaratory judgment with respect to whether the Players are entitled to benefits in California, and that is especially true in the case of Wilson, who has won his California case. *See* Newhouse Decl., Exh. R.

In the event this Court addresses this issue, however, we note that the California courts have rejected the Bengals' "exemption" argument. *See* Newhouse Decl., Exhs. B – I. Indeed, even prior to the Bengals' cases, California courts have repeatedly upheld workers' compensation claims in cases just like this one. In *Injured Workers' Insurance Fund of the State of Maryland v. Workers' Compensation Appeals Board and Cleveland Crosby*, Civ. No. G027717, 66 Cal. Comp. Cases 923 (June 14, 2001) (Newhouse Decl., Exh. BB), for example, a professional football player who did not reside in California, had played for the Bills, the Packers, and the Colts, but never for a California team, and who had only played a single professional game in California, sought benefits under California's workers' compensation statute. The court held that the Colts were subject to claims in California, solely on the basis that

---

[9] As noted by the Sixth Circuit, one of the reasons for abstention in these circumstances is that "[c]ourts have discouraged 'the use of the declaratory action as a method of procedural fencing, or as a means to provide another arena for a race for *res judicata*.'" *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) (citation omitted). This is exactly what the Bengals are doing, however, by asking this Court to dispose of California workers' compensation issues that are being litigated by these same parties in the California state courts.

the player had been injured in California while playing for the Colts. The identical result was reached in at least three other cases.[10]

   Moreover, the Bengals do not dispute that, pursuant to California Labor Code section 3700, every employer that operates in California, including the Bengals and all professional sports teams that play games in California, must have either (1) workers' compensation insurance covering claims *brought in California* or (2) a certificate from the California Director of Industrial Relations allowing the employer to self-insure under the laws of California. The Bengals have neither. The Bengals do not dispute that they have been told by California regulators that they are in violation of the law.[11] The Bengals are not the only Ohio sports franchise lacking the requisite insurance in California (and other states). The Cleveland Cavaliers are also impermissibly uninsured, as the California courts have found. *See* Kaiser Decl. II, Exhs. E and F [DE-11]. To our knowledge, NFL and NBA teams in other states have not flouted California's statutory law. In any event, this Court should not, respectfully, rule on the application of Section 3600.5 as that issue is not before this Court, and even if it were, which it is not, abstention principles weigh against issuing an opinion on that issue.

---

[10] They are: (1) *Milton Wynn v. Baltimore Ravens*, Case No. ANA 0379216 (WCAB Aug. 11, 2008) (Newhouse Decl., Exh. CC), where the WCAB upheld claims for compensation by a former NFL player against four out-of-state NFL teams, (2) *Bowen v. Workers' Comp. Appeals Bd.*, 73 Cal. App. 4th 15 (2d App Dist. 1999) (Newhouse Decl., Exh. DD), where the court ruled that a former player for a Florida Marlins farm team could pursue benefits in California, and (3) *Houston Rockets v. Workers' Comp. Appeals Bd.*, 8 WCAB Rptr. 10,336 (Oct. 19, 2006) (Newhouse Decl., Exh. EE), where the WCAB upheld a claim for benefits by a former NBA player that had played for the Houston Rockets.

[11] The Bengals do not deny that, on or about July 30, 2009, the California law firm Peterson & Colantoni, LLP, on behalf of the Bengals, asked the California Department of Industrial Relations ("CDIR") for an opinion as to whether the Bengals needed insurance in California, because the Bengals are allegedly self-insured in Ohio and only send their team to California a few times a year. *See* Kaiser Decl. II, Exh. C [DE-11]. The Director of the CDIR was clear in his response, dated August 24, 2009: the Bengals' alleged self-insured status in Ohio did not relieve the club of the requirements of California law requiring the employer to have insurance in California or a certificate from the Director of the CDIR. *See* Kaiser Decl. II, Exh. D [DE-11]. It is most curious that the Bengals have decided not to dispute their violation of California law as articulated by California regulators.

## II. THE DEFAULT JUDGMENTS SHOULD BE VACATED ON THE GROUNDS THAT APPLYING THEM PROSPECTIVELY IS NO LONGER EQUITABLE

Pursuant to Rule 60(b)(5), a judgment may be vacated when applying it prospectively would no longer be equitable. This section applies to injunctions, such as the permanent injunctions entered here by the state court against the Affected Players. *See* Moore's Federal Practice § 60.47[1][d] (3d ed. 2008). The standard under Rule 60(b)(5) is flexible and based on the circumstances. *Id.* § 60.47[2][b]. The Bengals say that Rule 60(b)(5) is "only" applicable where there is a change in fact or law, but no case says that. The standard is flexible, as made clear in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992), cited on page 11 of the Bengals' Brief. And, the standard is met here, when the Default Judgments violate Supreme Court precedent and California law.

## III. THE DEFAULT JUDGMENTS SHOULD BE VACATED ON THE GROUNDS OF INADVERTENCE OR EXCUSABLE NEGLECT

Vaughn Booker never received the summons and complaint; it was sent to his mother. He does not recall ever seeing the summons and complaint at all. Glen Steele was not served either; the Bengals served his father. Oliver Gibson was also not personally served, and he does not recall seeing any legal papers. The same is true with respect to Reinard Wilson. The service in this case was spotty, and with respect to Steele, insufficient under Ohio law.

What is more, none of these Players intentionally waived any rights. They were all actively litigating against the Bengals in California. "In cases that have not been heard on the merits, the determination of whether neglect is excusable takes into account the length and reasons for the delay, the impact on the case and judicial proceedings, and whether the movant requesting relief has acted in good faith." *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006). There is a "more lenient standard for excusable neglect in cases of default than in cases

when a party neglects to raise a certain argument." *Id.* at 833 (citing *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001)).  The Affected Players meet this modest standard.

Significantly, all of the factors listed on page 13 of the Bengals' brief favors a finding of excusable neglect.  There is no prejudice to the Bengals, as the Default Judgments should never have been entered in the first place.[12]  Any attorneys' fees incurred by the Bengals must have been minimal given that there was no opposition to their papers.  The Players are moving in good faith, and the reason for delay -- ignorance of the lawsuit -- has been established.  Under these circumstances, there is excusable neglect.

## IV.     THE DEFAULT JUDGMENTS SHOULD BE SET ASIDE UNDER RULE 55(c) -- THE *UNITED COIN METER* FACTORS

The Bengals spend less than a page addressing the *United Coin Meter* factors.  For the reasons set forth in the Players' moving brief, which are barely addressed by the Bengals, the *United Coin Meter* factors strongly favor vacating the Default Judgments.

*            *            *

Finally, we address the Bengals' *ad hominem* snipes directed at the Defendants' counsel in footnotes 2 and 3 of their Brief, as well as in the last sentence of the text on page 6 of their brief.  Attacks on counsel of this nature, respectfully, have no place in this, or any, court.  Virtually every argument advanced by the Bengals in this case has been frivolous or, at the least, unsupported by existing precedent, yet we do not attack the Bengals' counsel for the Bengals' decision to advance such meritless arguments.  Nonetheless, since the Bengals have decided to attack Defendants' counsel, we respond as follows.

---

[12] In the Declaration of Eric Combs, dated February 5, 2010 (at ¶ 2), he says that "I contacted both the Defendants and their California counsel to notify them of" the filing of the Ohio Complaint.  Yet, Rule 4.2 of the *Ohio Rules of Professional Responsibility* states:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."  It is difficult to understand how, consistent with this Rule, Mr. Combs could have contacted both the Players and their counsel.

11

*First*, the footnotes (2 and 3) miss the mark.  The Bengals do not understand 28 U.S.C. § 1445(c).  For it to apply, the Bengals' claims would have to arise under Ohio's workers' compensation laws, which this Court has already ruled is not the case.  If the claim arose under a state's workers' compensation laws other than Ohio, Section 1445(c) would not apply.[13]  There is nothing even slightly inconsistent for the Players to argue that Section 1445(c) does not apply while maintaining that the Default Judgments ought to be vacated partly on the basis of California workers' compensation law.  Under Sixth Circuit precedent, Section 1445(c) applies in only very limited circumstances, which are not present here.  What is more, in opposing the motion to vacate, the Bengals contend that this case is really about Section 3600.5 of the California Labor Code, and not the contracts allegedly contemplated by O.R.C. § 4123.54.  If that is so, then the Bengals should never have even moved to remand in the first place, because their claims would have supposedly arisen under California labor law, thus eliminating any Section 1445(c) argument.  In any event, the issue of jurisdiction is now settled, and not only because this Court has denied the remand motion.  Subsequent to this Court's decision denying their motion to remand, the Bengals filed a Second Amended Complaint.  *See* DE-19.  The filing was improper because the Bengals needed leave of court to file a second amended complaint, which they never even sought.[14]  Having now asserted before this Court claims under Section 301 of the LMRA, the Bengals have affirmatively invoked this Court's jurisdiction and can no

---

[13] Section 1445(c) states: "A civil action in any State court arising under the workmen's compensation laws *of such state* may not be removed . . ." (emphasis added).  On its face, Section 1445(c) only applies if the claim arises under the workers' compensation laws of the state where the suit was brought.  Hence, if the Bengals were really seeking a declaration as to the meaning of California workers' compensation law, on its face Section 1445(c) would not apply.

[14] It is well-established that a plaintiff must seek leave from the court to file a second amended complaint.  Fed. R. Civ. P. 15(a).  That requirement is no different when a plaintiff first amends a complaint in state court and, following removal, seeks to amend its complaint for a second time.  *See, e.g., Howell v. Fresno*, No. CV-F-07-371 OWW/TAG, 2007 WL 1501844 (E.D. Cal. 2007); *Whitehead v. Viacom*, 233 F. Supp.2d 715 (D. Md. 2002).  That is what happened here.

longer seek remand. *See Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185-86 (7th Cir. 1984).

*Second*, the Bengals argue that "Defendants' counsel" should have briefed this Court about Section 3600.5, and to support that contention the Bengals cite a brief that was filed in California concerning a motion to vacate a labor arbitration award arising out of the now defunct Arena Football League ("AFL"), which has no connection to the NFL. This argument is frivolous on a number of different levels.

To begin with, prior to opposing this motion to vacate the Default Judgments, the Bengals never raised Section 3600.5 in this case. It was not in issue. The Bengals never sought, until now, any declaration as to whether they were exempt from California's workers' compensation statute as a result of that section. It is thus somewhat silly for the Bengals to complain that the Players' and NFLPA's counsel had not previously addressed this statute.

Next, the Bengals make it appear (in footnote 5) that the AFL Players Union ("AFLPA") took the position that Section 3600.5 was applicable. In fact, the AFLPA argued, just as the Players and the NFLPA do here, that Section 3600.5 is irrelevant. *See AFLPA v. Pigskin, LLC*, 2009 WL 1135982 (C.D. Cal. Jan. 7, 2009). The Bengals have not accurately portrayed the parties' respective arguments in the inapposite case upon which they base their snipe.

And finally, that case, involving a different sports league totally unrelated to the NFL, involved the union's efforts to vacate a labor arbitration award to the effect that players for an AFL club in Florida, the Tampa Bay Storm, could not seek workers' compensation benefits in California. The district court denied the motion, sending the case back to the arbitrator because the award was not final and hence not reviewable. Subsequently, the labor arbitrator reversed

13

the initial non-final award, and in two lengthy opinions, attached to the Newhouse Decl. at Exhs. FF and GG, ruled that the Players were entitled to seek workers' compensation benefits in California.  This supports the Players' and NFLPA's argument that these matters ought to be decided by the parties' chosen arbitrators, and that sports arbitrators chosen by the leagues and unions resolve disputes like this all of the time, which is not surprising since virtually all collective bargaining agreements, including those in professional sports, have mandatory exclusive arbitration provisions.

## CONCLUSION

For the foregoing reasons, the Players and proposed intervenor NFLPA respectfully request that this Court vacate the Ohio state court's Default Judgments and Contempt against the Affected Players.

Dated:  March 8, 2010

Respectfully submitted,

_____

Thomas J. Kircher
MANLEY BURKE
225 W. Court Street
Cincinnati, Ohio 45202-1098
Telephone:  (513) 721-5525, Ext. 1557
Facsimile:  (513) 721-4268
tkircher@manleyburke.com

*Attorney for Defendants Booker, Gibson, Steele, Wilson and Proposed Intervenor National Football League Players Association*

Adam J. Kaiser
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
akaiser@dl.com

*Attorney for Proposed Intervenor National Football League Players Association*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Defendants Glen Steele, Oliver

Gibson, Vaughn Booker and Reinard Wilson's Memorandum of Law in Further Support of their

Motion to Vacate the Default Judgments and Reinard Wilson's Motion to Vacate an Order of

Contempt was served via ECF on March 8, 2010, on all counsel of record.