UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cincinnati Bengals, Inc.,  :  Case No. 1:09-cv-738
                            :
     Plaintiff,             :
                            :
vs.                         :
                            :
Khalid Abdullah, et al.,    :
                            :
     Defendants.            :

**ORDER**

Before the Court are two motions filed by Defendants, and a motion to intervene by the National Football League Players Association.

**FACTUAL BACKGROUND**

The background of this case is discussed in the Court's order denying Plaintiff's motion to remand.  (See Doc. 18) Briefly summarized, the Bengals filed a complaint on June 26, 2008 against six of their former players, seeking an injunction barring them from seeking or receiving worker's compensation benefits in the State of California.  The Bengals alleged that the players' contracts expressly required them to file any compensation claims in Ohio pursuant to Ohio law.  The Bengals also sought a declaratory judgment enforcing that contractual provision.

The state trial court granted the Bengals a temporary restraining order on July 22, 2008, and a preliminary injunction

-1-

on August 5, 2008.  Default judgments against four of the six originally-named defendants (Vaughn Booker, Glen Steele, Oliver Gibson, and Reinard Wilson) were entered by that court in November 2008.  In February 2009, an order of contempt was entered against Wilson for violating the terms of that judgment.

In August 2009, the Bengals sought and were granted leave to file an amended complaint, which was filed in September 2009.  The amended complaint added claims against an additional group of former players who were also seeking workers compensation benefits in California.  Defendants removed the case to this Court, and this Court denied the Bengals' motion to remand.  The Court granted the Bengals until February 5, 2010 to respond to Defendants' then-pending motion to compel arbitration (Doc. 5), a motion by Booker, Steele, Gibson and Wilson to vacate the default judgments and the contempt order against Wilson (Doc. 11), and a motion to intervene by the National Football League Players Association (Doc. 4).  Those motions are now fully briefed.

Motion to Vacate Default Judgments (Doc. 11)

28 U.S.C. §1450 provides that, after a case is removed from state court, any orders or injunctions entered there are in full force and effect unless and until modified by this Court.  See, e.g., Murray v. Ford Motor Co., 770 F.2d 461, 463 (5th Cir. 1985).  As the default judgments were entered prior to removal of the case, this Court may entertain a motion to set them aside

-2-

under applicable federal law.

According to the state court's docket sheet, the complaint and motion for a temporary restraining order were filed on June 26, 2008.  The court clerk issued certified mail service to the original six defendants on July 10, 2008.  A return receipt was filed showing delivery to Steele on July 21.  The summons to Wilson, Booker and Gibson were returned as "unclaimed", and the Bengals requested that regular mail service issue to them.  Shortly thereafter, a signed return receipt for delivery to Booker was filed on September 5.  No other returns of service or notices of appearance were filed by these four defendants prior to entry of the default judgments.

Each of the default judgments are identical, granting the Bengals declaratory and injunctive relief.  They state as to each Defendant, that any and all claims for workers compensation benefits the Defendants may have arising from employment with the Bengals "shall be subject to the exclusive jurisdiction of Ohio's courts and workers compensation laws".  The judgments permanently enjoin each Defendant "from seeking and receiving relief under workers' compensation laws or the jurisdiction of another state." (Doc. 11, Exhibit A)

The contempt order entered against Reinard Wilson states that his continuing receipt of California benefits violates the temporary restraining order and the default judgment.  It orders

-3-

Wilson to pay the Bengals damages of $4,805.64, together with attorneys' fees, costs and interest.  The order authorized the Bengals to offset those damages against future benefits paid to Wilson.  Wilson was also fined by the court for violating its prior orders and the default judgment.  (Doc. 11, Exhibit B)

Each of the moving Defendants has filed a declaration in support of their motion to vacate the judgments.  Vaughn Booker states that he filed his California claim in April 2007.  In September 2008, his mother Carol signed for a certified mailing at her home address, and told Booker she received papers from the Bengals.  Because his California case was ongoing at that time, Booker assumed and believed the papers were related to that case and that copies had been sent to his California lawyer.  He did not realize that the papers concerned this action until September 2009.

Mr. Gibson states that he filed his California claim in May 2007, and that he does not recall receiving any legal papers from the Bengals concerning the Ohio action.

Mr. Steele filed his California claim in July 2007.  Steele first learned in October of 2009 that the Ohio summons and complaint were delivered to an Indiana address where his parents live, and that the receipt filed in state court was signed by "Glen Steele."  His father goes by the name of "Glen."  Steele did not reside at the Indiana address at the time, and he states

-4-

his father did not tell him about the certified mail receipt.  He
also does not recall personally receiving any papers about the
Ohio action.  The record does not reflect the status of
California claims filed by Steele and Gibson.

Mr. Wilson filed his California workers comp claim in June
2006, and on April 21, 2008, the California Workers Compensation
Appeals Board granted Wilson's claim, finding that the Bengals
were subject to the jurisdiction of the CWCAB.  Wilson does not
recall receiving any legal papers from the Bengals concerning the
Ohio action, and he first learned about it in September 2009.
Each of the Defendants was represented by California counsel in
their proceedings in that state.

Defendants argue that the four default judgments should be
vacated under Fed. R. Civ. P. 60(b)(1) and/or (5).  Those
subsections provide that, on just terms, the court may set aside
a judgment due to (1) "mistake, inadvertence, surprise, or
excusable neglect;" or (5) when "applying [the judgment]
prospectively is no longer equitable."  They argue that the
default judgments conflict with California law providing that an
employee's right to seek compensation benefits cannot be waived
or pre-empted by a collective bargaining agreement or employment
contract.  And Defendants contend that this state law is not pre-
empted by federal labor law.  See, e.g., Met. Life Ins. Co. v.
Mass., 471 U.S. 724, 755 (1985), holding that a state law

-5-

mandating that certain insurance coverage benefits be provided by all insurers writing policies in the state was not pre-empted by the NLRA, because state laws mandating minimum employee benefits or employment standards do not infringe protected collective bargaining rights.  Defendants argue that the Ohio court did not fully consider the potential application of or conflict with California law when it entered the default judgments, which were based entirely upon the Bengals' breach of contract claims. Defendants contend that the judgments are premised upon a fundamental mistake of law that is sufficient to set aside the judgments.

Defendants also argue that the judgments violate the full faith and credit clause, because an Ohio injunction based on an alleged contract breach cannot trump Defendants' rights under California law that expressly permits the players to pursue claims in that state.  They cite <u>Pacific Employers Insurance Co. v. Industrial Accident Commission of California</u>, 306 U.S. 493 (1939), involving a claim by an employee of a Massachusetts employer who was injured while on temporary assignment in California.  The employee filed a California workers compensation claim which the employer (through its insurer) argued should be dismissed based upon the employee's agreement with the employer to be bound by Massachusetts law.  The Supreme Court held that California law provided the employee with the right to file his

-6-

claim in that state, and that the California court need not defer to Massachusetts law incorporated into the employee's contract with his employer.  The Court held: "Full faith and credit does not here enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it."  Id. at 505.  Just as a Massachusetts statute and contract did not preclude the employee in that case from exercising his rights under California law, Defendants argue that an Ohio court's injunction cannot preclude them from exercising those same rights.

In addition, Defendants argue that prospective application of the judgments is inequitable.  The judgments create what Defendants call an "intolerable friction" with orders entered by the California CWCAB concerning Defendants' compensation claims. For example, in a recent order entered in the Booker matter, the CWCAB took note of the Ohio default judgment that had been entered against Booker:

> A court within the State of Ohio has issued an
> injunction against several former Bengals football
> players from pursuing workers' compensation claims in
> any state except Ohio.  The injunction in question was
> not directed to the State of California, only the
> former players.  Jurisdiction to adjudicate the
> workers' compensation laws of the State of California
> is vested in the Workers Compensation Appeals Board of
> the State of California, and no where else per Labor
> Code 5300.  The court of the State of Ohio lacks any
> authority or jurisdiction to in any manner limit the
> Workers' Compensation Appeals Board of the State of

California and its [judges] from adjudicating and enforcing the workers' compensation laws of the State of California.

(Doc. 11, Booker Declaration, Exhibit A at 16.)

Finally, Defendants argue that the defaults should be set aside for inadvertence or excusable neglect. They argue they did not intentionally waive their rights to contest the Bengals' claims, and that the Bengals' attempts to serve them were ineffectual. Equitable considerations also support setting aside the judgments, as the Bengals will not be prejudiced by setting aside these judgments; Defendants have meritorious defenses; and it was the Bengals' own questionable decision to file an Ohio action while the California proceedings were ongoing, that contributed to the situation.

The Bengals respond that the Defendants cannot satisfy any of Rule 60(b)'s requirements, and argue that Defendants ignored this action. The Bengals' counsel states in his affidavit (Doc. 21, Exhibit 1) that he faxed the Ohio complaint to the Defendants' California workers compensation lawyer on the day it was filed. He states he "contacted" Defendants and notified the California lawyer of the trial court's hearing on the motion for a temporary restraining order. He also notified Defendants and their counsel of the preliminary injunction hearing. Regarding the Wilson contempt order, counsel states that he sent a copy of that order to the same address at which Wilson had been receiving

-8-

his benefit checks ordered by the CWCAB.

The Bengals contend there has been no significant change in the facts or the law that would justify vacating the judgments under Rule 60(b)(5).  And they argue that the judgments were properly entered in any event, because the Bengals are exempt from California workers' compensation requirements by California Labor Code 3600.5.  With regard to this issue, the Court notes the documents filed with Defendants' reply brief reflecting the fact that the CWCAB recently granted reconsideration of the Booker claim and of a claim by Eddie Brown (who is not a party to this case).  The Booker order remanded his claim to the worker's compensation trial court for further consideration of whether the Bengals are permissibly self-insured under California law.  The Brown order remanded for further development of the record on whether Section 3600.5 applies to the Bengals, which the order suggests would divest the CWCAB of jurisdiction.  (See Doc. 28, Newhouse Affidavit, Exhibits D and G.)  This issue was not presented to the Ohio state court prior to entry of the default judgments, and this Court will not consider the issue in ruling on Defendants' motions.  The merits of this issue are properly before the California tribunals.

Fed. R. Civ. P. 55(c) provides that in order to set aside a default judgment, the movant must satisfy Rule 60(b).  A default judgment is a drastic remedy, and should be used only in the most

-9-

extreme cases.  The Court must apply the rule "equitably and liberally ... to achieve substantial justice."  <u>United Coin Meter Co. v. Seaboard C. Railroad</u>, 705 F.2d 839, 845 (6th Cir. 1983) (internal citation omitted).

Rule 60(b)(5) permits the Court to set aside a judgment when its prospective enforcement is no longer equitable.  Many cases applying this subsection arise in the context of a request to modify a consent decree, which the Sixth Circuit has described as "essentially a settlement agreement subject to continued judicial policing."  <u>Williams v. Vukovich</u>, 720 F.2d 909, 920 (6th Cir. 1983).  Evidence of changed legal or factual circumstances is typically required in order to relieve a party from the terms of a decree entered by consent.  See, e.g., <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367, 383 (1992), holding that a significant change in facts or law is an appropriate basis to grant modification of a consent decree previously entered in prison reform litigation.

In <u>SEC v. Coldicutt</u>, 258 F.3d 939 (9th Cir. 2001), which involved a default judgment and not a consent decree, the defendant had been enjoined from any further violation of the securities laws.  Nine years later, she asked the district court to terminate the permanent injunction, because she was no longer doing business in the securities field and stated she would not re-enter that field.  She argued the injunction caused her great

personal anxiety and distress, and that she posed no danger to the public.  The district court's denial of the motion to vacate was affirmed by the Ninth Circuit.  Given that the injunction simply ordered her to "obey the law," her personal distress or the fact that she had obeyed the injunction for nine years were insufficient reasons to vacate the judgment under Rule 60(b)(5).

Here, in contrast, the default injunctions do not simply require Defendants to "obey the law."  The judgments purport to enjoin Defendants from breaching their contracts by "seeking and receiving relief" under any other state's workers compensation laws.  Defendants apparently have a right to do so in California, and Wilson and Booker have already been granted benefits in that state.  While the Bengals are challenging the merits of those claims under California law, those legal challenges will be determined by the California tribunals, not by this Court.

Moreover, the decision to seek an injunction from an Ohio court on a contract claim, given the timing of that decision in view of the ongoing California litigation, raises the appearance of a collateral attack on the California tribunal's favorable rulings.  The Court notes in that regard the November 17, 2009 order of the CWCAB in the Wilson claim (see Doc. 28, Exhibit R). That order states that the Bengals stopped making payments to Wilson in March 2009 without filing a motion to do so in California, a decision apparently based upon the contempt order

-11-

entered against Wilson in this case (which the CWCAB called a

"withhold and offset" order).  The CWCAB found:

> This same Ohio state court withhold and
> offset order further indicates that the
> applicant is precluded "from pursuing or
> receiving workers' compensation benefits in a
> state other than Ohio or under the law of a
> state other than Ohio."  This order was
> issued in apparent disregard for the Trial
> Court's final and unappealable April 21, 2008
> Findings and Award and Order, which was
> issued pursuant to the legal authority
> invested in the [CWCAB] by the sovereign
> state of California.

(Doc. 28, Exhibit R at ¶12)  The Appeals Board also found that

the Ohio court orders had no legal effect upon the Bengals'

obligation to pay benefits to Wilson per the terms of the

California tribunal's final order, and sanctioned the Bengals for

their conduct "in attempting to circumvent the permanent

disability payment provisions" of the order previously entered in

Wilson's case.  (Id. at ¶22)

Permitting the default judgments to stand would, as

Defendants suggest, perpetuate a direct conflict between the

orders entered in the two states.  In addition, after reviewing

the pre-removal pleadings, the Court is concerned that the

judgments were entered without a complete record concerning the

basis and status of the Defendants' California claims, and

especially the final order granting Wilson's claim for benefits.

Had they been fully presented, those facts would very likely have

raised additional questions about the Bengals' claims.  For

instance, the Bengals' motion for a temporary restraining order informed the court that the Defendants' California claims were "pending," but is silent about the particular status of any individual claim, and about the California tribunals' rulings on specific defenses the Bengals may have raised to those claims. It seems apparent that it was only after the Bengals were unsuccessful in California that they resorted to a declaratory judgment action in Ohio.

The Bengals also argued in their motion for a temporary restraining order that the contract's choice of law/choice of forum clause should be enforced because "California has no interest in this claim." (Doc. 30, Exhibit A at p. 5) It clearly appears that California does have a substantial interest in the Defendants' claims, as is clearly reflected in the benefits awarded to some of the Defendants and in the orders discussed above.

The Court also notes that the temporary restraining order was entered four days after the Bengals filed a supplemental memorandum which attached complete copies of each of the Defendants' employment contracts. That memorandum specifically referred the court to Addendum No. 3, but did not mention the contract's arbitration clause. Yet the Bengals' claims were based entirely on breach of contract claims which (as discussed below) are encompassed by that clause.

-13-

In addition to these concerns, Defendants argue the judgments should be set side because they lacked actual notice of the Ohio proceedings through inadvertence or excusable neglect. The Sixth Circuit has noted that when a default "... results from an honest mistake rather than willful misconduct, carelessness or negligence," Rule 60(b) must be applied especially liberally. United Coin Meter, 705 F.2d at 845 (internal citation omitted). In order to set aside a judgment based on this subsection, a defendant must establish the existence of such circumstances. If he does not, the Court must deny the motion. Waifersong, Ltd. v. Classic Music Vending, 976 F.2d 290, 293 (6th Cir. 1992). If he satisfies the Rule, the Court should then consider the three equitable factors outlined in United Coin Meter: (1) will plaintiff be prejudiced; (2) do defendants have a meritorious defense; and (3) did any culpable conduct by the defendants cause the defaults. Prejudice must be demonstrated by showing that the resulting delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." INVST Financial Group v. Chem-Nuclear Systems, Inc., 815 F.2d 391, 398 (6th Cir. 1987). The Court should resolve any disputes or ambiguities that exist with respect to these issues in the light most favorable to the defendant. Id.

The Bengals argue that Defendants willfully ignored the Ohio

-14-

action and chose not to respond.  But Wilson and Gibson have filed sworn affidavits stating they did not receive any of the Ohio papers.  Their affidavits are supported by the lack of any evidence of completed certified service in the state court's docket.  While certified return receipts were filed for Steele and Booker, those Defendants have explained the particular circumstances surrounding those receipts, and have specifically denied actual notice.

In Thompson v. American Home Assur. Co., 95 F.3d 429 (6th Cir. 1996), the Sixth Circuit affirmed the district court's order vacating a default judgment against the defendant insurance company in an ERISA benefits suit.  The plaintiff had attempted to serve the Secretary of Labor rather than defendant's agent. (ERISA includes a provision that service of process on the Secretary is deemed effective only when the suit is brought against an ERISA plan.)  Defendant argued that it had no actual notice of the lawsuit until after the default judgment was entered.  The court found those facts established "surprise" under Rule 60(b)(1), and that lack of actual notice is a sufficient reason to set aside a default judgment.  Id. at 433. The court cited Rooks v. American Brass Co., 263 F.2d 166, 168 (6th Cir. 1959), a per curiam decision affirming the setting aside of a default judgment where regular mail service was properly sent to defendant's residence, but he never actually

-15-

received it because he was hospitalized with meningitis. His wife had received the papers but did not tell her husband, and instead gave the papers to his business manager who mistakenly believed it was a lawsuit against defendant's corporation, not against defendant individually. The court found these circumstances established inadvertent mistake or excusable neglect despite the fact that his wife and his manager had actual knowledge of the suit. As with the defendant in Rooks, Defendants Steele and Booker later discovered that their parents had received the Ohio papers but failed to tell them about what they had received.

See also, Burrell v. Henderson, 434 F.3d 826 (6th Cir. 2006), reversing the district court's refusal to vacate a default judgment against a local union after its president admitted receiving the plaintiff's complaint. She did not hire a lawyer for herself or for the local, mistakenly believing that the complaint was related to the plaintiff's EEOC proceeding. Instead she wrote letters to the court clerk, asking if there was anything she needed to do. After plaintiff was granted a default judgment for substantial damages ($637,584) and attempted to execute, the defendants filed a motion to set aside the judgment. The Sixth Circuit found that the case had been improperly handled by multiple parties, including the plaintiff, and noted the undisputed fact that the local union had no actual knowledge of

-16-

the lawsuit.  The court observed that an injustice would result if the default judgment was permitted to stand.

In this case, the record reflects that the Bengals served their Ohio complaint and motion for a temporary restraining order on the lawyer representing Defendants in California.  The Bengals' counsel stated in an affidavit filed in state court that he left a message with that lawyer but had not heard back from him.  The August 5, 2008 preliminary injunction entered by the trial court states that the Defendants received adequate notice because "their identified counsel" received the pleadings.  The default judgment motions filed on November 17, 2008 were served by regular mail only on the individual Defendants.

Defendants do not discuss the issue of any notice given to their California lawyer.  Assuming he received copies of those pleadings, however, service of a complaint on out of state counsel is not a substitute for legally effective service of a complaint on a defendant.  As noted above, Defendants' affidavits state they did not receive service and did not have actual notice of the lawsuit or of the default judgments.  This Court does not and would not condone a deliberate refusal to respond to proper service of process.  But given Defendants' sworn affidavits, and the principle that uncertainties or ambiguities should be resolved in favor of determining cases on their merits, the Court finds that Defendants have established excusable neglect.

Regarding the three <u>United Coin Meter</u> equitable factors, the Bengals have not demonstrated any cognizable prejudice that would result from setting aside the defaults.  There is no suggestion of a potential for lost evidence nor of any increased discovery problems.

Defendants also have presented meritorious defenses to the Bengals' complaint.  The measure of a "meritorious defense" for purposes of Rule 60(b) is not whether Defendants will prevail. It is whether their arguments are plausible, or state a defense that is "good at law."  <u>United Coin Meter</u>, 705 F.2d at 845. Defendants' arguments concerning the inappropriate basis for the judgments, the conflict created with the ongoing California proceedings, and the issue of the applicability of the contract's arbitration clause, are all sufficient to satisfy this standard.

Finally, the Court cannot conclude that Defendants' culpable conduct resulted in the default judgments.  A finding of culpability requires some element of blame or recklessness, and more than the inadvertence or excusable neglect which the Court concludes the Defendants have demonstrated.

After fully considering all of the parties' arguments, the Court concludes that the default judgments against the moving Defendants should be set aside under Rule 60(b)(5) and (b)(1). As a result, the order of contempt entered against Wilson must also be vacated, as it was premised upon his purported violation

of that judgment.

Motion to Compel Arbitration

Defendants (joined by the proposed intervenor, the NFL Players Association), have moved for an order to compel arbitration of the Bengals' claims. (Doc. 5)  Defendants argue that any dispute arising out of the terms of the contracts between the Bengals and the Defendants is subject to binding arbitration clauses in both the players' contracts and in the NFL's collective bargaining agreement.  As this Court found in denying the Bengals' motion to remand, "... the Bengals' amended complaint plainly alleges that each Defendant has violated his player's contract by filing claims in California, and seeks declaratory and injunctive relief based on that violation." (Doc. 18 at p. 14)

Article IX, Section 1 of the CBA (entitled "Non-Injury Grievance") states that "any dispute ... involving the interpretation of, application of, or compliance with, any provision of the Agreement, [or] the NFL Player Contract ... will be resolved exclusively in accordance with the procedure set forth in this Article ...".  The rest of Article IX describes those arbitration procedures, including Section 8 which states that the arbitrator's decision "will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and the Club(s) involved ...".

Section 19 of the NFL Player Contract between the Bengals and each of the individual players is entitled "DISPUTES."  It states that "... any dispute between Player and Club involving the interpretation or application of any provision of this contract will be submitted to final and binding arbitration" in accordance with the CBA's procedures.

Defendants argue that the Bengals' claims are all premised upon the Defendants' alleged breach of the contracts' Addendum 3, and fall within the express scope of the arbitration clause. Defendants also note that at the time they filed their motion, the NFLPA and the NFL Management Council (the authorized representative of the NFL teams) were arbitrating grievances filed by the Tennessee Titans and the Miami Dolphins over claims filed by some of their players who are seeking California workers compensation benefits.  (See Doc. 5, Kaiser Declaration, Exhibits J and K.)

After this Court denied the Bengals' motion to remand, the Bengals filed an amended complaint.  (See Doc. 19)  The Bengals assert this amendment was filed as of right under Rule 15(a)(1)(A) against the group of Defendants the Bengals first sued in their first amended complaint filed in the state court in September 2009.  This second amended complaint alleges new claims against each Defendant, that their California workers compensation proceedings violate Ohio Rev. Code 4123.54(H).  The

-20-

Bengals seek an injunction to prevent any further violations of the Ohio statute.

In their response to the motion to compel arbitration (Doc. 22), the Bengals argue that these "new" claims are based "directly" on the Ohio statute, and are separate and apart from the contract claims alleged in the first amended complaint. These new statutory claims are not subject to arbitration because they are based on Ohio law, not on the CBA or the players' contracts.  The Bengals argue that the federal labor law's "limited" presumption in favor of arbitrability therefore does not apply.  They cite <u>Wright v. Universal Maritime Service Corp.</u>, 525 U.S. 70, 78 (1998), where the Supreme Court found that plaintiff's statutory ADEA claim did not arise out of a labor agreement but from the ADEA, and was distinct from plaintiff's contract or collective bargaining rights.  The Court concluded that the plaintiff was not required to submit his ADEA claim to arbitration as a pre-requisite to filing suit.

As an initial matter, the Court disagrees with the Bengals' contention that the second amended complaint falls within Rule 15(a)(1).  That Rule states:  "[A] party may amend its pleading once as a matter of course (a) before being served with a responsive pleading; or (b) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar."  The Bengals filed their

original complaint on June 26, 2008, and sought leave of the state court (under Ohio's substantially similar Rule 15) to file their first amended complaint.  The Bengals have exercised their "once as a matter of course" privilege, and given the status of this case they should have sought leave of this Court to file a second amended complaint.

Even if they had asked for and been granted leave, however, the second amended complaint is not a basis upon which to deny Defendants' motion for arbitration.  Ohio Rev. Code 4123.54(H) provides employers and employees covered by its terms, and who elect to comply with all of its requirements, the exclusive remedy of Ohio's workers compensation system.  This Court already concluded that this statute does not create a private cause of action for an alleged breach of an employment contract entered into between willing parties that may satisfy the statute's requirements.  In denying remand of this case, the Court rejected the Bengals' argument that their declaratory and injunctive relief claims - which are premised on breach of the Defendants' contracts - arose under this statute or under Ohio's workers compensation laws.  The Court specifically held that Section 4123.54(H) "grants the flexibility to bargain over this issue in negotiating the terms of an employment agreement." (Doc. 18, p. 15)  The Court cannot conclude that the Bengals' belated attempt to assert a claim under this statute, only after this Court's

previous ruling, alters that conclusion.

Wright v. Universal Marine does not assist the Bengals.  In
that case, the plaintiff had been injured on the job and was
later released by his doctor to return to work.  When the
defendants would not re-hire him, he filed an ADA claim in
district court.  His suit was dismissed without prejudice because
he had not submitted the claim to the applicable CBA's
arbitration process.  The Supreme Court held that the arbitration
clause at issue, which covered "matters under dispute," did not
expressly require arbitration of the employee's ADA claim for
which Congress had created a specific right and a legal remedy.
The Court also held that a union-negotiated waiver of an
employee's statutory anti-discrimination rights must be
"particularly clear."  525 U.S. at 80 (internal citations
omitted).  This was especially important because the CBA at issue
did not have any explicit anti-discrimination provisions, nor any
express requirement that discrimination claims must be submitted
to arbitration.

The Court distinguished Gilmer v. Interstate/Johnson Lane
Corp., 500 U.S. 20 (1991), which found that an ADEA claim was
subject to a compulsory arbitration clause in the employee's
securities employment registration form.  In Gilmer, the Court
found that an individual employee may knowingly and intentionally
waive her right to a judicial forum for vindication of her

-23-

statutory rights.  But in <u>Wright</u>, the union's waiver of such rights on behalf of all employees was not "clear and unmistakable."  <u>Id</u>.

More recently, in <u>14 Penn Plaza LLC v. Pyett</u>, 129 S.Ct. 1456 (2009), in an opinion intended to resolve any perceived tension between <u>Wright</u> and <u>Gilmer</u>, the Court held that a CBA's express and unambiguous provision requiring arbitration of ADEA claims was fully binding on union members.

Here, Addendum No. 3 to the Players Contract (the choice of law/choice of forum clause giving rise to this dispute) is separately signed by both the player and a Bengals representative.  There is nothing in that addendum exempting its terms from the contract's very broad and unambiguous arbitration clause, which applies to **any** dispute about "compliance" with any of the contract's terms and conditions.

The Bengals argue that NFL arbitrators will not decide issues of state law, which will leave them without a remedy for what they now allege is Defendants' violation of Ohio law. Addendum 3 does not refer to any Ohio legal requirements or the Ohio statute which the Bengals allege has been violated.  The addendum contains the parties' agreement on the proper forum for a workers compensation claim.  This Court previously concluded that the resolution of the Bengals' claims requires the interpretation of Addendum 3.  The second amended complaint does

-24-

not change that conclusion.  In Section 301 cases, a "strong
presumption of arbitrability" applies to disputes arising under a
collective bargaining agreement containing a broad arbitration
clause.  United Steelworkers of Am. v. Mead Corp., 21 F.3d 128,
131 (6th Cir. 1994).  That strong presumption fully applies here.

The Bengals also note that Defendants have threatened to
object to any arbitration of their claims as untimely.[1]  The
Court observes that it is the Defendants who have moved to compel
arbitration.  And an objection based on timeliness of a demand
under the contract is one that the arbitrator must address.  Out
of an abundance of caution in view of the Bengals' concerns, this
Court will stay this case rather than dismiss it.  The Court may
grant a stay rather than an outright dismissal if it is arguable
that the arbitral forum may not completely dispose of the claims
at issue.  See, e.g., Tice v. American Airlines, Inc., 288 F.3d
313, 318 (7th Cir. 2002), where the Seventh Circuit observed: "As
we have emphasized in a variety of contexts, district courts
should retain jurisdiction over a suit that must be interrupted
for reference of an issue to another forum rather than dismiss it
if, should it be dismissed, there might later be grounds for
reinstating it."

---

[1] Article IX of the CBA, at Section 2, states that a
grievance must be initiated within forty-five days from the date
of the event giving rise to the grievance.  The parties
apparently agree that this time limit has been consistently
enforced.

The Bengals then contend that the four defaulted Defendants (Booker, Wilson, Gibson, and Steele) waived any right to demand arbitration by their eleven-month delay in doing so.  The Bengals cite General Star Nat'l Ins. v. Administratia Asiqurarilor de Stat, 289 F.3d 434 (6ᵗʰ Cir. 2002), where the Sixth Circuit rejected a defendant's argument that it had timely invoked an arbitration clause after the district court had entered default judgments against the defendant.  But there, the reinsurance contract giving rise to the dispute included an express clause appointing an American agent for service of process upon the defendant, a foreign corporation.  Plaintiff properly served the American agent, and after defendant failed to respond, plaintiff sought a default judgment for damages.  Only then did defendant move to vacate the default judgment, asserting that the court lacked subject matter jurisdiction based on the contract's arbitration provision.  The Sixth Circuit held that defendant had waived any right to arbitrate the dispute by its deliberate failure to respond.

Here, as discussed above, the Court cannot conclude that the Defendants deliberately failed to respond to the complaint, or that they had actual notice of the motions for entry of the default judgments.  A party may waive its contractual right to arbitration by participating in litigation, or acting in a manner inconsistent with that right.  Two courts in this district have

recently addressed this issue.  In <u>Konica Minolta Bus. Solutions, U.S.A. v. Allied office Products</u>, 2006 U.S. Dist. LEXIS 93640 (S.D. Ohio, Dec. 27, 2006) (Graham, J.), the district court identified several factors to consider, including  (1) filing responsive pleadings without asserting a right to arbitration; (2) filing pretrial motions; (3) engaging in extensive discovery; (4) using discovery methods not available in arbitration; (5) litigating merits issues; (6) the length of delay in invoking arbitration and seeking a stay; (7) the proximity of the trial date; (8) prejudice to the opposing party; and (9) whether the party has filed a counterclaim.  Those factors were also applied in <u>Reidy v. Cyberonics, Inv.</u>, 2007 U.S. Dist. LEXIS 9568 (S.D. Ohio, February 8, 2007) (Dlott, J.), where the court concluded that a defendant had not waived arbitration by participating in the litigation for eight months before seeking a stay.  The court found that filing an answer without raising the arbitration provision, attending a preliminary scheduling conference, and responding to plaintiff's discovery requests, did not amount to the type of "active participation" that resulted in a waiver.

In this case, the moving Defendants did not participate in this litigation at all until they filed their motions to vacate the default judgments and to compel arbitration.  Absent evidence of their intentional disregard of this action, the Court finds that they have not waived their right to demand arbitration of

the Bengals' claims.  For all of these reasons, the motion to compel arbitration is granted.

### Motion to Intervene

As the Court is granting the Defendants' motion to compel arbitration and staying this case pending completion of arbitration, the motion to intervene by the NFL Players Association is denied without prejudice to renewal should this case return to the Court's active docket.

**CONCLUSION**

For all of the foregoing reasons, the motion by Defendants Vaughn Booker, Oliver Gibson, Glen Steele, and Reinard Wilson to vacate the default judgments, and to vacate the contempt order against Wilson (Doc. 11) is granted.  Defendants' motion to compel arbitration of the Bengals' claims (Doc. 5) is granted. The motion to intervene by the NFLPA (Doc. 4) is denied without prejudice.  The motions for admission pro hac vice by the NFLPA's lawyers (Docs. 6, 7 and 8) are denied without prejudice to renewal.  The request for oral argument (Doc. 24) is denied.

This matter is stayed pending completion of arbitration under the terms of the contracts and collective bargaining agreements between the parties.

SO ORDERED.

DATED: April 28, 2010          s/Sandra S. Beckwith
                               Sandra S. Beckwith
                               Senior United States District Judge

-28-