MSD

# EXHIBIT B

**WORKERS' COMPENSATION APPEALS BOARD**

**STATE OF CALIFORNIA**

|  |  |
|---|---|
| VAUGHN BOOKER,<br><br>   ***Applicant,***<br><br>     **vs.**<br><br>**CINCINNATI BENGALS, Permissibly Self-Insured; KANSAS CITY CHIEFS; TRAVELERS INSURANCE CO.; TIG INSURANCE CO.; GREEN BAY PACKERS; and ZURICH AMERICAN INSURANCE CO.,**<br><br>   ***Defendants.*** | Case No. ADJ4661829 (ANA 0401410)<br><br>**OPINION AND ORDER DENYING PETITION FOR RECONSIDERATION** |

Applicant, Vaughn Booker, has filed a petition seeking reconsideration of our February 8, 2012 Opinion and Decision After Reconsideration. In that decision, we addressed applicant's claim that, while employed as a professional football player by the Cincinnati Bengals (the Bengals), the Kansas City Chiefs (the Chiefs), and the Green Bay Packers (the Packers) from February 16, 2000 to April 1, 2003, he sustained a cumulative industrial injury that resulted in part from games he played in California. We concluded that, under Labor Code section 3600.5(b),[1] the Workers' Compensation Appeals Board (WCAB) does not have subject matter jurisdiction over applicant's claim against the Bengals. We then returned the matter to the workers' compensation administrative law judge (WCJ) to determine whether there is any basis for jurisdiction over the Chiefs or the Packers and, if so, whether there is any basis to issue an award against one or both of them.

In his petition, applicant contends that: (1) where an employee is injured while temporarily employed in California, section 3600.5(b) provides for subject matter jurisdiction unless certain elements are met and, here, the Bengals did not satisfy all of these elements; (2) he paid California

---

[1] All further statutory references are to the Labor Code.

income taxes on his earnings for the game he played here and, therefore, he is entitled to equal protection under California laws; and (3) our decision left him without a remedy in the State of Ohio.

For the reasons set forth in our February 8, 2012 decision, which we adopt and incorporate by reference, and for the reasons that follow, we again conclude that, under section 3600.5(b), the WCAB does not have subject matter jurisdiction over applicant's cumulative injury claim against the Bengals. However, even if we were to assume that the WCAB has subject matter jurisdiction, we would decline to exercise that jurisdiction here because the contract between applicant and the Bengals contains a forum selection clause requiring that he make any workers' compensation claim exclusively in Ohio.

**I. BACKGROUND**

Applicant played in the National Football League (NFL) for nine seasons: four seasons with the Chiefs (1994, 1995, 1996, and 1997); two seasons with the Packers (1998 and 1999); and three seasons with the Bengals (2000, 2001, and 2002).

On February 16, 2000, an "NFL Player Contract" (Contract) was signed by applicant and the Bengals covering five football seasons through February 2005. (Defendant's Exhibits F & N.) Paragraph 25 of the Contract, entitled "Special Provisions," specified that "Addendum No. 1, Addendum No. 2, Addendum No. 3 and Addendum No. 4, attached hereto are incorporated herein by this reference and made a part of this Contract." In relevant part, Addendum No. 2 stated:

> "As a material inducement for the Club to employ Player's services, Player promises and agrees that any workers' compensation claim, dispute, or cause of action arising out of Player's employment with the Club shall be subject to the workers' compensation laws of Ohio exclusively and not the workers' compensation laws of any other state. Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability, or enforceability of this addendum, shall be brought solely and exclusively with the courts of Ohio, the Industrial Commission of Ohio, or such other Ohio tribunal that has jurisdiction over the matter."

After signing the Contract, applicant played three seasons with the Bengals. Specifically, he played: (1) 12 regular season games in 2000, none of which were in California; (2) 16 regular season games in 2001, including one game in California at San Diego on September 30, 2001; and (3) four

**BOOKER, Vaughn**                                    2

preseason games and 16 regular season games in 2002, none of which were in California.

## II. DISCUSSION

### A. Section 3600.5(b) Does Not Vest the WCAB with Subject Matter Jurisdiction Over Applicant's Claim Against the Cincinnati Bengals

The issue of subject matter jurisdiction under section 3600.5(b) was extensively discussed in our prior opinion. To briefly reiterate, however, the WCAB has subject matter jurisdiction over *all* injuries sustained in California (see Lab. Code, §§ 5300, 5301), with one exception. That is, section 3600.5(b) provides:

> "Any employee who has been hired outside of this state and his employer shall be exempted from the provisions of this division while such employee is temporarily within this state doing work for his employer if such employer has furnished workers' compensation insurance coverage under the workers' compensation insurance or similar laws of a state other than California, so as to cover such employee's employment while in this state; provided, the extraterritorial provisions of this division are recognized in such other state and provided employers and employees who are covered in this state are likewise exempted from the application of the workers' compensation insurance or similar laws of such other state. The benefits under the Workers' Compensation Insurance Act or similar laws of such other state, or other remedies under such act or such laws, shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this state.

> "A certificate from the duly authorized officer of the appeals board or similar department of another state certifying that the employer of such other state is insured therein and has provided extraterritorial coverage insuring his employees while working within this state shall be prima facie evidence that such employer carries such workers' compensation insurance."

Thus, under section 3600.5(b), the laws of a state other than California provide *the exclusive remedy* for an employee hired outside of California[2] who is injured while working here, *if* all of the following conditions are satisfied: (1) the employee is working only "temporarily" in California; (2) the employer

---

[2]    Generally, the WCAB has jurisdiction over the injury claim of an employee whose contract of hire was made in California. (Lab. Code, §§ 3600.5(a) and 5305.)  Here, however, it is undisputed that applicant was hired outside of California.

**BOOKER, Vaughn**                                                3

has workers' compensation insurance coverage under the workers' compensation insurance or similar laws of a state other than California; (3) this insurance covers the employee's work in California, and (4) the other state recognizes California's extraterritorial provisions and likewise exempts California employers and employees covered by California's workers' compensation laws from application of the laws of the other state.  The certificate described in the last paragraph of section 3500.5(b) provides prima facie evidence that condition numbers two and three have been satisfied.[3]

**1.  Section 3600.5(b) Does Not Require the Production of a "Certificate" Showing that the Out-of State Employer's Workers' Compensation Insurance Provides Extra-Territorial Coverage**

In his petition, applicant argues that the evidence fails to establish that the Bengals "furnished workers' compensation insurance coverage under the workers' compensation insurance or similar laws of a state other than California, so as to cover such employee's employment while in this state" for September 30, 2001, the only day applicant played in California.  In making this argument, applicant essentially asserts that there is only a single method of establishing that the Bengals had California coverage for applicant on September 30, 2001.  That is, he claims that the second paragraph of section 3600.5(b) "unambiguously requires a **certificate**" (emphasis in original) and not "an unauthenticated photocopy of a letter" from the duly authorized officer of the appeals board or similar department of the other State.

Applicant misconstrues section 3600.5(b).

With respect to insurance coverage, section 3600.5(b) merely requires evidence that the employer "has furnished workers' compensation insurance coverage under the workers' compensation insurance or similar laws of a state other than California, so as to cover such employee's employment while in this state."  Section 3600.5(b) does *not* require that this evidence be in any particular form.

---

[3]    This summary of the requirements of section 3600.5(b) represents a different formulation than that stated in our February 8, 2012 decision.  There, among other things, we had said that condition (2) required that "the employer furnishes workers' compensation insurance *under the 'similar' laws* of another state." (Emphasis added.)  Then, later in our decision, we said that this meant that the other State's workers' compensation laws had to be "similar" to those of California.  This was a misstatement.  Section 3600.5(b) does not provide that the workers' compensation laws of the other State must be "similar" to those of California.  Instead, section 3600.5(b) requires that the employer has furnished workers' compensation insurance coverage "under the workers' compensation insurance or similar laws" of *the other State*.  This language merely recognizes that not all states regulate workers' compensation through a Workers' Compensation Act per se.

**BOOKER, Vaughn**           4

Of course, the second paragraph of section 3600.5(b) does state: "A certificate from the duly authorized officer of the appeals board or similar department of another state certifying that the employer of such other state is insured therein and has provided extraterritorial coverage insuring his employees while working within this state shall be *prima facie evidence* that such employer carries such workers' compensation insurance." (Emphasis added.) However, this paragraph does not *require* such a certificate. It merely provides that, if such a certificate is produced, it is prima facie evidence that the requisite insurance coverage exists. (See *Carroll v. New Orleans Saints* (2010) 2010 Cal. Wrk. Comp. P.D. LEXIS 176 (Appeals Board panel decision) ("section 36005(b) does not 'require' a certificate; it merely allows the use of a certificate as one method of establishing a prima facie case of coverage.").)

Here, even though no section 3600.5(b) "certificate" was offered in evidence, the other unrebutted and unimpeached documentary and testimonial evidence establishes that the Bengals had the requisite extraterritorial workers' compensation insurance coverage for applicant's single game in California on September 30, 2001.

First, there is an October 22, 2009 letter from John Woodruff, the Director of the Self-Insured Department of the Ohio Bureau of Workers' Compensation (OBWC), which "provide[s] verification that … Cincinnati Bengals, Inc., has been authorized to operate as a self insuring employer, for Ohio workers' compensation purposes, since July 1, 1968." (Defendant's Exhibit L.) We construe the October 2009 letter's statement that the Bengals have had self-insurance coverage "*since* July 1, 1968" (emphasis added) to mean that the Bengals were continuously self-insured for workers' compensation from July 1968 through October 2009, which necessarily includes September 30, 2001. This conclusion is bolstered by the June 14, 2011 trial testimony of Katherine Blackburn, an executive vice president with the Bengals who ultimately oversees and coordinates their workers' compensation coverage. (Reporters' Transcript, 6/14/11 trial, at 15:16-16:1.) Ms. Blackburn reviewed Mr. Woodruff's October 22, 2009 letter and confirmed that the Bengals have been continuously permissibly self-insured for workers compensation in the State of Ohio from July 1, 1968 through the time of her testimony. (*Id.* at 16:3-16:2.)

**BOOKER, Vaughn**                                                5

Second, there is a November 4, 2009 letter from James A. Barnes, the Chief Legal Officer and General Counsel of OBWC which states:

> "As a self-insured employer in the state of Ohio, the Cincinnati Bengals will cover, pursuant to the Ohio Workers' Compensation Act, injuries to players which occur in games located outside of the state of Ohio. Such workers' compensation coverage would be pursuant to the Ohio Workers' Compensation Act.
>
> "Additionally, BWC [i.e., OBWC] provides such coverage for State fund employers with employees working temporarily outside of Ohio. As a self-insured employer, the Cincinnati Bengals are required to provide the same coverage in those circumstances under [Ohio Revised Code] 4123.46(B)." (Defendant's Exhibit K.)

This letter establishes that the Bengals self-insurance coverage applied to injuries sustained by its players outside of Ohio. This was also confirmed by Ms. Blackburn's trial testimony. (Reporters' Transcript, 6/14/11 trial, at 17:3-17:21.)

Accordingly, taking into consideration both of the above two elements of proof, the evidence does establish that the Bengals had self-insurance coverage from July 1968 through October 2009 (i.e., including September 30, 2001) for injuries to its players for games played outside of Ohio.[4]

**2. Section 3600.5(b) Requires Only that the Out-of-State Employer Must Have Valid Extra-Territorial Insurance Coverage Under the Other State's Laws; It Does Not Allow the WCAB to Find Subject Matter Jurisdiction Based on the Employer's Alleged Failure to Comply with Insurance Notice Requirements of the Other State**

Applicant argues that the WCAB has jurisdiction under section 3600.5(b) because the Bengals allegedly failed to comply with an Ohio Revised Code requirement that it give notice to an Ohio administrative agency of its extraterritorial coverage. He cites to Ohio Revised Code section 4123.292(A), which provides:

> "[A]n employer may elect to obtain other-states' coverage through an other-states' insurer or, if the administrator of workers' compensation elects to offer such coverage, through the administrator pursuant to

---

[4]     Applicant asserts that Mr. Barnes' November 4, 2009 letter merely states: "[t]he Bengals '**will**' provide extraterritorial coverage; it does **not** state whether the Bengals were in possession of extra-territorial coverage when the Applicant traveled to California with the Bengals on September 30, 2001." (Emphasis in original.) But this assertion is true only if the November 4, 2009 letter is read standing alone. If the November 4, 2009 letter is read in conjunction with the other evidence, the evidence as a whole establishes that the Bengals' self-insurance provided extra-territorial coverage for applicant's September 30, 2001 game in California.

BOOKER, Vaughn                                                    6

division (B) of this section. An employer who elects to obtain other-states' coverage shall submit a written notice to the administrator stating that election and, if the employer elects to obtain that coverage through an other-states' insurer, the name of the other-states' insurer through whom the employer has obtained that coverage."[5]

Applicant then states, "The Bengals have not produced evidence of their notice to the Administrator of extra-territorial coverage, nor have they identified the name of their extra-territorial insurer for September 30, 2001."

Section 3600.5(b) provides that, when an employee not hired in California is temporarily working in this State, the employer must have "furnished workers' compensation insurance coverage under the workers' compensation insurance or similar laws of a state other than California, so as to cover such employee's employment while in this state." Thus, section 3600.5(b) merely requires the out-of-state employer to have extraterritorial workers' compensation coverage that is valid under the other State's laws.

Here, even if we were to accept applicant's allegations that the Bengals have violated section 4123.292(A) by failing to submit written notice to the Ohio administrator, applicant has not shown that, under Ohio law, any such violation would automatically and irrevocably invalidate the Bengals' extra-territorial self-insurance coverage. Nothing in section 4123.292(A) so provides.

In any event, section 4123.292(A) appears to be totally inapplicable. That is, in light of the Ohio Workers' Compensation Act's definitions of "other-states' coverage" and "other-states' insurer",[6] section 4123.292(A) requires notice to the Administrator only if the employer has elected to obtain extra-territorial workers' compensation insurance coverage *from a non-Ohio insurance carrier*. The Bengals did not make such an election here. Instead, as discussed above, the Bengals elected to be

---

[5]     See also Ohio Rev. Code, § 4123.82(C): "Nothing in this section shall be construed to prohibit the administrator or an other-states' insurer from providing to employers in this state other-states' coverage in accordance with section 4123.292 of the Revised Code."

[6]     Ohio Rev. Code, § 4123.01, states that "[a]s used in this chapter: ... (J) 'Other-states' insurer' means an insurance company that is authorized to provide workers' compensation insurance coverage in any of the states that permit employers to obtain insurance for workers' compensation claims through insurance companies [and] (K) 'Other-states' coverage' means insurance coverage purchased by an employer for workers' compensation claims that arise in a state or states other than this state and that are filed by the employees of the employer or those employee's dependents, as applicable, in that other state or those other states."

**BOOKER, Vaughn**                                          7

*self-insured* for extraterritorial coverage. Therefore, the section 4123.292(A) notice to the Administrator was not required.

**3.  The Section 3600.5(b) Requirement that the Bengals' Extra-Territorial Workers' Compensation Insurance Must "Cover" Applicant's Employment in California Has Been Met**

Applicant's next argument is that the Bengals have not furnished workers' compensation insurance "so as to cover [his] employment while in this state," as required by section 3600.5(b). Applicant asserts that his injuries are not "covered" by Ohio workers' compensation law because: (1) there is no evidence that Ohio recognizes cumulative trauma injuries *for professional athletes*; and (2) Ohio does not toll its two-year statute of limitations for workers' compensation claims if an employer fails to give the employee notice of his workers' compensation rights. Applicant asserts, therefore, that he will not have a remedy in the State of Ohio.

Section 3600.5(b) requires that an employer must have "furnished workmen's compensation insurance coverage under the workmen's compensation insurance ... laws of a state other than California, so as to cover such employee's employment while in this state." Applicant asks us to read this language to mean that if the injury of an employee temporarily working in California is non-compensable under the other State's workers' compensation laws, then section 3600.5(b) cannot divest the WCAB of jurisdiction.

However, one possible interpretation of the just-quoted language is that section 3600.5(b) only requires the employer to have extra-territorial coverage that would pay benefits for a compensable injury *under the other State's workers' compensation laws*. That is, it might be immaterial under section 3600.5(b) that an injury which would be compensable under California law might be non-compensable under the other State's law.

Nevertheless, we need not reach this question because, as we concluded in our February 8, 2012 opinion, applicant's injury with the Bengals is "covered" by Ohio law.

In asserting to the contrary, applicant argues that, although Ohio workers' compensation laws cover professional athletes (Ohio Rev. Code, § 4123.56(C); *Farren v. Baltimore Ravens, Inc.* (1998) 130 Ohio App.3d 533, 720 N.E.2d 590) and cover cumulative injuries (Ohio Rev. Code,

**BOOKER, Vaughn**                                                    8

1   §§ 4123.01(C) & (F), 4123.54(A); *Brody v. Mihm* (1995) 72 Ohio St.3d 81, 84, 647 N.E.2d 778), neither

2   the Bengals nor the WCAB cite to a single Ohio case finding that *a professional athlete's cumulative*

3   *trauma claim* was compensable.  This is a spurious argument.  Given that Ohio workers' compensation

4   law both covers professional athletes and covers cumulative injuries, we are satisfied that Ohio workers'

5   compensation law covers the cumulative injuries of professional athletes.  Applicant cites to no case

6   suggesting otherwise.

7       Applicant's statute of limitations argument also entirely lacks merit.  Section 3600.5(b) only

8   requires that, where an employee is temporarily employed in California, the employer's workers'

9   compensation insurance coverage must "*cover* such employee's employment while in this state."

10  (Emphasis added.)  Nothing in section 3600.5(b) requires that the other State's statute of limitations

11  laws be the same as or stronger than those in California.  Here, Ohio law gives employees two years

12  from the date of injury to file a workers' compensation claim (Ohio Rev. Code, § 4123.84(A)) and it

13  also has a tolling provision (Ohio Rev. Code, § 4123.28).  *If* applicant failed to timely file his injury

14  claim in Ohio,[7] this would not mean that the Bengals' insurance did not "cover" his employment in

15  California.  It would merely mean that applicant had failed to comply with Ohio's statute of limitations.

16  **4.  The Reciprocity Requirement of Section 3600.5(b) Has Been Met**

17      In his last argument on the section 3600.5(b) subject matter jurisdiction issue, applicant contends

18  that we erred in finding that the requisite reciprocity exists between California and Ohio.

19      Our February 8, 2012 decision fully addresses this issue.  Therefore, we will not address it

20  further, except to observe the following.

21      First, applicant cites to *State ex rel. Kilbarger Construction, Inc. v. Industrial Com. of Ohio*

22  (2007) 2007 Ohio 4311 [2007 Ohio App. LEXIS 3854, 2007 WL 2398486] for the proposition that there

23  is no reciprocity between the State of Ohio and the State of California.  However, *Kilbarger*

24  *Construction* has absolutely nothing to do with the issue of reciprocity between Ohio and California.

25  Instead, *Kilbarger* involved an Ohio employer's attempt to obtain a writ of mandate ordering the Ohio

26

27

---

[7]    The California WCAB, of course, has no authority to decide whether applicant filed a timely claim in Ohio.

**BOOKER, Vaughn**                                    9

Industrial Commission to vacate its orders denying temporary total disability benefits to one of its employees and denying the employer's motion for reimbursement of benefits it paid in the employee's Pennsylvania workers' compensation case.  We hereby admonish applicant's counsel for such a substantial misstatement of the law and caution counsel that this type of conduct may result in sanctions in the future. (Lab. Code, § 5813; Cal. Code Regs., tit. 8, § 10561(b)(6)-(8).)

Second, applicant also cites to *Cavaliers Holdings Co., L.L.C., dba Cleveland Cavaliers v. Workers' Comp. Appeals Bd. (Shelton)* (2009) 74 Cal.Comp.Cases 516 (writ den.).  In *Shelton*, the applicant alleged that he sustained cumulative industrial injury to various body parts while employed as a professional basketball player by the Cleveland Cavaliers.  The Cleveland Cavaliers were insured through the Ohio Bureau of Workers' Compensation, a state agency that pays benefits for injury claims against non-self-insured Ohio employers brought in Ohio under its Workers' Compensation Act, even if the injury was sustained out-of-state.  It appears the Cleveland Cavaliers were not challenging the WCAB's *subject matter* jurisdiction and, therefore, *Shelton* has nothing to do with the section 3600.5(b) reciprocity issue.  Instead, *Shelton* addressed the question of whether the WCAB had *personal* jurisdiction over the OBWC such that it could order the OBWC to pay California workers' compensation benefits.  The Appeals Board found that there was no personal jurisdiction over OBWC.

Third, applicant cites to *Dailey v. Dallas Carriers Corp.* (1996) 43 Cal.App.4th 720 [61 Cal.Comp.Cases 216].  *Dailey* did state:

> "In workers' compensation law, the United States Supreme Court has long recognized that the state where an injury occurs, the state where an employment relationship is created, and the state where an injured employee resides all have the significant contacts necessary *to justify application of their own workers' compensation laws*. [Citations.]  Each such state may apply its law without offending the full faith and credit clause, even if another state purports to provide an exclusive remedy. ... [¶] ... *Thus, the California Workers' Compensation Act applies to a worker employed in another state who is injured while working in California*." (43 Cal.App.4th at pp. 726-727 (emphasis added); accord: *Tucci v. Club Mediterranee* (2001) 89 Cal.App.4th 180, 190-191 [66 Cal.Comp.Cases 605].)

Nevertheless, *Dailey* went on to state:

> "There is, however, an exception.  California law does not apply to a foreign worker if the worker is covered by insurance from the other state, the extraterritorial provisions of California law are recognized by the other state, and California workers and employers are exempted from the other state's workers' compensation laws. (Lab. Code, § 3600.5, subd. (b).)" (*Id.* at p. 727.)

Thus, *Dailey* recognized that California does *not* exercise subject matter jurisdiction where the criteria of section 3600.5(b) are met, but where "[t]here is no evidence that [the employee and the] employer were exempt under Labor Code section 3600.5, subdivision (b)" then the California Workers' Compensation Act applies. (*Id.* at p. 727.)  We agree with, and are bound by, this statement of the law.  However, as discussed in this opinion and even more extensively discussed in our February 8, 2012 opinion, the section 3600.5(b) criteria for making Ohio law the exclusive remedy for applicant have been established here.

**B.  Applicant's Payment of California Income Taxes on Games Played Here Does Not Furnish a Basis for Subject Matter Jurisdiction**

As discussed in our prior opinion, nonresident professional athletes pay California income taxes for games played here based on a "duty day" formula. (See *Wilson v. Franchise Tax Bd.* (1993) 20 Cal.App.4th 1441, 1447.)  Applicant raises various legal and public policy arguments as to why a professional athlete's payment of such taxes should furnish a basis for subject matter jurisdiction if playing here caused or contributed to the athlete's injury.  Applicant's arguments are unavailing.[8]

---

[8]    Moreover, we once again reject applicant's citation to legal authorities as inapposite.

Applicant cites to *Washington Wizards v. Workers' Comp. Appeals Bd.* (*Roundfield*) (2006) 71 Cal.Comp.Cases 897 (writ den.) for the proposition that a professional athlete's payment of income taxes on earnings for games played in California is a basis for subject matter jurisdiction.  However, the appellate determination in that case was merely to dismiss the Wizards' petition for writ of review as untimely.  Moreover, in the underlying case (*Roundfield v. Washington Wizards* (2006) 2006 Cal. Wrk. Comp. P.D. LEXIS 26 (Appeals Board panel decision), it was found that applicant's payment of taxes on his California earnings "established that there were substantial contacts with the state of California which justifies [sic] the imposition of California *personal jurisdiction* with reference to all of the defendant employers." (*Id.* at pp. *10-*11 (emphasis added).)  However, "[s]*ubject matter jurisdiction* [was] established [because] the applicant experienced portions of his continuous trauma injury within the state of California." (*Id.* at p. *9 (emphasis added).)

Applicant's petition also cites to some non-California cases in which an employee's payment of income taxes in a State constituted "sufficient contacts" to warrant a workers' compensation claim in that State.  However, minimum contacts is an issue of *personal* jurisdiction, not *subject matter* jurisdiction.

**BOOKER, Vaughn                                                11**

The nature and extent of the WCAB's subject matter jurisdiction is established by the Legislature by statute.   Section 3600.5(b) sets out the criteria for subject matter jurisdiction over an employee injured while temporarily employed in California.  The employee's payment of California income taxes is not one of them.  Applicant's public policy argument must be made to the Legislature.

**C.  Even If We Were to Assume that Subject Matter Jurisdiction Under Section 3600.5(b) Might Be Proper, We Would Not Exercise that Jurisdiction Here Because of the Parties' Forum Selection Clause**

When a judicial body has jurisdiction over a case, it ordinarily must exercise that jurisdiction by hearing and determining the case on its merits. (2 Witkin, *Cal. Procedure* (5th ed. 2008), Jurisdiction, § 354;[9] see also *Gering v. Superior Court* (1951) 37 Cal.2d 29, 31-32 ("[It is] the basic duty of a court to consider and determine on the merits, all causes of action properly before it and of which it has jurisdiction"); *Robinson v. Superior Court* (1950) 35 Cal.2d 379, 383 ("The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction").)  There are, however, exceptions to the general rule that a judicial body cannot refuse to assume jurisdiction.   One such exception is where there is a forum selection clause in a contract between the parties.

"[T]he parties may not *deprive* courts of their jurisdiction over causes by private agreement [citation], ... [however,] courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum. ... [¶] ... [F]orum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495 (italics in original); see also, e.g., *Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 153-154.)   The burden of proof [of the unreasonableness of the forum selection clause] is on the plaintiff." (*Trident Labs, Inc., supra,* 200 Cal.App.4th at p. 154; see also, e.g., *Aral v. EarthLink, Inc.* (2005) 134 Cal.App.4th 544, 561 ("both the California Supreme Court and the

---

[9]   This citation to Witkin is from the on-line version and, therefore, does not have a point page citation.

**BOOKER, Vaughn**                                    12

United States Supreme Court place a heavy burden on the plaintiff who seeks to prove that a forum selection clause is unreasonable").)

Here, as discussed above, the Contract between applicant and the Bengals contained an addendum that stated, in pertinent part, "Player ... agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability, or enforceability of this addendum, *shall be brought solely and exclusively with the courts of Ohio, the Industrial Commission of Ohio, or such other Ohio tribunal that has jurisdiction over the matter.*" (Emphasis added.)  This contractual clause clearly designates Ohio as the forum state agreed to by the parties.  Applicant has not shown that enforcement of this forum selection clause would be unreasonable.  This was not an adhesion contract effectively forced on an employee with no bargaining power.  The Contract reflects that applicant was represented by a "certified agent," that he was to receive a multi-million dollar signing bonus, and that for the years in question (2000, 2001, and 2002) his yearly salary was $1,000,000 or more.  Moreover, the contractual agreement to an Ohio forum was reasonable in light of the facts that the Bengals were (and are) based there and applicant played half of his games there.[10]  In addition, applicant has identified no connection to California other than the single game he played here in 2001 (and the income taxes he paid on his earnings from that game).  He has not shown that there are any relevant or necessary witnesses here.  In light of this, allowing applicant's claim to proceed to trial in this state would be contrary to California's interest in "avoidance of overburdening local courts with congested calendars ... [in] cases in which the local community has little concern." (*Strangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 (discussing "public interest" portion of forum non conveniens analysis [see fn. 11, *infra*]).)

Applicant's concern that the statute of limitations may have run in Ohio does not persuade us that the forum selection clause of the Contract should not be enforced.  A statute of limitations bar is a

---

[10]  Although not determinative, the record also shows that applicant was born in Cincinnati, went to high school in Cincinnati, went to the University of Cincinnati, and that he chose to play for the Bengals because it was his dream to play for the home team and his wife wanted to go home.  Therefore, it is at least implicit that applicant lived in or near Cincinnati while he played for the Bengals.

**BOOKER, Vaughn**                                   13

1  relevant consideration when considering whether to decline jurisdiction under forum non conveniens.[11]

2  However, "the factors involved in traditional forum non conveniens analysis do not control" in

3  determining whether a forum selection clause should be enforced (*Trident Labs, Inc.*, *supra*, 200

4  Cal.App.4th at p. 154) at least where the clause is stated in mandatory language (*Intershop*

5  *Communications v. Superior Court* (2002) 104 Cal.App.4th 191, 196). Here, applicant cannot avoid the

6  fact that the contract he signed clearly stated that Ohio "shall" have exclusive jurisdiction over any

7  workers' compensation claim he might make.

8       We are, of course, mindful that an injured employee cannot, by contract, waive his or her right to

9  workers' compensation benefits or exempt the employer from liability for them. (Lab. Code, §§ 5000,

10  2804.) However, a forum selection clause neither waives the right to California benefits nor exempts the

11  employer from liability for them. (Cf. *Intershop Communications v. Superior Court* (2002) 104

12  Cal.App.4th 191, 200-201 (holding that Lab. Code, § 219, which provides that "no provision of this

13  article [regarding the payment of wages] can in any way be contravened or set aside by a private

14  agreement, whether written, oral, or implied," was not violated by enforcement of a forum selection

15  clause).)

16       Therefore, in light of the forum selection clause in applicant's Contract with the Bengals, we

17  would decline to exercise jurisdiction under section 3600.5(b), even if arguably we would otherwise

18  have jurisdiction.

19  ///

20  ///

21  ///

22  ///

23

24

---

[11]     Forum non-conveniences is an equitable doctrine (now codified at Code Civ. Proc., § 410.30(a)) which allows a court
25  "to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be
appropriately and justly tried elsewhere." (*Stangvik, supra*, at p. 751.) "In determining whether to grant a motion based on
26  forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next
step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in
California." (*Id.*) A forum is suitable if there is jurisdiction *and no statute of limitations bar* to hearing the case on the merits.
27  (*Id.* at p. 752; see also, e.g., *Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 472.)

**BOOKER, Vaughn**                                        14

1    Because we would decline jurisdiction based on the forum selection clause of the Contract, we

2    need not reach the question of whether we might also decline jurisdiction based on forum non

3    conveniens. (See fn. 11, *supra*.)[12]

4    ///

5    ///

6    ///

7    ///

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25   [12]   As discussed in footnote 11, the first step in a forum non conveniens analysis is whether the alternate forum is a "suitable" place for trial (*Stangvik, supra,* at p. 751) and an alternate forum is not "suitable" if there is a statute of limitations

26   bar to hearing the case on the merits. (*Id.* at p. 752; see also, e.g., *Animal Film, supra,* 193 Cal.App.4th at p. 472.) Applicant's Petition for Reconsideration alleges that his workers' compensation claim in Ohio is barred by the statute of limitations (Petition, at 8:1-8:4 &14:3-14:5), an allegation that is arguably conceded in defendant's Answer to Petition for

27   Reconsideration (Answer, at 7:26-8:2). Applicant, however, makes no citation to the record to support this allegation. (Cal. Code Regs., tit. 8, § 10842(b).)

**BOOKER, Vaughn**                              15

For the foregoing reasons,

**IT IS ORDERED** that applicant's Petition for Reconsideration is **DENIED**.

**WORKERS' COMPENSATION APPEALS BOARD**

DEPUTY

NEIL P. SULLIVAN

I CONCUR,

DEIDRA E. LOWE

FRANK M. BRASS

**DATED AND FILED AT SAN FRANCISCO, CALIFORNIA**

MAY 0 1 2012

**SERVICE MADE ON THE ABOVE DATE ON THE PERSONS LISTED BELOW AT THEIR ADDRESSES SHOWN ON THE CURRENT OFFICIAL ADDRESS RECORD.**

**CINCINNATI BENGALS**
**LISTER MARTIN**
**NAMANNY BYRNE & OWENS**
**PETERSON COLANTONI COLLINS & DAVIS**
**SEYFARTH & SHAW**
**SHAW JACOBSMEYER CRAIN & CLAFFEY**
**TOBIN LUCKS**
**TRAVELERS**
**VAUGHN BOOKER**

MAY 0 3 2012

*NPS/bea*

BOOKER, Vaughn                    16