# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

------------------------------------------------------------

|  |  |
|---|---|
| THE CINCINNATI BENGALS, INC., | ) Case No. 1:09−cv−00738−SSB−KLL |
| Plaintiffs, | ) Hon. Sandra S. Beckwith |
| v. | ) Hon. Karen L. Litkovitz |

)

KHALID ABDULLAH, SAM ADAMS, MARCO
BATTAGLIA, RASHAD BAUMAN, ROGERS
BECKETT, VAUGHN BOOKER, DUANE
CLEMONS, RON DUGANS, DAVID DUNN,
CHRIS EDMONDS, OLIVER GIBSON, DAMON
GRIFFIN, KEVIN HARDY, RODNEY HEATH,
NICK LUCHEY, TREMAIN MACK,
TIMOTHY MCGEE, TONY MCGEE, REGGIE
MYLES, HANNIBAL NAVIES, SCOTT
REHBERG, ADRIAN ROSS, TROY
SADOWSKI, DARNAY SCOTT, KABISA
AKILI SMITH, ARMEGIS SPEARMAN, GLEN
STEELE, DENNIS WEATHERSBY, RICHMOND
WEBB, BERNARD WHITTINGTON, DARRYL
WILLIAMS, and REINARD WILSON

Defendants.

-------------------------------------------------------

THE CINCINNATI BENGALS, INC. and THE
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

Case No. 1:12−cv−00377−SSB

Hon. Sandra S. Beckwith

Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION, WILLIE
ANDERSON, MICHAEL BANKSTON, RASHAD
BAUMAN, MYRON BELL, KENNETH
BLACKMAN, VAUGHN BOOKER, ANTHONY
BROWN, JEFF BURRIS, CHRIS CARTER,
ANTONIO CHATMAN, ANDRE COLLINS,

1

JOHN COPELAND, COREY DILLON, DAMON          )
GRIFFIN, JAMES GUTIERREZ, GLENN HOLT,       )
TORY JAMES, LANDON JOHNSON, RIALL           )
JOHNSON, RUDI JOHNSON, RODERICK             )
JONES, JEVON LANGFORD, ROY MANNING,         )
LARRY MOORE, TIMOTHY MORABITO,              )
MICHAEL MYERS, MATT O'DWYER,                )
DELTHA O'NEAL, JOSEPH "BO" ORLANDO,         )
CARL PICKENS, CARL POWELL, COREY            )
SAWYER, GREGORY SCOTT, BRETT                )
WALLERSTEDT, PETER WARRICK, and             )
KENNY WATSON,                               )
                                            )
                  Defendants.               )
                                            )
----------------------------------------------------

## ANSWER AND MOTION

Defendants National Football League Players Association ("NFLPA"), Khalid Abdullah,

Willie Anderson, Michael Bankston, Marco Battaglia, Rashad Bauman, Rogers Beckett,

Myron Bell, Ken Blackman, Vaughn Booker, Anthony Brown, Jeff Burris, Chris Carter,

Antonio Chatman, Duane Clemons, Andre Collins, John Copeland, Corey Dillon, Ron

Dugans, David Dunn, Chris Edmonds, Oliver Gibson, Damon Griffin, James Gutierrez,

Kevin Hardy, Rodney Heath, Glenn Holt, Tory James, Landon Johnson, Riall Johnson, Rudi

Johnson, Roderick Jones, Jevon Langford, Nick Luchey, Tremain Mack, Roy Manning,

Timothy McGee, Tony McGee, Larry Moore, Tim Morabito, Michael Myers, Reggie Myles,

Hannibal Navies, Matt O'Dwyer, Deltha O'Neal, Joseph "Bo" Orlando, Carl Pickens, Carl

Powell, Scott Rehberg, Adrian Ross, Darnay Scott, Greg Scott, Troy Sadowski, Corey

Sawyer, Akili Kabisa Smith, Armegis Spearman, Glen Steele, Brett Wallerstedt, Peter

Warrick, Kenny Watson, Dennis Weathersby, Richmond Webb, Bernard Whittington,

Darryl Williams, and Reinard Wilson (the "Players") (collectively, "Defendants") hereby

answer the Cincinnati Bengals, Inc. (the "Bengals") and National Football League Management Council's ("NFLMC") (collectively, "Plaintiffs") Civil Action Complaint ("Complaint").   In addition, Defendants move to vacate the arbitral award.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 185(c).

ANSWER:      Paragraph 1 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants: (a) admit that this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331; and (b) admit that this Court has jurisdiction under 29 U.S.C. § 185 as to claims that accrued under the now-expired Collective Bargaining Agreement between the NFLMC and the NFLPA.

2.      Venue is proper in this District pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1391.

ANSWER:      Paragraph 2 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants: (a) admit that venue in this District is proper pursuant to 28 U.S.C. § 1391; and (b) admit that venue is proper in this District under 29 U.S.C. § 185 as to claims that accrued under the now-expired Collective Bargaining Agreement between the NFLMC and the NFLPA.

## PARTIES

3.      Cincinnati Bengals, Inc. ("Bengals") is one of the member clubs of the National Football League ("NFL") with its principal place of business in Cincinnati, Ohio.

ANSWER:    Paragraph 3 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants deny the allegations, except admit that the Bengals is a member club of the National Football League ("NFL").

4.    The National Football League Management Council ("NFL Management Council") is the sole and exclusive bargaining representative of present and future employer member clubs of the NFL.

ANSWER:    Defendants admit the allegations in Paragraph 4 of the Complaint.

5.    Khalid Abdullah, Willie Anderson, Michael Bankston, Marco Battaglia, Rashad Bauman, Rogers Beckett, Myron Bell, Ken Blackman, Vaughn Booker, Anthony Brown, Jeff Burris, Chris Carter, Antonio Chatman, Duane Clemons, Andre Collins, John Copeland, Corey Dillon, Ron Dugans, David Dunn, Chris Edmonds, Oliver Gibson, Damon Griffin, James Gutierrez, Kevin Hardy, Rodney Heath, Glenn Holt, Tory James, Landon Johnson, Riall Johnson, Rudi Johnson, Roderick Jones, Jevon Langford, Nick Luchey, Tremain Mack, Roy Manning, Timothy McGee, Tony McGee, Larry Moore, Tim Morabito, Michael Myers, Reggie Myles, Hannibal Navies, Matt O'Dwyer, Deltha O'Neal, Joseph "Bo" Orlando, Carl Pickens, Carl Powell, Scott Rehberg, Adrian Ross, Darnay Scott, Greg Scott, Troy Sadowski, Corey Sawyer, Akili Kabisa Smith, Armegis Spearman, Glen Steele, Brett Wallerstedt, Peter Warrick, Kenny Watson, Dennis Weathersby, Richmond Webb, Bernard Whittington, Darryl Williams, Reinard Wilson, collectively,

"the Players," are professional football players who were employed by the Bengals in Cincinnati, Ohio.

ANSWER:     Defendants deny the allegations in Paragraph 5 of the Complaint, except admit that the Players were professional football players who were employed by the Bengals.

6.     The National Football League Players Association ("NFLPA") is the exclusive bargaining representative of all NFL players. The NFLPA regularly represents players employed in the Southern District of Ohio, and some of its members reside in this judicial district.

ANSWER:     Defendants admit the allegations in Paragraph 6 of the Complaint.

## FACTS

7.     The parties are bound by a Collective Bargaining Agreement ("CBA") negotiated between the NFL Management Council (on behalf of the NFL member clubs, including the Bengals) and the NFLPA (on behalf of all NFL players, including the Players at issue here).  Relevant portions of the 2006-2012 CBA are attached hereto as Exhibit A.

ANSWER:     Defendants deny the allegations in Paragraph 7, except admit that the now expired Collective Bargaining Agreement ("CBA") was negotiated between the NFLMC, on behalf of the NFL member clubs, including the Bengals, and the NFLPA, on behalf of all NFL players, including the Players.

8.     The CBA contains an arbitration provision that mandates that all disputes between the parties involving the interpretation of, application of, or compliance with the

CBA or the NFL Player Contract be submitted to final and binding arbitration before a mutually selected arbitrator. Ex. A at 23-27.

ANSWER: To the extent the allegations in Paragraph 8 of the Complaint purport to refer to written documents, those materials speak for themselves. If any response to these allegations is required, Defendants deny the allegations in Paragraph 8 of the Complaint and refer the Court to the documents referenced in Paragraph 8 for a full and accurate rendition of their contents.

9. All NFL Players employed by a member club must enter into an NFL Player Contract, which is incorporated in and governed by Article XIV and Appendix C of the CBA. *See id.* at 40-44, 248-56.

ANSWER: To the extent the allegations in Paragraph 9 of the Complaint purport to refer to written documents, those materials speak for themselves. If any response to these allegations is required, Defendants deny the allegations in Paragraph 9 of the Complaint and refer the Court to the documents referenced in Paragraph 9 for a full and accurate rendition of their contents.

10. The Players all entered into an NFL Player Contract with the Bengals setting forth the terms of their employment. The Players' contracts with the Bengals contained an arbitration provision requiring "any dispute" between the Players and the Bengals "involving the interpretation or application of any provision" of their contracts to "be submitted to final and binding arbitration" in accordance with the procedure set forth in the CBA. *Id.* at App. C, ¶ 19.

<u>ANSWER</u>:     To the extent the allegations in Paragraph 10 of the Complaint purport to refer to written documents, those materials speak for themselves.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 10 of the Complaint and refer the Court to the documents referenced in Paragraph 10 for a full and accurate rendition of their contents.

11.     Each contract provided that the contract was "made under and shall be governed by the laws of the State of Ohio."  The contracts also contained a clause governing the resolution of disputes concerning workers' compensation claims, which stated:

> As a material inducement for the Club to employ Player's services, Player Promises and agrees that any workers' compensation claim, dispute, or cause of action arising out of Player's employment with the Club shall be subject to the workers' compensation laws of Ohio exclusively and not the workers' compensation laws of any other state. Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability or enforceability of this addendum, shall be brought solely and exclusively with the courts of Ohio, the Industrial Commission of Ohio, or such other Ohio tribunal that has jurisdiction over the matter.[1]

<u>ANSWER</u>:     To the extent the allegations in Paragraph 11 of the Complaint purport to refer to written documents, those materials speak for themselves.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 11 of the Complaint and

---

[1] This clause, or a substantively identical clause, is contained in all of the Bengals Players' contracts.

refer the Court to the documents referenced in Paragraph 11 for a full and accurate rendition of their contents.

     12.    At various times between 2007 and 2012, the Players all filed claims for workers' compensation benefits with the California Workers' Compensation Appeals Board ("WCAB") seeking benefits under the California Workers' Compensation Act.

ANSWER:   Paragraph 12 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations in required, Defendants admit the allegations in Paragraph 12 of the Complaint.

     13.    The Bengals and the NFLMC filed grievances against the Players pursuant to the CBA claiming that the Players had breached their contracts by filing claims for California workers' compensation benefits.  The NFLPA denied the grievances.

ANSWER:   Paragraph 13 of the Complaint states legal conclusions to which no response is required.  To the extent the allegations in Paragraph 13 of the Complaint purport to refer to written documents, those materials speak for themselves.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 13 of the Complaint and refer the Court to the documents referenced in Paragraph 13 for a full and accurate rendition of their contents.

     14.    The parties agreed to proceed with arbitration without a hearing and instead provided Arbitrator Michael Beck with a stipulated record and briefs.  All parties were represented by counsel.

ANSWER:   Defendants admit the allegations in Paragraph 14 of the Complaint.

15.    On May 4, 2012, Arbitrator Beck issued a written final award sustaining the grievances ("Award").  A copy of the Award is attached as Exhibit B.

ANSWER:    Defendants admit the allegations in Paragraph 15 of the Complaint.

16.    In relevant part, the Award states that the Players "violated their individual NFL Player Contracts by filing and processing claims for workers compensation benefits in California … therefore, it is ordered that the above named Players cease and desist from the pursuit of workers' compensation benefits in the State of California through the withdrawal of their claims before the applicable tribunal. If the Players are to pursue workers compensation claims, they are ordered to do so pursuant to the language set forth in their individual NFL Player Contracts." Ex. B at 12-13.

ANSWER:    Defendants admit the allegations in Paragraph 16 of the Complaint accurately quote the Award.  Defendants deny that the quotation is the only "relevant part."

17.    Under Article IX, Section 8 of the CBA, the Award constitutes the "full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement …."  Ex. A at 26.

ANSWER:    Paragraph 18 of the Complaint states legal conclusions to which no response is required, or purports to quote the contents of written documents that speak for themselves.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 18 of the Complaint and refer the Court to the documents referenced in Paragraph 18 for a full and accurate rendition of their contents.

18.     To date, the Players' claims seeking workers' compensation benefits under California law remain pending before the WCAB.

ANSWER:     Paragraph 19 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants admit the allegations in Paragraph 19 of the Complaint.

## COUNT I – CONFIRMATION OF ARBITRATION AWARD

19.     Plaintiffs repeat and reallege Paragraphs 1-19 as if set forth fully herein.

ANSWER:     Defendants repeat and incorporate by reference their response to Paragraphs 1-19 as their response to Paragraph 1 of the Complaint.

20.     Plaintiffs seek to confirm and enforce the Award.  The Award draws its essence from the parties' agreements, as the Arbitrator interpreted the terms of the CBA and the Players' contracts and looked to and applied binding NFL arbitration precedent comprising the parties' "law of the shop."

ANSWER:     Paragraph 20 of the Complaint states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 20 of the Complaint, except admit that Plaintiffs seek to confirm and enforce the Award.

21.     Plaintiffs are entitled to confirmation and enforcement of the Award and entry of judgment in conformity with the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185.

ANSWER:     Paragraph 21 states legal conclusions to which no response is required.  If any response to these allegations is required, Defendants deny the allegations in Paragraph 21 of the Complaint.

## AFFIRMATIVE DEFENSES

For their affirmative defenses to Plaintiffs' Complaint, Defendants state as follows:

1.     The Award must be vacated as contrary to public policy.

2.     The Award must be vacated as contrary to federal labor law.

3.     The Award must be vacated because it violates the Full Faith and Credit Clause of the U.S. Constitution.

4.     The Complaint fails to state a claim upon which relief can be granted.

## DEFENDANTS' MOTION TO VACATE THE AWARD

Pursuant to Section 6 of the FAA and Section 301 of the LMRA, the Defendants hereby move to vacate the Award issued by Arbitrator Beck on May 4, 2012.  In support of their motion, the Defendants state as follows:

## NATURE OF THE PROCEEDING

1.     The Defendants seek to vacate the Arbitration Award (the "Award") issued by NFL System Arbitrator Michael H. Beck ("Arbitrator Beck") on May 4, 2012 in the arbitration captioned *In the Matter of the Arbitration between The National Football League Management Council on behalf of The Cincinnati Bengals and Khalid Abdullah, et al and The National Football League Players Association*.  A true and correct copy of the Award is attached hereto as Exh. A.

2.      The Award holds that Abdullah, Anderson, Bankston, Battaglia, Bauman, Beckett, Bell, Blackman, Booker, Brown, Burris, Carter, Chatman, Clemons, Collins, Copeland, Dillon, Dugans, Dunn, Edmonds, Gibson, Griffin, Gutierrez, Hardy, Heath, Holt, James, L. Johnson, Riall Johnson, Rudy Johnson, Jones, Langford, Luchey, Mack, Manning, Timothy McGee, Tony McGee, Moore, Morabito, Myers, Myles, Navies, O'Dwyer, O'Neal, "Bo" Orlando, Pickens, Powell, Rehberg, Ross, Scott, Sadowski, Sawyer, Smith, Spearman, Steele, Wallerstedt, Warrick, Watson, Weathersby, Webb, Whittington, Williams, and Wilson, former NFL players, waived their statutory right to seek to obtain workers' compensation benefits under California's workers' compensation statute and waived their right to file for workers' compensation benefits in California.  The Award requires the Players to cease and desist from arguing, in California's workers' compensation courts, that they are entitled to benefits under California law pursuant to California's workers' compensation statutes.  Under the Award, the Players must withdraw their claims in California.  *See* Exh. A, at 12-13.[2]

3.      The Award must be vacated because it is contrary to public policy.  *See Shelby County Health Care Corp. v. Am. Fed'n of State, County and Mun. Employees, Local 1733*, 967 F.2d 1091, 1095 (6th Cir. 2002) ("A court may refuse to enforce an arbitration award that violates public policy."); *see also Sarofim v. Trust Co. of the West*, 440 F.3d 213, 219 (5th Cir. 2006) ("A court may refuse to enforce an arbitration award that is contrary to public policy") (citation omitted); *Delta Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 670-71 (11th Cir. 1988) ("Federal court may refuse to enforce arbitrator's award where award is based on interpretation of collective bargaining agreement that is against clearly established public

---

[2] The Bengals voluntarily dismissed Darnay Scott on June 28, 2012.  *See* Dkt. 57.

policy"); *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 388-89 (4th Cir. 2000); *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284, 1286 (9th Cir. 1982); *Cal. Pac. Med. Center v. Serv. Emp. Int'l Union*, No. C 06 4685 SC, 2007 WL 81906, at *6-7 (N.D. Cal. Jan. 9, 2007), *aff'd*, 300 F. App'x 471, 473-74 (9th Cir. 2008); *Nat'l Football League Players Ass'n v. Pro-Football*, 857 F. Supp. 71, 76 (D.D.C. 1994). Indeed, during oral argument before the Ninth Circuit Court of Appeals, the NFLMC recently conceded that a provision in an NFL player's contract that uses a choice-of-law clause, such as the one at issue here, constitutes an impermissible waiver of the players' right to seek workers' compensation benefits and violates California's public policy if the player claims to have sustained a catastrophic injury in California.  Oral Argument at 23:00-43, *Matthews v. Nat'l Football League Mgmt. Council*, No. 11-55186 (9th Cir. May 11, 2012), *available at* http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000009167.  The exact same conclusion must apply as long as the player is seeking workers' compensation benefits for any type of injury, sustained in whole or in part in California, because a waiver is waiver, no matter what type of injury is involved.

4.     The contractual provision underlying the Award attempts to deprive Bengals players of their right to seek workers' compensation benefits under the laws of any states other than Ohio.  The provision contravenes the public policies of not only California, but of the many sovereign states that grant a non-waivable right to workers' compensation benefits to all employees who have performed services in, and are suffering from injuries sustained at least in part in, those states.  The provision also violates the public policy of Ohio, under which contractual provisions of this kind are void and unenforceable.

5.     The Award, which conflicts with public policy and controlling Supreme Court authority, is not entitled to any deference by this Court and should be set aside.  *See, e.g., United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987); *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983).

6.     The public policy that the arbitral award violates is well-established in the case law:  the interests of a state in providing workers' compensation benefits to employees injured in whole or in part within the state cannot be waived or limited by a private agreement, including a choice-of-law or choice-of-forum clause.  Employers in various industries have attempted for many decades to use such provisions to restrict their liability for workers' compensation benefits, but courts have repeatedly rejected these attempts as inconsistent with and contrary to the law and public policy of those states, which have determined to extend their workers' compensation protection to all employees injured within their states.[3]  Indeed, most states, including Ohio, have passed a law making it impossible for employees to waive their workers' compensation protections by private contract, declaring any such waivers to be void.  These laws represent a fundamental public policy, which cannot be rendered null through an arbitral award, any more than an award could negate a state's policy to impose minimum wage or worker safety laws which similarly cannot be waived.  Ohio law anticipates that persons employed in Ohio may also seek workers' compensation benefits in other states with which they have a connection (as is the case here), and provides that choice-of-law clauses may not limit the ability to seek workers'

---

[3] *See, e.g., Pro-Football, Inc. v. Tupa*, 14 A.3d 678, 685-86 (Md. Ct. Spec. App. 2011); *Newson v. Miami Dolphins, Ltd.*, No. 3372166, ¶¶ 14- 15 (Pa. WCOA 2010); *Hartford Acc. & Indem. Co. v. Welker*, 44 S.E. 2d 160, 163 (Ga. Ct. App. 1947); *Gotkin v. Weinberg*, 66 A.2d 438, 439 (N.J. 1949); *Giltner v. Commodore Contract Carriers*, 513 P.2d 541, 543 (Or. Ct. App. 1973); *Jenkins v. Sal Chem. Co.*, 280 S.E. 2d 243, 244 (W. Va. 1981).

compensation benefits under Georgia law.  Enforcing the award would thus violate not only the public policy of other states, but the public policy of Ohio as well.  In sum, the award before this Court violates public policy and Supreme Court precedent that a private employment contract may not override the right of a state to set minimum labor standards within its borders.  For this reason, no deference should be applied and the Court should issue a judgment setting aside the award.

## PARTIES

7.    Khalid Abdullah was a professional football player and member of the NFLPA. Abdullah was employed by the Bengals between 2003 and 2004.

8.    Willie Anderson was a professional football player and member of the NFLPA. Anderson was employed by the Bengals between 1996 and 2007.

9.    Michael Bankston was a professional football player and member of the NFLPA. Bankston was employed by the Bengals between 1998 and 2000.

10.    Marco Battaglia was a professional football player and member of the NFLPA. Battaglia was employed by the Bengals between 1996 and 2001.

11.     Rashad Bauman was a professional football player and member of the NFLPA. Bauman was employed by the Bengals between 2004 and 2006.

12.    Rogers Beckett was a professional football player and member of the NFLPA. Beckett was employed by the Bengals between 2003 and 2004.

13.    Myron Bell was a professional football player and member of the NFLPA.  Bell was employed by the Bengals in 1998.

14.     Ken Blackman was a professional football player and member of the NFLPA. Blackman was employed by the Bengals between 1996 and 1999.

15.     Vaughn Booker was a professional football player and member of the NFLPA. Booker was employed by the Bengals between 2000 and 2002.

16.     Anthony Brown was a professional football player and member of the NFLPA. Brown was employed by the Bengals between 1995 and 1998.

17.     Jeff Burris was a professional football player and member of the NFLPA.  Burris was employed by the Bengals between 2002 and 2003.

18.     Chris Carter was a professional football player and member of the NFLPA. Carter was employed by the Bengals between 2000 and 2001.

19.     Antonio Chatman was a professional football player and member of the NFLPA. Chatman was employed by the Bengals between 2006 and 2008.

20.     Duane Clemons was a professional football player and member of the NFLPA. Clemons was employed by the Bengals between 2003 and 2005.

21.     Andre Collins was a professional football player and member of the NFLPA. Collins was employed by the Bengals between 1995 and 1997.

22.     John Copeland was a professional football player and member of the NFLPA. Copland was employed by the Bengals between 1993 and 2001.

23.     Corey Dillon was a professional football player and member of the NFLPA. Dillon was employed by the Bengals between 1997 and 2003.

24.     Ron Dugans was a professional football player and member of the NFLPA. White was employed by the Bengals between 2004 and 2006.

25.     David Dunn was a professional football player and member of the NFLPA.  Dunn was employed by the Bengals between 1995 and 1998.

26.     Chris Edmonds was a professional football player and member of the NFLPA. Edmonds was employed by the Bengals between 2001 and 2003.

27.     Oliver Gibson was a professional football player and member of the NFLPA. Gibson was employed by the Bengals between 1999 and 2003.

28.     Damon Griffin was a professional football player and member of the NFLPA. Griffin was employed by the Bengals between 1999 and 2000.

29.     James Gutierrez was a professional football player and member of the NFLPA. Gutierrez was employed by the Bengals between 1996 and 2002.

30.     Kevin Hardy was a professional football player and member of the NFLPA. Hardy was employed by the Bengals between 2003 and 2004.

31.     Rodney Heath was a professional football player and member of the NFLPA. Heath was employed by the Bengals between 1999 and 2001.

32.     Glenn Holt was a professional football player and member of the NFLPA.  Holt was employed by the Bengals between 2006 and 2008.

33.     Tory James was a professional football player and member of the NFLPA.  James was employed by the Bengals between 2003 and 2006.

34.     Landon Johnson was a professional football player and member of the NFLPA. Johnson was employed by the Bengals between 2004 and 2007.

35.     Riall Johnson was a professional football player and member of the NFLPA. Johnson was employed by the Bengals between 2001 and 2003.

36. Rudi Johnson was a professional football player and member of the NFLPA. Johnson was employed by the Bengals between 2001 and 2007.

37. Roderick Jones was a professional football player and member of the NFLPA. Jones was employed by the Bengals between 1996 and 2000.

38. Jevon Langford was a professional football player and member of the NFLPA. Langford was employed by the Bengals between 1996 and 2001.

39. Nick Luchey was a professional football player and member of the NFLPA. Luchey was employed by the Bengals between 1999 and 2002.

40. Tremain Mack was a professional football player and member of the NFLPA. Mack was employed by the Bengals between 1997 and 2000.

41. Roy Manning was a professional football player and member of the NFLPA. Manning was employed by the Bengals in 2007.

42. Timothy McGee was a professional football player and member of the NFLPA. McGee was employed by the Bengals between 1986 and 1992 and between 1994 and 1995.

43. Tony McGee was a professional football player and member of the NFLPA. McGee was employed by the Bengals between 1993 and 2001.

44. Larry Moore was a professional football player and member of the NFLPA. Moore was employed by the Bengals between 2004 and 2005.

45. Tim Morabito was a professional football player and member of the NFLPA. Morabito was employed by the Bengals in 1996.

46. Michael Myers was a professional football player and member of the NFLPA. Myers was employed by the Bengals in 2007.

47.     Reggie Myles was a professional football player and member of the NFLPA. Myles was employed by the Bengals between 2002 and 2005.

48.     Hannibal Navies was a professional football player and member of the NFLPA. Navies was employed by the Bengals in 2005.

49.     Matt O'Dwyer was a professional football player and member of the NFLPA. O'Dwyer was employed by the Bengals between 1999 and 2003.

50.     Deltha O'Neal was a professional football player and member of the NFLPA. O'Neal was employed by the Bengals between 2004 and 2007.

51.     Joseph "Bo" Orlando was a professional football player and member of the NFLPA. Orlando was employed by the Bengals between 1996 and 1997.

52.     Carl Pickens was a professional football player and member of the NFLPA. Pickens was employed by the Bengals between 1992 and 1999.

53.     Carl Powell was a professional football player and member of the NFLPA. Powell was employed by the Bengals between 2003 and 2005.

54.     Scott Rehberg was a professional football player and member of the NFLPA. Rehberg was employed by the Bengals between 2000 and 2003.

55.     Adrian Ross was a professional football player and member of the NFLPA. Ross was employed by the Bengals between 1998 and 2003.

56.     Darnay Scott was a professional football player and member of the NFLPA. Scott was employed by the Bengals between 1994 and 2001.

57.     Greg Scott was a professional football player and member of the NFLPA. Scott was employed by the Bengals in 2004.

58. Troy Sadowski was a professional football player and member of the NFLPA. Sadowski was employed by the Bengals between 1994 and 1996.

59. Corey Sawyer was a professional football player and member of the NFLPA. Sawyer was employed by the Bengals between 1994 and 1998.

60. Akili Kabisa Smith was a professional football player and member of the NFLPA. Smith was employed by the Bengals between 1999 and 2002.

61. Armegis Spearman was a professional football player and member of the NFLPA. Spearman was employed by the Bengals between 2000 and 2002.

62. Glenn Steele was a professional football player and member of the NFLPA. Steele was employed by the Bengals between 1998 and 2003.

63. Brett Wallerstedt was a professional football player and member of the NFLPA. Wallerstedt was employed by the Bengals between 1994 and 1996.

64. Peter Warrick was a professional football player and member of the NFLPA. Warrick was employed by the Bengals between 2000 and 2004.

65. Kenny Watson was a professional football player and member of the NFLPA. Watson was employed by the Bengals between 2003 and 2008.

66. Dennis Weathersby was a professional football player and member of the NFLPA. Weathersby was employed by the Bengals between 2003 and 2004.

67. Richmond Webb was a professional football player and member of the NFLPA. Webb was employed by the Bengals between 2001 and 2002.

68. Bernard Whittington was a professional football player and member of the NFLPA. Whittington was employed by the Bengals between 2001 and 2002.

69.     Darryl Williams was a professional football player and member of the NFLPA. Williams was employed by the Bengals between 1992 and 1995 and between 2000 and 2001.

70.     Reinard Wilson was a professional football player and member of the NFLPA. Wilson was employed by the Bengals between 1997 and 2002.

71.     Abdullah, Anderson, Bankston, Battaglia, Bauman,  Beckett, Bell, Blackman, Booker, Brown, Burris, Carter, Chatman, Clemons, Collins, Copeland, Dillon, Dugans, Dunn, Edmonds, Gibson, Griffin, Gutierrez, Hardy, Heath, Holt, James, L. Johnson, Riall Johnson, Rudy Johnson, Jones, Langford, Luchey, Mack, Manning, Timothy McGee, Tony McGee, Moore, Morabito, Myers, Myles, Navies, O'Dwyer, O'Neal, "Bo" Orlando, Pickens, Powell, Rehberg, Ross, D. Scott, G. Scott, Sadowski, Sawyer, Smith, Spearman, Steele, Wallerstedt, Warrick, Watson, Weathersby, Webb, Whittington, Williams, and Wilson filed workers' compensation claims before the WCAB in the State of California.

72.     Each Player was injured in California or incurred injuries which were sustained in part and aggravated in California.   California law specifically provides for workers' compensation benefits to be available to workers who have sustained either specific injuries or "cumulative" injuries in whole or in part in California.  Cal. Labor Code § 3208.1.  Each Player's injuries occurred during his course of employment as a professional football player, at least in part, while playing games in California.

## FACTUAL BACKGROUND

### *Agreements Governing NFL Players And NFL Teams*

73.     The parties were bound by a now expired collective bargaining agreement negotiated between the NFLMC, on behalf of the NFL teams, and the NFLPA, on behalf of all

NFL players. Article IX of the Expired CBA contains an arbitration provision that mandates that all disputes involving the enforcement or interpretation of the Expired CBA be submitted to final and binding arbitration before a mutually selected arbitrator. Pursuant to the arbitration provision, a "non-injury grievance" may be initiated by a player, a member team, the NFLMC or the NFLPA by filing a written notice to the opposing parties.

74. All NFL teams and players were bound by the standard player contract negotiated between the NFLPA on behalf of players and the NFLMC on behalf of teams ("NFL Player Contract"). The NFL Player Contract is contained within and is part of the Expired CBA. Paragraph 26.C of the Players' NFL Player Contracts constitute the purported choice-of-law/choice-of-forum provisions that Plaintiffs and the Arbitrator interpreted as effectively waiving the Players' right to seek to obtain workers' compensation benefits under California's workers' compensation statute and waiving their right to file for workers' compensation benefits in California.

### *Players' WCAB Cases and Plaintiffs' Arbitration*

#### Khalid Abdullah

75. On or around May 8, 2009, Abdullah filed an application for workers' compensation benefits before the WCAB in the state of California. Abdullah claims that his injuries were sustained at least in part while playing games in California.

76. On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Abdullah, pursuant to Article IX of the Expired CBA. The grievance claimed that Abdullah's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Willie Anderson**

77.     On or around August 1, 2011, Anderson filed an application for workers' compensation benefits before the WCAB in the state of California.  Anderson claims that his injuries were sustained at least in part while playing games in California.

78.     On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Anderson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Anderson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Michael Bankston**

79.     On or around May 11, 2010, Bankston filed an application for workers' compensation benefits before the WCAB in the state of California.  Bankston claims that his injuries were sustained at least in part while playing games in California.

80.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Bankston, pursuant to Article IX of the Expired CBA.  The grievance claimed that Bankston's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Marco Battaglia**

81.     On or around June 2, 2008, Battaglia filed an application for workers' compensation benefits before the WCAB in the state of California.  Batagglia claims that his injuries were sustained at least in part while playing games in California.

82.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Battaglia, pursuant to Article IX of the Expired CBA.  The grievance claimed that

Battaglia's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Rashad Bauman

83.     On or around August 29, 2008, Bauman filed an application for workers' compensation benefits before the WCAB in the state of California.  Bauman claims that his injuries were sustained at least in part while playing games in California.

84.     On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Bauman, pursuant to Article IX of the Expired CBA.  The grievance claimed that Bauman's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Rogers Beckett

85.     On or around July 18, 2008, Beckett filed an application for workers' compensation benefits before the WCAB in the state of California.  Beckett claims that his injuries were sustained at least in part while playing games in California.

86.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Beckett, pursuant to Article IX of the Expired CBA.  The grievance claimed that Beckett's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Myron Bell

87.     On or around August 27, 2009, Bell filed an application for workers' compensation benefits before the WCAB in the state of California.  Bell claims that his injuries were sustained at least in part while playing games in California.

88.     On or around October 20, 2011, the Bengals and the NFLMC amended the consolidated grievance by adding Bell.   The grievance claimed that Bell's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Ken Blackman

89.     On or around January 11, 2010, Blackman filed an application for workers' compensation benefits before the WCAB in the state of California.   Blackman claims that his injuries were sustained at least in part while playing games in California.

90.     On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Blackman, pursuant to Article IX of the Expired CBA.   The grievance claimed that Blackman's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Vaughn Booker

91.     On or around April 24, 2007, Booker filed an application for workers' compensation benefits before the WCAB in the state of California.   Booker claims that his injuries were sustained at least in part while playing games in California.

92.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Booker, pursuant to Article IX of the Expired CBA.   The grievance claimed that Booker's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Anthony Brown

93.     On or around August 3, 2011, Brown filed an application for workers' compensation benefits before the WCAB in the state of California. Brown claims that his injuries were sustained at least in part while playing games in California.

94.     On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Brown, pursuant to Article IX of the Expired CBA. The grievance claimed that Brown's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Jeff Burris

95.     On or around July 2, 2009, Burris filed an application for workers' compensation benefits before the WCAB in the state of California. Burris claims that his injuries were sustained at least in part while playing games in California.

96.     On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Burris, pursuant to Article IX of the Expired CBA. The grievance claimed that Burris's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Chris Carter

97.     On or around June 21, 2010, Carter filed an application for workers' compensation benefits before the WCAB in the state of California. Carter claims that his injuries were sustained at least in part while playing games in California.

98.     On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Carter, pursuant to Article IX of the Expired CBA. The grievance claimed that Booker's

application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Antonio Chatman

99.     On or around January 11, 2010, Chatman filed an application for workers' compensation benefits before the WCAB in the state of California.  Chatman claims that his injuries were sustained at least in part while playing games in California.

100.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Chatman, pursuant to Article IX of the Expired CBA.  The grievance claimed that Chatman's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Duane Clemons

101.    On or around June 25, 2007, Clemons filed an application for workers' compensation benefits before the WCAB in the state of California.  Clemons claims that his injuries were sustained at least in part while playing games in California.

102.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Clemons, pursuant to Article IX of the Expired CBA.  The grievance claimed that Clemons's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Andre Collins

103.    On or around June 24, 2009, Collins filed an application for workers' compensation benefits before the WCAB in the state of California.  Collins claims that his injuries were sustained at least in part while playing games in California.

104. On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Collins, pursuant to Article IX of the Expired CBA. The grievance claimed that Collins's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### John Copeland

105. On or around June 6, 2011, Copeland filed an application for workers' compensation benefits before the WCAB in the state of California. Copeland claims that his injuries were sustained at least in part while playing games in California.

106. On or around June 16, 2011, the Bengals and the NFLMC filed a grievance against Copeland, pursuant to Article IX of the Expired CBA. The grievance claimed that Copeland's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Corey Dillon

107. On or around November 30, 2009, Dillon filed an application for workers' compensation benefits before the WCAB in the state of California. Dillon claims that his injuries were sustained at least in part while playing games in California.

108. On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Dillon, pursuant to Article IX of the Expired CBA. The grievance claimed that Dillon's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Ron Dugans

109.    On or around December 20, 2007, Dugans filed an application for workers' compensation benefits before the WCAB in the state of California.  Dugans claims that his injuries were sustained at least in part while playing games in California.

110.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Dugans, pursuant to Article IX of the Expired CBA.  The grievance claimed that Dugans's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### David Dunn

111.    On or around August 10, 2006, Dunn filed an application for workers' compensation benefits before the WCAB in the state of California.  Dunn claims that his injuries were sustained at least in part while playing games in California.

112.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Dunn, pursuant to Article IX of the Expired CBA.  The grievance claimed that Dunn's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Chris Edmonds

113.    On or around May 15, 2007, Edmonds filed an application for workers' compensation benefits before the WCAB in the state of California.  Edmonds claims that his injuries were sustained at least in part while playing games in California.

114.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Edmonds, pursuant to Article IX of the Expired CBA.  The grievance claimed that

Edmonds's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Oliver Gibson

115.    On or around May 23, 2007, Gibson filed an application for workers' compensation benefits before the WCAB in the state of California.  Gibson claims that his injuries were sustained at least in part while playing games in California.

116.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Gibson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Gibson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Damon Griffin

117.    On or around December 16, 2008, Griffin filed an application for workers' compensation benefits before the WCAB in the state of California.  Griffin claims that his injuries were sustained at least in part while playing games in California.

118.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Griffin, pursuant to Article IX of the Expired CBA.  The grievance claimed that Griffin's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### James Gutierrez

119.    On or around April 2, 2010, Gutierrez filed an application for workers' compensation benefits before the WCAB in the state of California.  Gutierrez claims that his injuries were sustained at least in part while playing games in California.

120.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Gutierrez, pursuant to Article IX of the Expired CBA.  The grievance claimed that Gutierrez's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Kevin Hardy

121.    On or around December 1, 2008, Hardy filed an application for workers' compensation benefits before the WCAB in the state of California.  Hardy claims that his injuries were sustained at least in part while playing games in California.

122.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Hardy, pursuant to Article IX of the Expired CBA.  The grievance claimed that Hardy's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Rodney Heath

123.    On or around July 8, 2008, Heath filed an application for workers' compensation benefits before the WCAB in the state of California.  Heath claims that his injuries were sustained at least in part while playing games in California.

124.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Heath, pursuant to Article IX of the Expired CBA.  The grievance claimed that Heath's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Glenn Holt

125.    On or around December 29, 2011, Holt filed an application for workers' compensation benefits before the WCAB in the state of California.  Holt claims that his injuries were sustained at least in part while playing games in California.

126.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Holt, pursuant to Article IX of the Expired CBA.  The grievance claimed that Holt's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Tory James**

127.    On or around November 8, 2010, James filed an application for workers' compensation benefits before the WCAB in the state of California.  James claims that his injuries were sustained at least in part while playing games in California.

128.    On or around November 15, 2010, the Bengals and the NFLMC filed a grievance against James, pursuant to Article IX of the Expired CBA.  The grievance claimed that James's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Landon Johnson**

129.    On or around September 19, 2011, Johnson filed an application for workers' compensation benefits before the WCAB in the state of California.  Johnson claims that his injuries were sustained at least in part while playing games in California.

130.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Johnson, pursuant to Article IX of the Expired CBA.  The grievance claimed that

Johnson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Riall Johnson

131.    On or around July 6, 2011, Johnson filed an application for workers' compensation benefits before the WCAB in the state of California.  Johnson claims that his injuries were sustained at least in part while playing games in California.

132.    On or around July 15, 2011, the Bengals and the NFLMC filed a grievance against Johnson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Johnson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Rudi Johnson

133.    On or around December 13, 2010, Johnson filed an application for workers' compensation benefits before the WCAB in the state of California.  Johnson claims that his injuries were sustained at least in part while playing games in California.

134.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Johnson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Johnson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Roderick Jones

135.    On or around May 1, 2010, Jones filed an application for workers' compensation benefits before the WCAB in the state of California.  Jones claims that his injuries were sustained at least in part while playing games in California.

136.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Jones, pursuant to Article IX of the Expired CBA.  The grievance claimed that Jones's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Jevon Langford**

137.    On or around December 20, 2011, Langford filed an application for workers' compensation benefits before the WCAB in the state of California.  Langford claims that his injuries were sustained at least in part while playing games in California.

138.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Langford, pursuant to Article IX of the Expired CBA.  The grievance claimed that Langford's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Nick Luchey**

139.    On or around July 6, 2009, Luchey filed an application for workers' compensation benefits before the WCAB in the state of California.  Luchey claims that his injuries were sustained at least in part while playing games in California.

140.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Luchey, pursuant to Article IX of the Expired CBA.  The grievance claimed that Luchey's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Tremain Mack**

141.    On or around February 17, 2009, Mack filed an application for workers'
compensation benefits before the WCAB in the state of California.  Mack claims that his injuries
were sustained at least in part while playing games in California.

142.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance
against Mack, pursuant to Article IX of the Expired CBA.  The grievance claimed that Mack's
application for workers' compensation benefits in California violated the purported forum
selection clause in the NFL Player Contract.

### Roy Manning

143.    On or around October 21, 2010, Manning filed an application for workers'
compensation benefits before the WCAB in the state of California.  Manning claims that his
injuries were sustained at least in part while playing games in California.

144.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance
against Manning, pursuant to Article IX of the Expired CBA.  The grievance claimed that
Manning's application for workers' compensation benefits in California violated the purported
forum selection clause in the NFL Player Contract.

### Timothy McGee

145.    On or around March 27, 2009, McGee filed an application for workers'
compensation benefits before the WCAB in the state of California.  McGee claims that his
injuries were sustained at least in part while playing games in California.

146.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance
against McGee, pursuant to Article IX of the Expired CBA.  The grievance claimed that

McGee's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Tony McGee

147.    On or around February 29, 2008, McGee filed an application for workers' compensation benefits before the WCAB in the state of California.  McGee claims that his injuries were sustained at least in part while playing games in California.

148.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against McGee, pursuant to Article IX of the Expired CBA.  The grievance claimed that McGee's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Larry Moore

149.    On or around October 27, 2009, Moore filed an application for workers' compensation benefits before the WCAB in the state of California.  Moore claims that his injuries were sustained at least in part while playing games in California.

150.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Moore, pursuant to Article IX of the Expired CBA.  The grievance claimed that Moore's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Tim Morabito

151.    On or around September 13, 2011, Morabito filed an application for workers' compensation benefits before the WCAB in the state of California.  Morabito claims that his injuries were sustained at least in part while playing games in California.

152.     On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Morabito, pursuant to Article IX of the Expired CBA. The grievance claimed that Morabito's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Michael Myers**

153.     On or around October 1, 2009, Myers filed an application for workers' compensation benefits before the WCAB in the state of California. Myers claims that his injuries were sustained at least in part while playing games in California.

154.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Myers, pursuant to Article IX of the Expired CBA. The grievance claimed that Myers's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Reggie Myles**

155.     On or around February 17, 2009, Myles filed an application for workers' compensation benefits before the WCAB in the state of California. Myles claims that his injuries were sustained at least in part while playing games in California.

156.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Myles, pursuant to Article IX of the Expired CBA. The grievance claimed that Myles's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Hannibal Navies**

157.    On or around March 19, 2009, Navies filed an application for workers' compensation benefits before the WCAB in the state of California.  Navies claims that his injuries were sustained at least in part while playing games in California.

158.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Navies, pursuant to Article IX of the Expired CBA.  The grievance claimed that Navies's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Matt O'Dwyer**

159.    On or around January 5, 2012, O'Dwyer filed an application for workers' compensation benefits before the WCAB in the state of California.  O'Dwyer claims that his injuries were sustained at least in part while playing games in California.

160.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against O'Dwyer, pursuant to Article IX of the Expired CBA.  The grievance claimed that O'Dwyer's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Deltha O'Neal**

161.    On or around August 3, 2010, O'Neal filed an application for workers' compensation benefits before the WCAB in the state of California.  O'Neal claims that his injuries were sustained at least in part while playing games in California.

162.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against O'Neal, pursuant to Article IX of the Expired CBA.  The grievance claimed that

O'Neal's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Joseph "Bo" Orlando

163. On or around June 23, 2010, Orlando filed an application for workers' compensation benefits before the WCAB in the state of California. Orlando claims that his injuries were sustained at least in part while playing games in California.

164. On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Orlando, pursuant to Article IX of the Expired CBA. The grievance claimed that Orlando's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Carl Pickens

165. On or around April 14, 2010, Pickens filed an application for workers' compensation benefits before the WCAB in the state of California. Pickens claims that his injuries were sustained at least in part while playing games in California.

166. On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Pickens, pursuant to Article IX of the Expired CBA. The grievance claimed that Pickens's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Carl Powell

167. On or around January 6, 2011, Powell filed an application for workers' compensation benefits before the WCAB in the state of California. Powell claims that his injuries were sustained at least in part while playing games in California.

168.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Powell, pursuant to Article IX of the Expired CBA.  The grievance claimed that Powell's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Scott Rehberg**

169.    On or around April 16, 2009, Rehberg filed an application for workers' compensation benefits before the WCAB in the state of California.  Rehberg claims that his injuries were sustained at least in part while playing games in California.

170.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Rehberg, pursuant to Article IX of the Expired CBA.  The grievance claimed that Rehberg's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Adrian Ross**

171.    On or around December 11, 2006, Ross filed an application for workers' compensation benefits before the WCAB in the state of California.  Ross claims that his injuries were sustained at least in part while playing games in California.

172.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Ross, pursuant to Article IX of the Expired CBA.  The grievance claimed that Ross's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

**Darnay Scott**

173.    On or around October 19, 2005, Scott filed an application for workers' compensation benefits before the WCAB in the state of California.  Scott claims that his injuries were sustained at least in part while playing games in California.

174.    On or around October 22, 2010, the Bengals and the NFLMC filed a grievance against Scott, pursuant to Article IX of the Expired CBA.  The grievance claimed that Scott's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Greg Scott

175.    On or around December 7, 2009, Scott filed an application for workers' compensation benefits before the WCAB in the state of California.  Scott claims that his injuries were sustained at least in part while playing games in California.

176.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Scott, pursuant to Article IX of the Expired CBA.  The grievance claimed that Scott's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Troy Sadowski

177.    On or around August 1, 2007, Sadowski filed an application for workers' compensation benefits before the WCAB in the state of California.  Sadowski claims that his injuries were sustained at least in part while playing games in California.

178.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Sadowski, pursuant to Article IX of the Expired CBA.  The grievance claimed that

Sadowski's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Corey Sawyer

179.    On or around November 3, 2009, Sawyer filed an application for workers' compensation benefits before the WCAB in the state of California.  Sawyer claims that his injuries were sustained at least in part while playing games in California.

180.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Sawyer, pursuant to Article IX of the Expired CBA.  The grievance claimed that Sawyer's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Akili Kabisa Smith

181.    On or around March 3, 2009, Smith filed an application for workers' compensation benefits before the WCAB in the state of California.  Smith claims that his injuries were sustained at least in part while playing games in California.

182.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Smith, pursuant to Article IX of the Expired CBA.  The grievance claimed that Smith's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Armegis Spearman

183.    On or around December 16, 2008, Spearman filed an application for workers' compensation benefits before the WCAB in the state of California.  Spearman claims that his injuries were sustained at least in part while playing games in California.

184.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Spearman, pursuant to Article IX of the Expired CBA.  The grievance claimed that Spearman's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Glen Steele

185.    On or around July 16, 2007, Steele filed an application for workers' compensation benefits before the WCAB in the state of California.  Steele claims that his injuries were sustained at least in part while playing games in California.

186.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Steele, pursuant to Article IX of the Expired CBA.  The grievance claimed that Steele's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Brett Wallerstedt

187.    On or around August 22, 2011, Wallerstedt filed an application for workers' compensation benefits before the WCAB in the state of California.  Wallerstedt claims that his injuries were sustained at least in part while playing games in California.

188.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Wallerstedt, pursuant to Article IX of the Expired CBA.  The grievance claimed that Wallerstedt's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Peter Warrick

189.    On or around October 18, 2011, Warrick filed an application for workers' compensation benefits before the WCAB in the state of California.  Warrick claims that his injuries were sustained at least in part while playing games in California.

190.    On or around March 13, 2012, the Bengals and the NFLMC filed a grievance against Warrick, pursuant to Article IX of the Expired CBA.  The grievance claimed that Warrick's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Kenny Watson

191.    On or around August 1, 2011, Watson filed an application for workers' compensation benefits before the WCAB in the state of California.  Watson claims that his injuries were sustained at least in part while playing games in California.

192.    On or around October 20, 2011, the Bengals and the NFLMC filed a grievance against Watson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Watson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Dennis Weathersby

193.    On or around December 16, 2008, Weathersby filed an application for workers' compensation benefits before the WCAB in the state of California.  Weathersby claims that his injuries were sustained at least in part while playing games in California.

194.    On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Weathersby, pursuant to Article IX of the Expired CBA.  The grievance claimed that

Weathersby's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Richmond Webb

195.     On or around April 30, 2008, Webb filed an application for workers' compensation benefits before the WCAB in the state of California.  Webb claims that his injuries were sustained at least in part while playing games in California.

196.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Webb, pursuant to Article IX of the Expired CBA.  The grievance claimed that Webb's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Bernard Whittington

197.     On or around April 20, 2006, Whittington filed an application for workers' compensation benefits before the WCAB in the state of California.  Whittington claims that his injuries were sustained at least in part while playing games in California.

198.     On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Whittington, pursuant to Article IX of the Expired CBA.  The grievance claimed that Whittington's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Darryl Williams

199.     On or around December 1, 2008, Williams filed an application for workers' compensation benefits before the WCAB in the state of California.  Williams claims that his injuries were sustained at least in part while playing games in California.

200.   On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Williams, pursuant to Article IX of the Expired CBA.  The grievance claimed that Williams's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Reinard Wilson

201.   On or around June 2, 2006, Wilson filed an application for workers' compensation benefits before the WCAB in the state of California.  Wilson claims that his injuries were sustained at least in part while playing games in California.

202.   On or around June 11, 2010, the Bengals and the NFLMC filed a grievance against Wilson, pursuant to Article IX of the Expired CBA.  The grievance claimed that Wilson's application for workers' compensation benefits in California violated the purported forum selection clause in the NFL Player Contract.

### Consolidated Grievance

203.   The parties agreed to resolve the claims against Abdullah, Anderson, Bankston, Battaglia, Bauman,  Beckett, Bell, Blackman, Booker, Brown, Burris, Carter, Chatman, Clemons, Collins, Copeland, Dillon, Dugans, Dunn, Edmonds, Gibson, Griffin, Gutierrez, Hardy, Heath, Holt, James, L. Johnson, Riall Johnson, Rudy Johnson, Jones, Langford, Luchey, Mack, Manning, Timothy McGee, Tony McGee, Moore, Morabito, Myers, Myles, Navies, O'Dwyer, O'Neal, "Bo" Orlando, Pickens, Powell, Rehberg, Ross, Scott, Sadowski, Sawyer, Smith, Spearman, Steele, Wallerstedt, Warrick, Watson, Weathersby, Webb, Whittington, Williams, and Wilson without holding a hearing and based upon briefs submitted to Arbitrator Beck.  Exh. A, at 2.

### *The Award*

204.    Arbitrator Beck issued an award on May 4, 2012, sustaining the Consolidated

Grievance.  He held:

> [I]t is ordered that the above named Players cease and desist from
> the pursuit of workers compensation benefits in the State of
> California through the withdrawal of their claims before the
> applicable tribunal.

*See* Exh. A, at 13.

### THE AWARD MUST BE VACATED AS CONTRARY TO PUBLIC POLICY

205.    It is black letter law that an arbitral award must be set aside when it violates

public policy, and that whether an award violates public policy is a question on which courts owe

no deference to the arbitrator.  *See, e.g., Misco,* 484 U.S. at 42; *Shelby County Health Care Corp.*

*v. Am. Fed'n of State, County and Mun. Employees, Local 1733*, 967 F.2d 1091, 1095.  Review

of arbitral awards for public policy is "a specific application of the more general doctrine, rooted

in the common law, that a court may refuse to enforce contracts that violate law or public

policy."  *Misco*, 484 U.S. at 42; *see also id.* at 43 ("[T]he public's interests in confining the

scope of private agreements to which it is not a party will go unrepresented unless the judiciary

takes account of those interests when it considers whether to enforce such agreements."); *W.R.*

*Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983) ("If the contract as interpreted by the

[arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it.");

*Cont'l Airlines Inc. v. Airline Pilots Ass'n*, 555 F.3d 399, 415 (5th Cir. 2009) (stating that these

cases create an "exception to deference").[4]

---

[4] *National Football League Players Association v. Pro-Football*, 857 F. Supp. 71 (D.D.C.,
1994), is directly on point.  In that case, the district court vacated an NFL arbitration award
because it violated a state's public policy as codified by state statute.  In the underlying

206.    These principles apply with particular force here.  The players do not contest the arbitrator's interpretation of the contract language standing alone and therefore do not ask the Court to find that the arbitrator made a mistake with respect to the meaning of the language itself.  Rather, the players ask the court to rule that the contract provision, and thus the award enforcing it, are contrary to public policy.  There is no arbitral deference issue at play and this Court should make a *de novo* determination as to whether the contractual provision at issue, and resulting arbitral award, are contrary to public policy and law and thus must be vacated on that basis.

207.    Choice-of-law and choice-of-forum clauses do not have any exemption from the public policies and principles reviewed above.  A choice-of-law provision will not be enforced where it "vitiate[s] the statute laws and declared public policy of [a] state."  *See, e.g., Gotkin*, 66 A.2d at 439.  Similarly, forum selection clauses must give way to important public policies that emanate from federal and state statutes.  *See, e.g., In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) (citations and quotations omitted) ("We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a

---

arbitration, the NFLPA filed a grievance after the Washington Redskins refused to comply with a section of the CBA requiring teams to suspend players who failed to pay union dues or an equivalent service fee pursuant to an agency shop clause in the CBA.  *Id.* at 73.  The NFLPA argued that the laws of the District of Columbia, which permitted enforcement of such clauses, applied because the Redskins played in the District of Columbia.  The arbitrator concluded that District of Columbia law applied and ordered the Redskins to suspend the players.  *Id.*  The Redskins refused to suspend the players and instead sought judicial relief, arguing that Virginia law applied and Virginia's right to work law did not permit enforcement of such agency shop provisions.  *Id.* at 76 (citations omitted).  The District Court agreed with the Redskins that Virginia law applied and refused to enforce the arbitrator's award because "the arbitrator's decision violated the law and public policy of Virginia and therefore cannot stand."  *Id.* at 80. The same principle applies here.

party's right to pursue statutory remedies . . . , we would have little hesitation in condemning the agreement as against public policy").[5]

208.    The sovereign right of states to apply their workers' compensation laws to all employees injured in whole or in part within their territory is well-established.  This is true not only in California, the state where the players here have chosen to file the claims at issue in this case, but also in many other states.[6]  The choice-of-forum/choice-of-law clause at issue here purports to remove this right from every state other than Ohio, and thus impermissibly interferes with the sovereign independence and public policies of all of those states.  Such a provision is specifically inconsistent with the public policy of the numerous states including Ohio and California -- that make workers' compensation benefits non-waivable.

209.    Applying these principles, numerous courts have held that when employers in various industries have attempted to use choice-of-law or choice-of-forum provisions to limit the ability of employees to seek workers' compensation benefits in other states, such provisions have been declared unenforceable.  *See, e.g., Hartford Acc. & Indem. Co.*, 44 S.E. 2d at 163 (Georgia has authority to award workers' compensation benefits despite choice-of-law clause imposing Illinois law because "[t]he provisions of the Workmen's Compensation Act of Georgia prevail over all agreements not clearly in accord therewith"); *Gotkin*, 66 A.2d at 439 ("Neither the

_____

[5] In the context of workers' compensation, there is no distinction between a choice-of-law clause and a choice-of-forum clause.  Workers' compensation boards apply only the law of the state in which they sit, so a choice-of-forum clause has the same effect as a choice-of-law clause.  *See, e.g., Tupa*, 14 A.3d at 686 (striking down forum-selection clause on the ground that "parties cannot contract to avoid Maryland's workers' compensation law") (citing choice-of-law cases, demonstrating that choice-of-law and choice-of-forum clauses in workers' compensation context are treated similarly).

[6] *See also, e.g.,* Ohio Code § 4123.80; Tenn. Code Ann. § 50-6-114(a); Tex. Labor Code § 406.035; La. Rev. Stat. 23:1033; Ga. Code § 34-9-10; 820 ILCS 305/23; 77 Pa. Const. Stat. § 71(a); *Tupa*, 14 A.3d at 686 ("Many other states share this view").

implied intention of the parties respecting the law which was to govern their contract, if there was any such, nor any express intention, as appellant asserts is contained in the contract, can vitiate the statute laws and declared public policy of this state"); *Giltner*, 513 P.2d at 543 ("Workmen's compensation laws do not set up simply private arrangements between employee and employer.  They provide the overall social benefits deriving from a uniform workmen's compensation system.  Therefore, . . . the public has a profound interest in the matter which cannot be altered by any individual agreements") (citation and quotation omitted);  *Jenkins*, 280 S.E. 2d at 244 ("Any contract between an employer and employee that waives the burdens or benefits of the [West Virginia Workmen's Compensation] Act is void").

210.    Indeed, the Restatement makes clear that a choice-of-law provision in a contract does not divest a state of its authority to apply its workers' compensation benefits to all employees injured within the state as the parties may not undermine this public policy by private agreement.  Restatement (2d) Conflicts of Laws § 181 cmt. a ("decision by the parties to have the workmen's compensation statute of a given State applied does not deprive the courts of another State of the power to apply their own statute if such application is required by the terms of the statute or by its underlying policy").   The leading treatise on workers' compensation explains why most states have adopted this "no waiver" rule as a fundamental tenet of state law and public policy:

> Whatever the rule may be as to questions involving commercial paper, interest, usury and the like, *the rule in workers' compensation is dictated by the overriding consideration that compensation is not a private matter to be arranged between two parties; the public has a profound interest in the matter which cannot be altered by any individual agreements.*

*See* 9-143 Larson's Workers' Compensation Law § 143.07 (2010) (emphasis added); *see also id.* ("[e]xpress agreement between employer and employee that the statute of a named state shall apply is ineffective . . . to diminish the applicability of the statutes of other states"); Rothstein, et al., 2 Employment Law § 7.40 ("[m]ost courts . . . do not permit contracting parties to defeat jurisdiction that would otherwise be available").

211.    The application of multiple workers' compensation laws to employers operating in multiple states is not unique to professional football.  Many industries involve employees who routinely travel across state borders to engage in activities that involve a risk of accident and injury.  *McIlvaine Trucking, Inc. v. Workers' Compensation Appeal Bd. (States)*, 810 A.2d 1280 (Pa. 2002), is illustrative.  In that case, an employment agreement provided that a trucker submit workers' compensation claims only in West Virginia and be bound by West Virginia law.  *Id.* at 1281.  The employee was injured while temporarily in Pennsylvania, and filed for benefits in Pennsylvania.  *Id.*  The Pennsylvania Supreme Court ruled that the choice-of-law provisions in the contract were unenforceable.  *Id.* at 1286.  The employee could file for benefits in Pennsylvania, and pursuant to Pennsylvania law, because Pennsylvania statutory law and public policy did not permit enforcement of any agreement to waive the right to seek benefits in Pennsylvania.  *Id.  See also* 77 Pa. Const. Stat. § 71(a) (2010) ("No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth").

212.    These same principles apply to professional football players who, like truckers or other workers with jobs on-the-road or in several locations, must render services and be exposed

to health and safety risks in multiple states.  For example, in *Pro-Football, Inc. v. Tupa*, 14 A.3d

678 (Md. Ct. Spec. App. 2011), the Washington Redskins appealed to the Maryland Court of

Special Appeals a workers' compensation decision that granted a retired player benefits under

Maryland's Workers' Compensation Act.[7]  The Redskins argued that, pursuant to a choice-of-

forum/choice-of-law provision in the player's contract that is identical in form to those here, the

player was required to file for benefits in Virginia.  *See id.* at 684.  The player argued that

enforcement of the clause would violate a strong public policy of Maryland.  The Maryland

workers' compensation statute that set forth this public policy -- LE § 9-104(a)(1) -- is virtually

identical to the workers' compensation statutes here, as the Maryland statute provides that an

employee and employer "may not by agreement, rule, or regulation . . . waive a right of the

covered employee."  *See id.* at 685.  The Maryland appeals court affirmed the lower court's

decision holding the choice-of-law/choice-of-forum clause to be an unenforceable waiver in

violation of state law and policy:

> [T]he very purpose of Section 9-104 is to ensure that employers
> cannot contract out of coverage.  Moreover, as stated by Professor
> Larson, "the rule in workers' compensation is dictated by the
> overriding consideration that compensation is not a private matter
> to be arranged between two parties; the public has a profound
> interest in the matter which cannot be altered by any agreements."
>
> . . .
>
> "[E]xpress agreement between employer and employee that the
> statute of a named state shall apply is ineffective either to enlarge
> the applicability of that state's statute or to diminish the
> applicability of the statutes of other states."  Many states share this
> view.

---

[7] The Redskins also appealed the Court of Special Appeals' decision.  *Pro-Football, Inc. v. Tupa*,
21 A.3d 1063 (Md. 2011) (granting certiorari). Oral argument was held on November 8, 2011.

*Id.* at 685-86 (citations omitted).

213.    Similarly, in *Newson v. Miami Dolphins*, *Ltd.*, No. 3372166 (Pa. WCOA 2010), the Miami Dolphins argued that Newson, a retired NFL player, was not permitted to file for workers' compensation benefits in Pennsylvania because of a purported contractual waiver of his right to do so.  But Pennsylvania's Workers' Compensation statute § 71(a) confers a right on employees to receive "no-fault" workers' compensation benefits that *cannot be waived* through contract.  77 Pa. Cons. Stat. § 71(a) (2010); *see McIlvaine*, 810 A.2d at 1286.  Following the well-defined public policy as articulated by state statute and the Pennsylvania Supreme Court, the *Newson* court rejected the Dolphins' argument and dismissed its complaint.  *See Newson*, No. 3372166, ¶ 15 (citing *McIlvaine*, 810 A.2d 1280); *see also Miami Dolphins, Ltd. v. Newson*, No. 2:10-cv-01144, 2011 WL 1671631, at *1 (W.D. Pa. May 3, 2011) ("the Pennsylvania Workers' Compensation Court has concluded, as have others, that private contracts cannot effectively waive the Commonwealth's statutorily-enacted public policy regarding workers' compensation benefits"); *id.* at *3 ("Judge Briston expressly held that, under Pennsylvania law, the Commonwealth's statutory workers' compensation provisions apply to all work-related injuries incurred in Pennsylvania *and that this benefit is protected against/immune from private contract waiver by an employee or his union*") (emphasis added).

214.    The strong and unequivocal public policy against any contractual waiver of workers' compensation rights of the sister state here cannot be disputed.  California Labor Code § 3600 expressly provides that "[l]iability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ."  Moreover, under

express statutory law, these workers' compensation benefits cannot be waived.  "No contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division."  *See* Cal. Labor Code § 5000; *see also id.* § 2804 ("Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State").  Indeed, the applicable State Constitution states that providing for a "complete system of workers' compensation" "without incumbrance of any character" is "expressly declared to be the social public policy of this State."  Cal. Const. Art. 14, § 4.  It is thus difficult to imagine a clearer showing of an express and dominant state public policy.

215.    The public policy declaring that all employees injured within the state have a right to workers' compensation benefits in California stems from the fact that the right to workers' compensation "is 'wholly statutory' and is not derived from common law."  *Graczyk v. Workers' Comp. Appeals Bd.,* 184 Cal. App. 3d 997, 1002 (Cal. Ct. App. 1986).  The state's exercise of its constitutional "police power" to enact a complete workers' compensation regime which cannot be waived was unequivocally designed to *supplant* private contractual agreements between employers and employees when it came to on-the-job injuries:

> This statutory right is exclusive of all other statutory and common law remedies, and substitutes a new system of rights and obligations governing liability of employers for injuries to their employees. *Rights, remedies and obligations rest on the status of the employer-employee relationship, rather than on contract or tort.*

*Id*. at 1003 (emphasis added) (citations omitted).   In determining eligibility for workers'
compensation benefits under state law, California expressly determined that private contracts
cannot override the state's statute:

> Workmen's compensation *contemplates a substitution of the
> contractual rights and obligations which normally flow between
> worker and employer with a complete and exclusive statutory
> scheme based not upon contract but upon status*. The relationship
> of employer and employee itself generates the rights and
> obligations; *the legislation describes the content and extent of
> those rights and obligations*.

*Noe v. Travelers Ins. Co.*, 172 Cal. App. 2d 731, 733 (Cal. Dist. Ct. App. 1959) (emphasis
added); *see also* 22 Op. Atty. Gen. 205, Dec. 4. 1953 (emphasis added) ("In the case of an
attempted waiver of workmen's compensation benefits, any such agreement is not only
obviously against public policy, but is specifically prohibited by statute.   Section 5000 of the
Labor Code provides, in part: 'No contract . . . shall exempt the employer from liability for the
compensation fixed by this division . . . .'   It might be noted in passing that in private
employment any agreements to waive employees' rights against their employer for injury or
death, etc., are void, as against public policy.").

216.    Indeed, the Supreme Court of the United States has expressly affirmed the
constitutional power of California to apply its workers' compensation laws to employees injured
within the state notwithstanding a conflicting contractual choice-of-law clause.   In *Alaska
Packers' Association v. Industrial Accident Commission of California*, 1 Cal. 2d 250 (1934),
*aff'd*, 294 U.S. 532 (1935), the California Supreme Court held that the predecessor statute to
Labor Code § 5000 prohibited an employee from waiving his right to seek workers'
compensation benefits in the state: "The attempted selection of the Alaska [workers'

compensation] act as the governing law in section 11 of the contract is not available to the petitioner. *A contract attempting to avoid the liability imposed by the California act is invalid.*" *Id.* at 260. That decision was appealed to the U.S. Supreme Court, which affirmed the holding that a state could prohibit any contractual waiver, including through a choice-of-law clause, of state workers' compensation rights. *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532, 55 S. Ct. 518 (1935). As here, an employer and employee agreed in writing that all workers' compensation disputes would be resolved under a particular state's law, to the exclusion of all other states. However, the applicable California statute then, as now, provided that benefits under the state's workers' compensation statute were non-waivable. *Id.* at 538. The Supreme Court held that the non-waivable public policy of the state statute was valid, and that employees covered by the California statute could not waive their state-granted rights. *Id.* at 543; *see also, e.g., Bowen v. Workers' Comp. Appeals Board*, 73 Cal. App. 4th 15, 26-27 (Cal. Ct. App. 1999) (relying on "landmark case" of *Alaska Packers,* holding that a professional baseball team could not rely on "contract clause to defeat" a professional baseball player's claim for benefits because it "would violate section 5000 prohibiting contracts exempting employers from liability under California Workers' Compensation Act").

217. This strong public policy which prohibits the waiver of California workers' compensation benefits applies to NFL players with the same force as it applies to other employees who are required to travel to multiple states in which they face injury risks as part of their jobs.

218. Indeed, during oral argument before the Ninth Circuit Court of Appeals, the NFLMC recently conceded that a choice-of-law provision in an NFL player's contract, such as

that at issue here, would constitute a prohibited waiver of the right to seek workers'
compensation benefits in violation of California's public policy if the player sustained a
catastrophic injury in California.  Oral Argument at 23:00-43, *Matthews v. Nat'l Football League
Mgmt. Council*, No. 11-55186 (9th Cir. May 11, 2012), *available at*
http://www.ca9.uscourts.gov/media/ view_subpage.php?pk_id=0000009167.[8]  That concession
by the NFLMC is fatal here.

219.    It necessarily follows that if California's public policy is violated by a choice-of-
law clause that precludes a player from filing for workers' compensation benefits in that state if a
player claims to have suffered a catastrophic injury there, it is also violated if the player is
precluded from seeking benefits based upon cumulative trauma injuries in California, which is
the foundation for each player's workers' compensation claim here.  The state's anti-waiver
statute makes no distinction between specific and cumulative injuries, and California Labor Code
Section 3208.1 expressly provides that a compensable injury may be either "specific" or
"cumulative."  Cal. Labor Code § 3208.1.  In either case, the violation of state public policy is
clear.

220.    This Court should also refuse to enforce the award at issue because it is
inconsistent not only with the public policy of California and other states, but with the public

---

[8] In the lower court decision, *National Football League Players Association v. National Football
League Mgmt. Council*, No. 10CV1671 JLS (WMC), 2011 WL 31068 (S.D. Cal. Jan. 5, 2011),
the court declined to vacate an arbitration award against one NFL player that permitted him to
file for workers' compensation in California, but required the player to proceed in that forum
under Tennessee law (the law specified in the choice-of-law clause).  The decision is
unpersuasive, inconsistent with the authorities reviewed above, and thus legally indefensible.
The decision also erroneously concluded that the court was "not in a position to determine"
whether state public policy would be violated by the award at issue.  That decision is currently
on appeal before the Ninth Circuit Court of Appeals, and, as noted above, oral argument was
heard on May 11, 2012.

policy of Ohio.  Ohio's workers' compensation statute provides that "[n]o agreement by an employee to waive his rights to compensation under this chapter is valid."  Ohio Code § 4123.80; *see also Gen. Mills v. Indus. Comm'n of Ohio*, No. 02AP-127, 2002 WL 31013131 (Ohio App. 10th Dist. Sept. 10, 2002) ("there is no copy of the collective bargaining agreement in the record so it is impossible to determine whether claimant waived his right to receive [temporary total disability] compensation . . . However, *even if claimant had done so, the provision itself would be invalid as a matter of law*") (emphasis added).  The choice-of-forum and choice-of-law provision enforced by the award is thus *contrary* to Ohio's public policy against waiving the right to seek workers' compensation benefits.

221.  Ohio also expressly allow employees to seek the workers' compensation benefits of other states.  *See, e.g.,* Ohio Code §4123.54(H)(2) (2011) (employees are entitled to "pursue workers' compensation benefits . . . under the laws of another state . . . .").  It is thus clear that Ohio public policy is equally offended by an award that enforces a contract clause that would waive the rights of employees to seek any workers' compensation benefits available to them under state law, and the Ohio statute expressly contemplates a situation in which workers' compensation benefits may be available to the employee in Ohio and another state for the same injury.  The clauses are contrary to this public policy Ohio and are void and unenforceable for this reason as well.[9]

---

[9] In *Chicago Bears Football Club, Inc. v. Haynes*, 816 F. Supp. 2d 534 (N.D. Ill. 2011), the District Court, enforced a choice-of-law clause that restricted certain Chicago Bears players to an Illinois workers' compensation benefit.  However, the court relied on a conclusion that enforcing the clauses would be consistent with Illinois law and also was premised on the erroneous assumption that California was "foreign to the employment relationship."  *Id.* at 540. The decision is inapposite to the instant case, in which the clause is contrary to both California and Ohio law, and where the record makes it clear that California has an interest in applying it

## THE AWARD SHOULD ALSO BE VACATED
## AS CONTRARY TO FEDERAL LABOR LAW

222.    The unequivocal conflict between the arbitral award and public policy is further demonstrated by the well-established principle that even federal labor law, as expressed in the parties' collective bargaining agreement, cannot override minimum labor standards, such as workers' compensation benefits, that states grant to employees.  It follows *a fortiori* that individual employers and employees cannot waive such benefits by contract.

223.    Under federal labor law, collective bargaining agreements that provide *greater* benefits to employees preempt inconsistent state laws.  *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 138, 144 (1976).  However, the converse is not true.  It is black letter law that a union and employer may *not* contract to take away from employees minimum state law benefits that improve employees' health, safety or welfare.  The "floors" for such employee benefits may not be waived by a union and the employer, just as they cannot be waived by an individual employee and his or her employer.  As stated by the Supreme Court:

> Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA . . . . [M]andated-benefit laws are not laws designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part "designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive" the mandated health insurance coverage.

---

workers' compensation laws to players who have suffered their injuries in whole or in part in California.

> *It would further few of the purposes of the Act to allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally.* "Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers.

*See Met. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755-56, 105 S. Ct. 2380 (1985) (citations omitted; emphasis added); *see also id.* at 752 (rejecting appellant's argument that "Congress . . . intended to prevent the States from establishing minimum employment standards that labor and management would otherwise have been required to negotiate"); *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (collective bargaining agreement cannot supplant state employee benefits law because principles of federal pre-emption "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law").

224.     This principle, that even a union may not waive an employee's right to minimum state labor benefits, has been applied to void any such attempted waiver of rights granted to employees under state workers' compensation laws. *See, e.g., Contract Services Network, Inc. v. Aubry*, 62 F.3d 294, 298-99 (9th Cir. 1995) (CBA that provided workers' compensation benefits from an ERISA fund could not displace California's workers' compensation statute) ("[T]he California law involved here applies to all private employers without regard to any collective bargaining agreement that may govern other employment matters. *The law cannot be undercut by collective bargaining or other means, nor does the law frustrate the purpose of Congress.* As a result, we find that the NLRA does not preempt California Labor Code § 3700.") (emphasis added; citations omitted). Indeed, this very issue has been determined in the context of

professional football by California's Workers' Compensation Appeals Board, which held that a professional football player's right to seek workers' compensation benefits in California cannot be waived by even a collective bargaining agreement. *See Brache v. Tampa Bay Storm*, No. ADJ1908964 (ANA 0394515), slip op., at 20-21 (WCAB Aug. 30, 2010) (citing *Contract Servs.*, 62 F.3d at 297-98).[10] Given these decisions, it follows that it similarly is void and against public policy for an individual employer, such as the Bengals, to use this Court to try to enforce an employment contract that, if entered into by the union itself, would be unenforceable.

### THE AWARD MUST BE VACATED BECAUSE IT INTRUDES UPON THE SOVEREIGN RIGHT OF CALIFORNIA AND OTHER STATES TO PROVIDE WORKERS' COMPENSATION FOR INJURIES WITHIN THEIR BORDERS

225.    Under controlling and long-standing Supreme Court precedent, each state has the sovereign right to apply its own workers' compensation statute to any claim that has sufficient nexus to the state. *See Thomas v. Wash. Gas Light Co.*, 448 U.S. 261, 277-79 (1980); *Carroll v. Lanza*, 349 U.S. 408, 412-14 (1955); *Pac. Emp'rs*, 306 U.S. at 501; *Alaska Packers*, 294 U.S. at 545. This rule is implicit in "the very nature of the federal union of the states," *Pac. Emp'rs*, 306 U.S. at 501, and thus no state is required to "subordinate its own [workers'] compensation policies to those of another state," *Wash. Gas Light Co.*, 448 U.S. at 279. Here, California has a sufficient nexus to each player's claim because the players allege that they were injured there or incurred injuries which were aggravated there while playing games in California.

---

[10] In *Brache*, a player was injured in California while playing for the Tampa Bay Storm of the Arena Football League ("AFL"). The Storm claimed that a collective bargaining agreement between the AFL and the AFL Players Association had waived the player's right to claim workers' compensation benefits outside the state of Florida. The court summarily dismissed the team's defense. *Id.* at 6-8, 20-21. *Brache* was upheld by the Workers' Compensation Appeals Board of California. *See Brache v. Tampa Bay Storm*, No. ADJ1908964 (ANA 0394515) (WCAB Aug. 30, 2010).

226.     In *Pacific Employers*, 306 U.S. 493, the Supreme Court was asked to consider the conflict between a Massachusetts statute waiving a Massachusetts employee's right to seek workers' compensation benefits in another state where he was injured and the California statute (Section 5000 -- the same one at issue here), which held any such waiver to be void.   The employee resided in Massachusetts, entered into an employment contract in Massachusetts, worked primarily in Massachusetts for a Massachusetts corporation and, while in Massachusetts, was bound by the Massachusetts workers' compensation statute that precluded Massachusetts' employees from obtaining benefits under other states' laws.  *See Pac. Emp'rs*, 306 U.S. at 497-98.  From time to time, however, the employee -- like each player here -- was sent by his employer to work temporarily in California.  *Id.* at 498.  While in California during the course of his employment, the employee was injured and thus sought workers' compensation benefits under California's workers' compensation act.   *Id.* at 498-99.   California's Workers' Compensation Commission then awarded the employee benefits under California's statute.

227.     The employer's insurance carrier moved to vacate the award in federal court, insisting "that since the contract of employment was entered into in Massachusetts and the employer consented to be bound by the Massachusetts Act, that, and not the California statute, fixes the employee's right to compensation whether the injuries were received within or without the state, and that the Massachusetts statute is constitutionally entitled to full faith and credit in the courts of California."  *See Pac. Emp'rs*, 306 U.S. at 499-500.  The Supreme Court rejected this argument and held that California has the absolute right to apply its workers' compensation laws to claims based on injuries that occur within its borders.  *See id.* at 502-03 ("*the statute of the forum is the expression of domestic policy*, in terms declared to be exclusive in its application

to persons and events within the state") (emphasis added); *id.* at 503 ("Few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power"); *id.* at 504 (workers' compensation statute applies to out-of-state "employee if injured within the state of California").

228.    As the Supreme Court explained in *Carroll*, 349 U.S. 408, a state has the constitutional right to apply its own workers' compensation laws to any workers' compensation claim brought within its borders without regard to "balancing" other interests:

> Missouri can make her Compensation Act exclusive, if she chooses, and enforce it as she pleases within her borders.  Once that policy is extended into other States, different considerations come into play.  Arkansas can adopt Missouri's policy if she likes. Or, as the *Pacific Employers Insurance Co.* case teaches, she may supplement it or displace it with another, *insofar as remedies for acts occurring within her boundaries are concerned.  Were it otherwise, the State where the injury occurred would be powerless to provide any remedies or safeguards to nonresident employees working within its borders*.

*Id*. at 413-14 (emphasis added).

229.    The Supreme Court re-affirmed these principles in *Washington Gas Light Co.*, 448 U.S. 261 (1980), in which it held that the Full Faith and Credit Clause does *not* preclude successive workers' compensation awards in different states.  *See id.* at 285 ("whether or not the worker has sought an award from the less generous jurisdiction in the first instance, the vindication of that State's interest in placing a ceiling on employers' liability would inevitably impinge upon the substantial interests of the second jurisdiction in the welfare and subsistence of disabled workers").  In the words of the Supreme Court:

> The principle that the Full Faith and Credit Clause does not require a State to subordinate its own compensation policies to those of another State has been consistently applied in more recent cases

[than *Alaska Packers* and *Pacific Employers*].  *Carroll v. Lanza*, 349 U.S. 408, 75 S. Ct. 804, 99 L. Ed. 1183; *Crider v. Zurich Ins. Co.*, 380 U.S. 39, 85 S. Ct. 769, 13 L. Ed.2d 641; *Nevada v. Hall*, 440 U.S., at 421-424, 99 S. Ct., at 1188-1190.  Indeed, in the *Nevada* case the Court not only rejected the contention that California was required to respect a statutory limitation on the defendant's liability, but did so in a case in which the defendant was the sovereign State itself asserting, alternatively, an immunity from any liability in the courts of California.

It is thus perfectly clear that petitioner could have sought a compensation award in the first instance either in Virginia, the State in which the injury occurred, *Carroll v. Lanza, supra*; *Pacific Employers, supra*, or in the District of Columbia, where petitioner resided, his employer was principally located, and the employment relation was formed, *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028; *Alaska Packers Assn. v. Industrial Accident Comm'n, supra*.  And as those cases underscore, compensation could have been sought under either compensation scheme even if one statute or the other purported to confer an exclusive remedy on petitioner.

*Id.* at 279.

230.    The lower courts have applied these Supreme Court principles to make it clear that a state, like California, can apply its workers' compensation laws to any employee claim so long as there is a nexus to the state, despite the interests of any other state in also having its law applied.  *See, e.g., Dailey v. Dallas Carriers Corp.*, 43 Cal. App. 4th 720, 726 (Cal. Ct. App. 1996) ("In workers' compensation law, the United States Supreme Court has long recognized that *the state where an injury occurs*, the state where an employment relationship is created, and the state where an injured employee resides *all have the significant contacts necessary to justify application of their own workers' compensation laws*.  Each such state may apply its law without offending the full faith and credit clause, even if another state purports to provide an exclusive

remedy.  In fact, the full faith and credit clause allows employees to file successive claims for workers' compensation in each interested jurisdiction.") (emphasis added; citations omitted).

231.    It follows, *a fortiori*, that if one state cannot preclude another state from applying its workers' compensation laws to employees who claim injuries within that other state, then it is void and against public policy for the award to enforce a private contract between an employer and an employee that seeks to preclude the employee from seeking workers' compensation benefits in another state in which he claims to have been injured.  Under governing law and public policy, the players here may seek workers' compensation benefits in California, in Ohio, or in any other combination of states where these players have a connection through injury and having rendered services there.  The award precluding the players from exercising this non-waivable right must be set aside as being void and contrary to both law and public policy.

## CONCLUSION

232.    Because the Award contravenes important public policies, it must be vacated.

June 28, 2012

Respectfully submitted,

/s/ Thomas J. Kircher
Thomas J. Kircher (0023473)
Brennan C. Grayson (0084360)
KIRCHER SUETHOLZ & GRAYSON, LPA
525 W. Fifth Street, Suite 230
Covington, KY 41011
Telephone: (859) 261-8200
Facsimile: (859) 261-3739
Email: thomasjkirchner@gmail.com
Email: brennan.grayson@gmail.com

and

Jeffrey L. Kessler (admitted *pro hac vice*)
David G. Feher (admitted *pro hac vice*)
Adam J. Kaiser (admitted *pro hac vice*)
Jeffrey H. Newhouse (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Ave.
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for the NFLPA and the Players*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed on June 28, 2012 using the Court's CM/ECF
filing system, which will transmit notice of the filing to all counsel of record in this case.

/s/ Thomas J. Kircher
Thomas J. Kircher (0023473)