**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
FOR THE WESTERN DIVISION**

| | | |
|---|---|---|
| **CINCINNATI BENGALS, INC.** | : | **No. 1:09-cv-738** |
| **Plaintiff,** | : | **Hon. Sandra S. Beckwith** |
| **v.** | : | **Hon. Karen L. Litkovitz** |
| **KHALID ABDULLAH, et al.** | : | **NOTICE OF SUPPLEMENTAL** |
| **Defendants.** | : | **AUTHORITY** |

On August 6, 2012, the Ninth Circuit Court of Appeals affirmed the district court decision confirming the arbitration award against former NFL player Bruce Matthews. *Matthews v. Nat'l Football League Management Council,* Case No. 11-55186 (9th Cir. 2012). A copy of that decision is attached. In light of Defendants' statements about the *Matthews* case, set out below, Plaintiffs respectfully submit that their motion to confirm the arbitration award in this matter is ripe for decision and that the Court should enter judgment confirming the arbitration award:

> At a minimum, the Court should await the ruling in the *Matthews* case which is currently *sub judice* before the U.S. Court of Appeals.
>
> > Defendants' Reply, Docket no. 64, filed August 3, 2012, at 13.
>
> The Court of Appeals decision in *Matthews* should provide substantial additional clarity on the right of California, as a sovereign State, to determine under what circumstances it will provide workers compensation benefits to employees injured at least in part in that State.
>
> > *Id.* at 11.

Respectfully submitted,

/s/ william stuart dornette
W. Stuart Dornette (0002955)
Ryan A. Bednarczuk (0079795)
Christina L. Fischer (0083312)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: 513.381.2838
Fax: 513.381.0205
dornette@taftlaw.com
bednarczuk@taftlaw.com
cfischer@taftlaw.com

Attorneys for Plaintiffs, Cincinnati Bengals, Inc.
and National Football League Management
Council

Of Counsel on behalf of National Football
League Management Council:

Stacey R. Eisenstein
Daniel L. Nash
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
Telephone:  202.877.4427
Fax:  202.887.4288

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed on August 8, 2012 using the Court's

CM/ECF filing system, which will transmit notice of the filing to all counsel of record in this

case.

/s/ william stuart dornette
W. Stuart Dornette (0002955)

12978834.1                                                    - 2 -

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Bruce Matthews,

　　　　　*Plaintiff-Appellant,*

　　　　　v.

National Football League
Management Council; Tennessee
Titans,

　　　　　*Defendants-Appellees.*

No. 11-55186

D.C. No.
3:10-cv-01671-JLS-
WMC

OPINION

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted
May 11, 2012—Pasadena, California

Filed August 6, 2012

Before: John T. Noonan and Raymond C. Fisher,
Circuit Judges, and James E. Gritzner,
Chief District Judge.*

Opinion by Judge Fisher

---

*The Honorable James E. Gritzner, Chief District Judge of the United
States District Court for the Southern District of Iowa, sitting by designa-
tion.

## COUNSEL

Andrew S. Tulumello (argued), Washington, DC; Jeffrey L. Kessler, Adam J. Kaiser and Jeffrey H. Newhouse, Dewey & LeBoeuf LLP, New York, New York; Matthew M. Walsh, Dewey & LeBoeuf LLP, Los Angeles, California, for the plaintiff-appellant.

Rex S. Heinke (argued), L. Rachel Helyar and Johanna R. Shargel, Akin Gum Strauss Hauer & Feld LLP, Los Angeles, California; Daniel L. Nash, Akin Gum Strauss Hauer & Feld LLP, Washington, DC, for the defendants-appellees.

---

## OPINION

FISHER, Circuit Judge:

Plaintiff-Appellant Bruce Matthews played professional football for 19 years. When he retired in 2002, he was employed by the Tennessee Titans. In 2008, he filed a workers' compensation claim in California, alleging that he suffered pain and disability from injuries incurred during his career as a professional football player.

Matthews asks us to vacate an arbitration award that prohibits him from pursuing workers' compensation benefits under California law. He contends that the award violates California public policy barring contractual waiver of workers' compensation benefits and federal labor policy providing that an employment agreement may not preempt state minimum labor standards. Matthews also argues that the award is in manifest disregard of the Full Faith and Credit Clause of the United States Constitution.

We hold that Matthews has not alleged sufficient contacts with California to show that his workers' compensation claim comes within the scope of California's workers' compensation regime. He has therefore not met his burden of establishing that the arbitration award prohibiting him from pursuing California benefits violates an explicit, well-defined and dominant public policy of the state of California. Because Matthews has not shown that the award deprives him of something to which he is entitled under state law, he likewise has not shown that it violates federal labor policy. Nor has

Matthews established that the arbitrator manifestly disregarded the Full Faith and Credit Clause. We accordingly affirm the district court's order confirming the arbitration award.

## BACKGROUND

Matthews played football in the National Football League (NFL) from 1983 to 2002, first for the Houston Oilers and later for its successor teams, the Tennessee Oilers and the Tennessee Titans (Titans). He retired in 2002. In 2008, Matthews filed for workers' compensation benefits in California. Matthews claimed pain and disability resulting from injuries incurred while he was employed by the NFL at "various" locations over 19 years of "playing and practicing professional football." He did not allege that he sustained any particular injury in California.

The Titans and the National Football League Management Council (NFLMC) filed a grievance against Matthews. They argued that by applying for workers' compensation benefits in California, Matthews breached his employment agreement, which provided that all workers' compensation claims would be decided under Tennessee law. [1] They sought to prevent Matthews from pursuing his workers' compensation claim in California. Pursuant to a binding arbitration clause in the NFL collective bargaining agreement, the parties arbitrated their dispute.

The arbitrator found that the choice of law clause in Mat-

---

[1]Matthews' contract said, in pertinent part:

Jurisdiction of all workers compensation claims and all other matters related to workers compensation . . . including all issues of law, issues of fact, and matters related to workers compensation benefits, shall be exclusively determined by and exclusively decided in accordance with the internal laws of the State of Tennessee without resort to choice of law rules.

thews' contract constituted a "promise[ ] to resolve workers
compensation claims under Tennessee law" and that by pursu-
ing workers' compensation under California law, Matthews
was in violation of the agreement. The arbitrator ordered Mat-
thews to "cease and desist" from seeking California benefits.
Matthews filed suit in federal district court to vacate the arbi-
tration award. *See* 29 U.S.C. § 185; *Carter v. Health Net of
Cal., Inc.*, 374 F.3d 830, 835 (9th Cir. 2004) (recognizing that
the Labor Management Relations Act (LMRA) creates federal
question jurisdiction over petitions to confirm or vacate arbi-
tration awards).

In January 2011, the district court denied Matthews'
motion to vacate the arbitration award and granted the Titans
and the NFLMC's cross-motion to confirm the award. Mat-
thews appealed.

We have jurisdiction under 28 U.S.C. § 1291. The facts do
not appear to be in dispute. We review de novo the district
court's resolution of legal questions. *See Aramark Facility
Servs. v. Serv. Emps. Int'l Union, Local 1877*, 530 F.3d 817,
822 (9th Cir. 2008).

## DISCUSSION

### I.

"[B]ecause federal labor policy strongly favors the resolu-
tion of labor disputes through arbitration, [j]udicial scrutiny of
an arbitrator's decision is *extremely* limited." *United Food &
Commercial Workers Int'l Union, Local 588 v. Foster Poultry
Farms*, 74 F.3d 169, 173 (9th Cir. 1995), *as amended* (second
alteration in original) (internal quotation marks omitted). "Ar-
bitration awards are ordinarily upheld so long as they repre-
sent a plausible interpretation of the contract." *Aramark*, 530
F.3d at 823 (internal quotation marks omitted).

One narrow exception to this rule is when the arbitration
award is contrary to public policy. " '[A] court need not, in

fact cannot, enforce an award which violates public policy.' "
*Id.* (quoting *Stead Motors v. Auto. Machinists Lodge No.
1173*, 886 F.2d 1200, 1209 (9th Cir.1989) (en banc)). To
vacate an arbitration award on public policy grounds, we must
"(1) find that an explicit, well defined and dominant public
policy exists . . . and (2) that the policy is one that specifically
militates against the relief ordered by the arbitrator." *Foster
Poultry Farms*, 74 F.3d at 174 (internal quotation marks omit-
ted). Any such public policy "must be ascertained by refer-
ence to the laws and legal precedents and not from general
considerations of supposed public interests." *E. Associated
Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S.
57, 62 (2000) (internal quotation marks omitted).

Matthews argues that the arbitration award here contra-
venes California workers' compensation policy and federal
labor policy. We address each argument in turn.

## A.   California Public Policy

Matthews contends that California has an explicit, well-
defined and dominant public policy militating against agree-
ments that purport to waive an employee's right to seek Cali-
fornia workers' compensation benefits before a California
tribunal, no matter how tenuous the connection between Cali-
fornia and the employee or the employment. Matthews
derives this "no waiver" policy primarily from the California
workers' compensation statute, *see* Cal. Labor Code § 5000
("No contract, rule, or regulation shall exempt the employer
from liability for the compensation fixed by [the workers'
compensation statute]."); *id.* § 2804 ("Any contract or agree-
ment, express or implied, made by any employee to waive the
benefits of this article or any part thereof, is null and void
. . . ."), and the decision of the California Supreme Court in
*Alaska Packers Ass'n v. Industrial Accident Commission*, 1
Cal. 2d 250, 260 (Cal. 1934), which held that the statutory
predecessor to § 5000 of the California Labor Code barred an
employer from using a contractual choice of law clause to

prevent an employee from receiving workers' compensation benefits under California law. Matthews contends that by prohibiting him from seeking benefits under California law, the arbitration award violates this fundamental policy.

**[1]** We do not read California's policy so broadly. Rather than guarantee a universal right to seek California workers' compensation benefits, the workers' compensation statute establishes a rule that an employee who is otherwise eligible for California benefits cannot be deemed to have contractually waived those benefits, and an employer who is otherwise liable for California benefits cannot evade liability through contract. *See* Cal. Labor Code § 3600(a)(1) (providing that employers are liable for work-related injuries to their employees only when, among other things, "at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division "); *id.* § 5000 ("No contract, rule, or regulation shall *exempt the employer from liability* for the compensation fixed by this division . . . . " (emphasis added)); *id.* § 2804 ("Any contract or agreement, express or implied, made by any employee to waive *the benefits of this article* or any part thereof, is null and void . . . . " (emphasis added)). The "no waiver" rule applies only when an employee's workers' compensation claim is subject to California law.

Our reading of the statute is consistent with *Alaska Packers*. There, an employee applied for workers' compensation under California law despite a choice of law clause in his employment agreement, which provided that the parties would resolve workers' compensation disputes under Alaska law. *See Alaska Packers Ass'n*, 1 Cal. 2d at 252-53. The California Supreme Court concluded that the choice of law clause was unenforceable under the statutory predecessor to § 5000, but only after finding that the employment relationship in question had sufficient contacts with California to apply California's workers' compensation law. *See id.* at 255-57, 260 (holding that employment relationships entered into in Cali-

fornia were subject to California's workers' compensation laws, under which a "contract attempting to avoid the liability imposed by the [workers' compensation] act [was] invalid"). *See also Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n*, 10 Cal. 2d 567, 576 (Cal. 1938) (holding that an employee who resided in Massachusetts, entered into an employment relationship in Massachusetts and worked primarily in Massachusetts but was injured while temporarily working in California could not recover California workers' compensation benefits "unless [California's] interest in the controversy [was] superior to that of Massachusetts" so as to justify the application of California law).

**[2]** To establish that the arbitration award here violates California policy, Matthews must show that his workers' compensation claim comes within the scope of California's workers' compensation regime. *See Foster Poultry Farms*, 74 F.3d at 174 (recognizing that the party seeking to vacate an arbitration award bears the burden of showing that it violates an explicit, well-defined and dominant public policy). Because of our highly limited and deferential standard of review of arbitration awards, it must be *clear* that Matthews is within the category of injured employees to which California workers' compensation law extends. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (explaining that a violation of an alleged public policy "must be clearly shown if an award is not to be enforced").

In *Pacific Employers*, 10 Cal. 2d 567, the California Supreme Court applied California workers' compensation law to an employee who was injured and incurred medical expenses while working in California, even though the employee resided in Massachusetts, was regularly employed in Massachusetts by a Massachusetts employer and was only temporarily in California when the injury occurred. *See id.* at 569-70, 578. The court acknowledged that, given the employee's limited contacts with California, California's interests would ordinarily be only "casual" as compared to the interests

of Massachusetts, *id.* at 576, but concluded that, because the employee was injured and received medical treatment in California, California's interest was superior, *id.* at 577-78. The court reasoned that providing California hospitals and doctors convenient mechanisms for obtaining compensation for services rendered to injured employees was a critical component of California's workers' compensation regime and that maintaining an effective workers' compensation system was of vital interest to the state. *See id.*

[3] Under *Pacific Employers*, then, California's workers' compensation law covers an employee who suffers a discrete injury in California, at least where the costs associated with the employee's injury may impact California's medical system and other resources. *See id.* at 576-78.[2] If Matthews had suffered an injury requiring medical treatment while playing a game in California, *Pacific Employers* would appear to foreclose enforcement of the Tennessee choice of law clause in his employment contract (and thus the arbitration award). [3]

---

[2]Although *Pacific Employers* emphasized the burden injured employees place on the state's medical and other resources, more recent case law suggests that, with one exception (*see infra* n.3), California's workers' compensation law may cover employees who suffer discrete injuries in California even if they do not, in fact, burden the state's medical system or other resources. *See Dailey v. Dallas Carriers Corp.*, 43 Cal. App. 4th 720, 726-27 (Cal. Ct. App. 1996) ("[T]he California Workers' Compensation Act applies to a worker employed in another state who is injured while working in California."); *Booker v. Cincinnati Bengals*, Case No. ADJ4661829 at 3 (WCAB May 1, 2012) (Opinion and Order Denying Petition for Reconsideration) (noting that the California Workers' Compensation Appeals Board "has subject matter jurisdiction over *all* injuries sustained in California"). We need not decide whether it is sufficient to allege a discrete injury alone, with no attendant burden on state resources, because Matthews has alleged neither a discrete injury nor a burden on state resources.

[3]Section 3600.5(b) of the California Labor Code creates an express exception to this general rule exempting from coverage an employee hired out of state but injured in California, so long as the employee's injury is covered by the workers' compensation laws of the state of employment and that state likewise exempts from its law California employers and employees in comparable circumstances. *See* Cal. Labor Code § 3600.5(b); *Dailey*, 43 Cal. App. 4th at 727. Neither party argues that § 3600.5(b) applies here.

**[4]** On the record before us, however, Matthews has not shown that his claim falls within the scope of the *Pacific Employers* rule. In his application for workers' compensation benefits, Matthews asserted that he suffered cumulative injuries incurred at "various" locations between 1983 and 2001. He did not allege any specific injury in California or a need for medical services in California. Matthews likewise did not allege in his complaint before the district court that he suffered any discrete injury in California. Nor has he directed us to anything in the record indicating that he tried to prove injury in California, or any burden on the state's resources.[4] Indeed, Matthews did not even allege that he played football in California, although we take judicial notice of the fact that Matthews' teams played 13 games in California during Matthews' 19-year career. *See* Tennessee Titans Team Page, NFL.COM, *http://www.nfl.com/teams/profile?team=TEN* (last visited July 19, 2012); Fed. R. Evid. 201(b)(2) (allowing a court to take judicial notice of a fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").[5]

In briefing, Matthews argues — without citation to the record — that he was injured in California, apparently on the theory that all the games he played during his career contributed to the ailments he suffers today. Matthews may be correct, as a matter of fact, that every game (or at least most

---

[4]The record does not reveal what evidence Matthews presented to the arbitrator. It is clear from the arbitration award that Matthews argued the Tennessee choice of law clause in his employment contract violated California's "no waiver" policy and that it should be up to the California courts to decide whether to apply California or Tennessee law. It is not apparent what facts, if any, he offered to support this argument.

[5]We grant the Titans and NFLMC's request for judicial notice of these statistics, which are available on the NFL's website. Matthews did not object to the request for judicial notice or question the accuracy of the statistics. In briefing, Matthews asserts that he "played a number of professional football games in the State of California."

games) contributed to his cumulative injuries, but it is not clear that, as a matter of California law, this means he falls within the category of employees to whom California extends workers' compensation coverage. The facts underlying Matthews' claim are distinct enough from existing California cases that we cannot say whether the California courts would consider Matthews' limited contacts with the state sufficient to justify the application of California law.

[5] Under our standard of review of arbitration awards, this uncertainty is fatal to Matthews' claim. He has not shown that he falls within the category of employees to whom the "no waiver" rule applies. He has thus not shown that the arbitration award is contrary to a clear, well-defined and dominant public policy of the state of California. *See Misco, Inc.*, 484 U.S. at 43; *Foster Poultry Farms*, 74 F.3d at 174.

To be precise, we do not hold that employers may use binding arbitration of choice of law clauses as a means to evade California law where it would otherwise apply. Nor must an employee challenging an arbitration award show that he necessarily would prevail on his workers' compensation claim before a California tribunal.[6] An employee who makes a prima facie showing that his claim falls within the scope of California's workers' compensation regime may indeed be

---

[6]For example, a California tribunal may dismiss for lack of jurisdiction a claim that would otherwise fall within the scope of the *Pacific Employers* rule because the employer established that the requirements of § 3600.5(b) of the California Labor Code were met. *See* Cal. Labor Code § 3600.5(b) (providing for California jurisdiction over injuries sustained in California *unless* certain conditions ensuring adequate insurance coverage and reciprocity in the state of employment are satisfied); *Dailey*, 43 Cal. App. 4th at 726-27 (recognizing § 3600.5 as an exception to the general rule that California's workers' compensation statute applies to workers employed in another state but injured in California). Or a California tribunal may dismiss on the merits after finding that the employee did not in fact sustain the injury in the course of his employment. *See* Cal. Labor Code § 3600(2), (3) (limiting liability to injuries arising out of employment).

able to establish that an arbitration award prohibiting him from seeking such benefits violates California policy. Matthews did not do so here because he did not allege facts showing an injury in California or any burden on the state's medical system, and it is not clear that California would extend its workers' compensation regime to cover the cumulative injuries Matthews claims, given his limited contacts with the state.

## B.  Federal Labor Policy

**[6]**  Matthews argues that the arbitration award also violates federal labor policy, which provides that an employee may not, through a collective bargaining agreement, bargain away state minimum labor standards. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755-56 (1985) (holding that the National Labor Relations Act does not permit "unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally"); *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (   "[LMRA Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. "); *see also Contract Servs. Network, Inc. v. Aubry*, 62 F.3d 294 298-99 (9th Cir 1995) (holding that California's workers' compensation statute "cannot be undercut by collective bargaining "). Matthews contends the arbitration award conflicts with this explicit, well-defined and dominant public policy by interpreting the NFL collective bargaining agreement and his employment contract so as to waive his right to California workers' compensation benefits.

**[7]**  As we explained above, it is not clear that Matthews' workers' compensation claim falls within the scope of California's workers' compensation regime. He has therefore not shown that an arbitration award preventing him from seeking California benefits deprives him of something to which he is entitled under state law. *See Misco*, 484 U.S. at 43 (explaining that a violation of an alleged public policy   "must be clearly

shown if an award is not to be enforced "). Accordingly, Matthews has not met his burden of establishing that this policy "specifically militates against" enforcement of the arbitration award in this case. *Foster Poultry Farms*, 74 F.3d at 174.

## II.

Matthews also argues that we must vacate the arbitration award because it is in manifest disregard of the Full Faith and Credit Clause of the United States Constitution. Like the public policy exception, manifest disregard of the law is a narrow exception to the general principle of deference to arbitration awards. It is "shorthand for a statutory ground under the [Federal Arbitration Act (FAA)], . . . which states that the court may vacate 'where the arbitrators exceeded their powers.' " *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc)). "[F]or an arbitrator's award to be in manifest disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it. " *Id.* (internal quotation marks and alterations omitted). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA]. " *Kyocera Corp.*, 341 F.3d at 994.

**[8]** The Full Faith and Credit Clause says that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. " U.S. CONST. art. IV, § 1, cl. 1. In decisions upholding the California Supreme Court in *Alaska Packers* and *Pacific Employers*, the United States Supreme Court held that the Full Faith and Credit Clause did not prevent California from applying its

---

[7]The Titans and NFLMC point out that we have not decided whether the FAA applies to arbitration of collective bargaining agreements. *See Poweragent Inc. v. Elec. Data Sys. Corp.* , 358 F.3d 1187, 1193 n.1 (9th Cir. 2004). For purposes of our discussion here, we will assume that it would.

workers' compensation statute even though it conflicted with the laws of Alaska and Massachusetts, respectively. *See Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532 (1935); *Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n of Cal.*, 306 U.S. 493 (1939). Matthews contends that these decisions established that "California has the absolute right to apply its workers' compensation laws within its borders and to prohibit any employee from waiving those rights." He argues that the arbitrator ignored this principle and impermissibly "impos[ed] the law of Tennessee upon the tribunals of the State of California."

We disagree. The Supreme Court did not hold that California had an "absolute right" to apply its law, irrespective of the extent of its contacts with the employee or employment relationship in question. To the contrary, in each case, the Court emphasized California's substantial interest in the controversy before it. In *Alaska Packers*, 294 U.S. at 542-43, the Court recognized California's strong interest in regulating employment relationships entered into within the state, particularly when injury to the employee may result in a burden on the state's resources. *See also id.* at 549-50. Similarly, in *Pacific Employers*, 306 U.S. at 503, where the Court considered California's right to apply its laws to a Massachusetts resident injured while working in California, the Court concluded that "[f]ew matters could be deemed more appropriately the concern of [a] state" than "legislat[ing] for the bodily safety and economic protection of employees injured within it." *See also Carroll v. Lanza*, 349 U.S. 408, 413 (1955) (recognizing Arkansas' interest in providing a remedy to employees injured in Arkansas). Indeed, the Supreme Court has recognized that " 'for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) (plurality opinion)).

[9] That the Full Faith and Credit Clause did not prevent California from applying its law in *Alaska Packers* and *Pacific Employers* does not mean that the arbitration award here, which precludes the application of California law, manifestly disregards the clause or Supreme Court precedent interpreting it.[8] As we discussed above, California's interest is highly attenuated in this case. On the facts alleged it is not even clear that the courts of California would consider California's interest sufficient to justify the application of California law to Matthews' workers' compensation claim.[9] For an award to be in manifest disregard of the law, "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (internal quotation marks omitted). Neither *Alaska Packers* nor *Pacific Employers* "explicitly" requires the application of California law here. Because Matthews has not shown that the Full Faith and Credit Clause guarantees California's right to apply its law *on the facts of this case*, he has not established that the arbitrator recognized yet chose to ignore "well defined, explicit, and clearly applicable" law. *Id.*

**AFFIRMED.**

---

[8]In *Alaska Packers* and *Pacific Employers*, the Supreme Court held that the Full Faith and Credit Clause did not *require* California to substitute the law of another state for its own laws when California was competent to legislate in the area and had an interest in applying its law. *See Alaska Packers*, 294 U.S. at 549-50; *Pacific Employers*, 306 U.S. at 504-05. We assume, without deciding, that this reasoning could be extended to *prohibit* an arbitration award from requiring the application of Tennessee law when California could, under the Full Faith and Credit Clause, apply its own law instead.

[9]Matthews asserts in his brief that, like the employee in *Pacific Employers*, he suffered injuries while temporarily working in California. We reiterate that the record is silent on this point. Even assuming, however, that games Matthews played in California contributed, cumulatively, to the ailments he suffers today, it is not clear that California would extend its workers' compensation regime to cover him. *See supra* at 8695-96.