UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cincinnati Bengals, Inc., | : Case No. 1:09-cv-738 |
| Plaintiff, | : |
| vs. | : |
| Khalid Abdullah, et al., | : |
| Defendants. | : |

## ORDER

Before the Court is the motion filed by the Plaintiff, the Cincinnati Bengals, Inc. ("Bengals"), to confirm the arbitration award entered in their favor (Doc. 36), and a related motion for summary judgment (Doc. 60). The Defendants, a group of former Bengals players, oppose the motion to confirm (Doc. 61) and the motion for summary judgment (Doc. 63). The Defendants also filed a motion to vacate the arbitration award (Doc. 59), to which the Bengals have responded (Doc. 62).

For the following reasons, the Court will grant the Bengals' motion to confirm and deny the Defendants' motion to vacate.

## FACTUAL BACKGROUND

The parties are well acquainted with the facts and the procedural background of this case. Briefly summarized, the Bengals originally filed a complaint in state court against six of its former players, seeking an injunction to prevent the players from filing or continuing to prosecute worker's compensation claims in California against the Bengals. The Bengals alleged that the players' actions violated their NFL contracts, specifically a provision requiring that any workers' compensation claims arising out of a

player's employment with the Bengals be filed in Ohio under Ohio law.  The complaint also sought a declaratory judgment enforcing that contractual provision.  Additional players were added as defendants by way of amended complaints.  After the players removed the case, this Court denied the Bengals' motion to remand.  This Court then granted the motion filed by the players (joined by the NFL Players Association) to compel arbitration of the Bengals' claims.  This Court stayed this case pending completion of the arbitration process.  (See Doc. 31, April 28, 2010 Order.)

The parties submitted the case to Arbitrator Michael H. Beck on the following stipulated facts:

(1) each of the Players entered into a contract that contained the following clause:

> As a material inducement for the [Bengals] to employ Player's services, Player promises and agrees that any workers' compensation claim, dispute, or cause of action arising out of Player's employment with the [Bengals] shall be subject to the workers' compensation laws of Ohio exclusively and not the workers' compensation laws of any other state.  Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability or enforceability of this addendum, shall be brought solely and exclusively with the courts of Ohio, the Industrial Commission of Ohio, or such other Ohio tribunal that has jurisdiction over the matter.

(2) each of the Players has filed a claim for workers' compensation benefits in California; and

(3) each of the players "... **alleges** that he has sufficient contacts with California to maintain a California workers' compensation claim before the California Workers'

Compensation Appeals Board." (Doc. No. 36-1, Opinion and Award of Arbitrator, at 2-3 (emphasis added).) After reciting these facts, Arbitrator Beck reviewed a number of recently-issued arbitration awards, all of which enforced similar choice-of-law/exclusive remedy worker's compensation provisions in NFL Player Contracts entered into between several other clubs and their players. He noted that two of those arbitration awards had recently been affirmed by federal district courts. And he noted that subsequent to one of those court decisions, another NFL arbitrator held that the prior decisions constituted the "law of the shop." After citing two recent arbitration awards that he authored, in which he found in favor of NFL teams on this issue, Arbitrator Beck concluded that the "law of the shop" established by these decisions applied to the current dispute, and required rejecting the Players' contentions that the contract provision violated California public policy, federal labor law, or the Full Faith and Credit Clause of the Constitution.

Arbitrator Beck then addressed the Players' contention that the contract clause violated Ohio public policy because the clause operated as an invalid waiver of the right to seek workers' compensation benefits. Arbitrator Beck found that the clause was not a **waiver** of any player's right to compensation under Ohio law to which the player may be entitled. He also cited Ohio Rev. Code 4123.54(H)(1), which permits an employer and employee to stipulate to the application of Ohio law or another state's law under certain conditions. He did not expressly conclude, but his opinion strongly suggests, that he found the statute to contradict the Players' argument that Ohio law or public policy forbids an employer from negotiating with an employee about which state's law will apply.

Arbitrator Beck ultimately ordered the Players to cease and desist from pursuing their worker's compensation claims in California and to withdraw those claims. He also found that the Players must pursue any workers' compensation claims in accordance with their contracts.

Following this decision, the Bengals moved to lift the stay and to confirm the award. (Doc. 36) They also filed a separate action (Case No. 1:12-cv-377) against a group of players who were not named as defendants in this action but who appeared and participated in the arbitration process. That action was consolidated with this case, and the Bengals filed a summary judgment motion with respect to that group of players. (Doc. 60) The Court lifted the stay and set a briefing schedule for all parties and issues. (Doc. 41) All of the motions are now fully briefed and ready for disposition.

## STANDARD OF REVIEW

Under the Federal Arbitration Act, a district court's review of an arbitrator's award is fairly circumscribed. The Court's task is to determine whether the arbitrator's decision "draws its essence from the contract." Michigan Family Res., Inc. v. SEIU Local 517M, 475 F.3d 746, 752 (6th Cir. 2007). If the arbitrator was "even arguably construing or applying the contract," the award must be confirmed. Id. "Only when the arbitrator strays from interpretation and application . . . does he enter the forbidden world of effectively dispensing his own brand of industrial justice, making the arbitrator's decision unenforceable." Id. (quoting in part Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)) (internal brackets and quotation marks omitted). The Sixth Circuit explained further that:

> The [Supreme] Court's repeated insistence that the federal

> courts must tolerate "serious" arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule.  At the same time, we cannot ignore the specter that an arbitration decision could be so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that.
>
> . . .
>
> This view of the "arguably construing" inquiry no doubt will permit only the most egregious awards to be vacated.  But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements . . . and a view whose imperfections can be remedied by selecting better arbitrators.

Id. at 753-54 (internal citations, brackets and quotation marks omitted).  Thus, the reviewing court cannot vacate the arbitrator's award even if he made "serious, improvident, or silly errors in resolving the merits of the dispute."  Id. at 753 (internal quotation marks omitted).  Similarly, the reviewing court cannot reverse the arbitrator's decision based on mistakes of fact or law, Beacon Journal Pub. Co. v. Akron Newspaper Guild Local No. 7, 114 F.3d 596, 599 (6th Cir. 1997), or because the arbitrator misinterpreted federal law.  Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists, 693 F.2d 35, 37-38 (6th Cir. 1982).

One narrow exception to this doctrine is that the court may review a party's argument that the arbitrator's interpretation of a collective bargaining agreement

violates public policy.  Board of County Comm'rs of Lawrence County v. L. Robert Kimball & Assoc., 860 F.2d 683, 686 (6th Cir. 1988).  A federal court may overturn an arbitrator's contract interpretation on public policy grounds only in "... situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " Id. (quoting United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 43 (1987)).  Moreover, the court's review of an award challenged on public policy grounds is not de novo: "[W]hen an arbitration award is challenged on public policy grounds, the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, **taking the facts as found by the arbitrator**." Id. (emphasis added).

## DISCUSSION

The Players argue that the arbitration award in this case falls within the narrow exception discussed above, because the award violates public policy.  They contend that an employer cannot rely on choice-of-law and exclusive-forum contract clauses to limit an employee's right to claim worker's compensation benefits in other states.  The Players rely on what they contend is California's strong public policy against such contractual waivers of worker's compensation rights.  Moreover, they argue that it would violate Ohio public policy, federal labor law, and/or the Full Faith and Credit Clause to allow one state to infringe on another state's right to apply its own laws.

The Bengals generally respond that California's public policy is not even relevant to the interpretation of a contract entered into in Ohio between an Ohio-based employer

and employee. And even if it is, there is nothing in the contractual provision that operates as a waiver of any player's right to seek worker's compensation benefits. It only requires the Players to do so in Ohio. The Bengals note that California law specifically recognizes other states' laws in situations where an out-of-state employee is temporarily in California, so long as his employer has provided coverage in his home state. The Bengals further argue that the contractual provision does not offend Ohio public policy. They cite the Ohio statute that Arbitrator Beck referred to in his award (Ohio Rev. Code 4123.54(H)) that specifically permits employers and employees to agree to choice of law/choice of forum contracts covering worker's compensation claims. The Bengals contend that the contractual provision does not violate any general public policy, federal law, or the Full Faith and Credit Clause.

This Court agrees that the contractual provision does not violate any well-defined or dominant Ohio public policy. Ohio Rev. Code 4123.54(H)(1) states in pertinent part:

> Whenever, with respect to an employee of an employer who is subject to and has complied with this chapter, there is [the] possibility of conflict with respect to the application of workers' compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and the employee may agree to be bound by the laws of this state or by the laws of some other state in which all or some portion of the work of the employee is to be performed. The agreement shall be in writing and shall be filed with the bureau of workers' compensation within ten days after it is executed and shall remain in force until terminated or modified by agreement of the parties similarly filed. If the agreement is to be bound by the laws of this state and the employer has complied with this chapter, then the employee is entitled to compensation and benefits regardless of where the injury occurs or the disease is contracted and the rights of the employee and the employee's dependents under the laws of this state are the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of the employee's employment. If the agreement is to be bound by the laws of another state and the employer has complied with the laws of that state, the rights of the

> employee and the employee's dependents under the laws of that state are the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of the employee's employment without regard to the place where the injury was sustained or the disease contracted. ...

This statute clearly permits employers and employees to agree to follow either Ohio law or the law of some other state under the conditions described in the statute.  Nothing in the statute, or in Section 4123.54(H)(2) (cited by the Players to the arbitrator) reflects any clearly-defined public policy prohibiting the exclusive remedy provision in the Players' contracts.  Section 4123.54(H)(2) simply provides that "if" an employee receives compensation benefits in another state, those amounts are credited towards any payments made by the Ohio Workers Compensation Bureau.  There are no facts found by the arbitrator that would support a different conclusion than the one he reached. The contract provision does not amount to a prohibited waiver of any Player's right to seek compensation benefits in Ohio, and does not violate clearly-defined Ohio public policy.

The Players focus their arguments on California, arguing that the arbitrator's enforcement of the choice of law provision violates that state's clearly-defined public policy.  They cite Alaska Packers Ass'n v. Industrial Accident Comm'n of Cal., 294 U.S. 532 (1935), and Pacific Emp. Ins. Co. v. Industrial Accident Comm'n of California, 306 U.S. 493 (1939).  Alaska Packers involved a contract entered into in California between a California employer and a Mexican citizen for temporary work in Alaska during the salmon canning season.  The employee was injured while working in Alaska and filed a compensation claim in California when he returned to California to collect his wages. The California Supreme Court rejected the employer's attempt to enforce an Alaska

-8-

choice of law clause in the employee's contract.  The Supreme Court affirmed, holding:

> We cannot say that the statutory requirement of California, that the provisions for compensation shall extend to injuries without the state when the contract for employment was entered into within it, is given such an unreasonable application in the present case as to transcend constitutional limitations. The employee, an alien more than 2,000 miles from his home in Mexico, was, with fifty-three others, employed by petitioner in California. The contract called for their transportation to Alaska, some 3,000 miles distant, for seasonal employment of between two and three months, at the conclusion of which they were to be returned to California, and were there to receive their wages.
>
> The meagre facts disclosed by the record suggest a practice of employing workers in California for seasonal occupation in Alaska, under such conditions as to make it improbable that the employees injured in the course of their employment in Alaska would be able to apply for compensation there.  It was necessary for them to return to California in order to receive their full wages.  They would be accompanied by their fellow workers, who would normally be the witnesses required to establish the fact of the injury and its nature.  The probability is slight that injured workmen, once returned to California, would be able to retrace their steps to Alaska, and there successfully prosecute their claims for compensation. Without a remedy in California, they would be remediless, and there was the danger that they might become public charges, both matters of grave public concern to the state.
>
> California, therefore, had a legitimate public interest in controlling and regulating this employer-employee relationship in such fashion as to impose a liability upon the employer for an injury suffered by the employee, and in providing a remedy available to him in California. In the special circumstances disclosed, the state had as great an interest in affording adequate protection to this class of its population as to employees injured within the state.

294 U.S. at 542-543.

Pacific Employers involved a Massachusetts resident who worked for a Massachusetts-based employer, and whose contract included a Massachusetts choice of law clause.  The employee's primary job assignment site was in Massachusetts, but he suffered a specific injury while on temporary assignment in California, and received

medical treatment there. He filed a compensation claim in California, and the employer's Massachusetts-based insurer appealed the award. The California Supreme Court affirmed the compensation board's award, relying on a California statute prohibiting contracts that exempt any employer from liability under the workers' compensation statutes. The Supreme Court affirmed that decision and held: "The Supreme Court of California has declared in its opinion in this case that it is the policy of the state, ... to apply its own provisions for compensation, to the exclusion of all others, and that it would be obnoxious to that policy to deny persons who have been injured in this state the right to apply for compensation when to do so might require physicians and hospitals to go to another state to collect charges for medical care and treatment given to such persons." Id. at 504.

The Players argue that these cases make clear that California's well-defined public policy prohibits the Bengals from enforcing the contractual clause requiring them to file workers' compensation claims only in Ohio. And in their reply brief, the Players urged this Court to await a decision from the Ninth Circuit Court of Appeals in a case involving an NFL player's challenge to a substantially identical contract clause. In Matthews v. NFL Management Council, 688 F.3d 1107 (9th Cir. 2012)(August 6, 2012), the Ninth Circuit concluded that the clause in Matthews' NFL player contract with the Tennessee Titans, requiring Matthews to pursue workers' compensation claims exclusively in Tennessee, did not violate California public policy. Matthews played for the Titans and their predecessor teams from 1983 until he retired in 2002. He filed a California workers' compensation claim in 2008 against the Titans, alleging he suffered pain and disability as a result of his 19-year career. Matthews did not allege that he

-10-

sustained a particular specific injury in California.  An arbitrator ordered Matthews to dismiss his California claim because it violated his contract, and the district court denied Matthews' motion to vacate that decision.

> The Ninth Circuit affirmed.  In its decision, the court explained:
>
> Matthews contends that California has an explicit, well-defined and dominant public policy militating against agreements that purport to waive an employee's right to seek California workers' compensation benefits before a California tribunal, no matter how tenuous the connection between California and the employee or the employment. ...
>
> We do not read California's policy so broadly. Rather than guarantee a universal right to seek California workers' compensation benefits, the workers' compensation statute establishes a rule that an employee who is otherwise eligible for California benefits cannot be deemed to have contractually waived those benefits, and an employer who is otherwise liable for California benefits cannot evade liability through contract. ...
>
> Our reading of the statute is consistent with *Alaska Packers*. ... The California Supreme Court concluded that the choice of law clause was unenforceable under the statutory predecessor to § 5000, but only after finding that the employment relationship in question had sufficient contacts with California to apply California's workers' compensation law. ...
>
> To establish that the arbitration award here violates California policy, Matthews must show that his workers' compensation claim comes within the scope of California's workers' compensation regime. ...
>
> In *Pacific Employers*, ... the [California Supreme Court] acknowledged that, given the employee's limited contacts with California, California's interests would ordinarily be only "casual" as compared  to the interests of Massachusetts, ... , but concluded that, because the employee was injured and received medical treatment in California, California's interest was superior, ... The court reasoned that providing California hospitals and doctors convenient mechanisms for obtaining compensation for services rendered to injured employees was a critical component of California's workers' compensation regime and that maintaining an effective workers' compensation system was of vital interest to the state.
>
> Under *Pacific Employers*, then, California's workers' compensation law covers an employee who suffers a discrete injury in California, at least where the costs associated with the employee's injury may impact

> California's medical system and other resources. ... The facts underlying Matthews' claim are distinct enough from existing California cases that we cannot say whether the California courts would consider Matthews' limited contacts with the state sufficient to justify the application of California law.
>
> Under our standard of review of arbitration awards, this uncertainty is fatal to Matthews' claim. He has not shown that he falls within the category of employees to whom the "no waiver" rule applies. He has thus not shown that the arbitration award is contrary to a clear, well-defined and dominant public policy of the state of California. ...
>
> An employee who makes a prima facie showing that his claim falls within the scope of California's workers' compensation regime may indeed be able to establish that an arbitration award prohibiting him from seeking such benefits violates California policy. Matthews did not do so here because he did not allege facts showing an injury in California or any burden on the state's medical system, and it is not clear that California would extend its workers' compensation regime to cover the cumulative injuries Matthews claims, given his limited contacts with the state.

Id. at 1111-1114 (footnotes and citations omitted).

This Court is persuaded by the Ninth Circuit's thoughtful analysis regarding the impact of Alaska Packers and Pacific Employers on current-day California public policy. The concerns underlying Alaska Packers clearly do not arise with respect to the Players. And the protection of California-based medical providers that was of concern to the court in Pacific Employers has been largely mooted by advances in interstate communication and cooperation among both providers and insurers. Moreover, after both of those decisions, the California workers' compensation statute was amended by adding Labor Code 3600.5(b), which exempts employees hired outside of California from coverage under the statute while the employee is temporarily in California, so long as his employer provides workers' compensation coverage to him in another state that covers the temporary assignment. California law (and public policy) therefore recognize the right of employers and employees to agree to provisions such as the one at issue

here, and there is no suggestion in the record that the Bengals do not provide Ohio workers' compensation coverage for its players while they may be on temporary assignment in California.

This Court also agrees with the observation of the court in <u>Matthews</u>, that an employee who makes a "prima facie showing" that he has a right to receive California compensation benefits for a specific injury sustained in California, **may** be able to demonstrate that an exclusive remedy/choice of law provision that would bar him from seeking those benefits may run afoul of California law or public policy. But here, the agreed facts submitted to the arbitrator were only that each player "alleges" that he has sufficient contacts with California to pursue a cumulative injury claim. (See Doc. 36-1 at p. 3.) There are no facts amounting to a prima facie showing that any of the Players' claims are actually cognizable under California law. None of the Players have set forth facts establishing that they sustained a specific or particular injury in California, or that they received any care in that state as a result.

In that regard, the Court takes note of the decision by the California Workers' Compensation Appeals Board in <u>Booker v. Cincinnati Bengals</u>, et al, 2012 Cal. Wrk. Comp. P.D. LEXIS 114 (May 1, 2012). While this panel decision is not binding on this Court, and was not designated as a "significant" decision by the Appeals Board, it involves the dispute between a defendant in this case, Vaughn Booker, and the Bengals about Booker's California worker's compensation claim. The WCAB held that it lacked subject matter jurisdiction over Booker's claim against the Bengals because there was no basis for the Board to assert jurisdiction due to any injury Booker sustained in California. The Bengals provided prima facie evidence of self-insurance in Ohio, and

there was no basis for the Board to exercise extra-territorial jurisdiction, based on injuries outside of California, because Booker was not "regularly employed" in California. The Board also found that California has no significant interest in Booker's claim, as his contract was not made in California, he had worked in California for only one day in three years of playing, and he had no other significant connection to California. Even if all these hurdles were surmounted and the Board assumed jurisdiction, it held it would not do so based on the forum selection clause in Booker's player's contract. The panel noted that enforcing the forum selection clause would not be contrary to California's interest, as the state also has a strong interest in "avoidance of overburdening local courts with congested calendars ... [in] cases in which the local community has little concern." Id. at *29-30 (internal citation omitted).

Again, the Court recognizes that this is not a binding decision nor one from the California appellate court. Nevertheless, its reasoning is persuasive and supports the conclusion that California's public policy is not offended by enforcement of the contractual forum selection clause for all of the Defendants. Moreover, in addition to Matthews, several other district courts have also rejected the arguments the Players assert here. In Atlanta Falcons Football Club, LLC v. National Football League Players Assoc., 2012 U.S. Dist. LEXIS 158057, 2012 WL 5392185 (N.D. Ga., Nov. 5, 2012), the district court affirmed an arbitration award in favor of the Falcons and against several of its former players. The court found that the players' contract (containing a Georgia choice of law clause) does not violate California public policy, federal labor policy, or the Full Faith and Credit Clause, and citing Matthews. A similar result was reached in Chicago Bears Football Club, Inc. v. Haynes, 816 F. Supp.2d 534, 538 (N.D. Ill. 2011),

where the district court questioned why California's public policy would be relevant at all to review of an arbitration award in favor of the Bears, and enforcing an Illinois choice of law clause in the players' contracts. The district court noted that Illinois law governed the contracts, the Bears are located in Illinois, the players executed and substantially performed the contracts in Illinois, the parties negotiated for the choice of law clause, and the arbitrator's decision was consistent with Illinois law. Id. at 538. All of those observations fully apply to this case as well. Given the wealth of authorities discussed above, the Court concludes that the Players' contracts do not violate any public policy, federal labor law, or the Full Faith and Credit Clause.

## CONCLUSION

For all of the reasons discussed above, the Court grants the Bengals' motion to confirm Arbitrator Beck's May 4, 2012 Opinion and Award (Doc. 36), and the motion for summary judgment against certain players. (Doc. 60) The Court denies the Players' motion to vacate the award. (Doc. 59)

SO ORDERED.

THIS CASE IS CLOSED.

DATED: January 15, 2013          s/Sandra S. Beckwith
                                 Sandra S. Beckwith
                                 Senior United States District Judge